IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| AMY DUNN, individually and as the natural parent of DANIELLE DEMONBREUN, JAMES DUNN and RONALD CURTIS PATTERSON, | ) ) ) ) ) ) | CIVIL ACTION FILE NO.: 2:17-CV-00246-RWS |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| COLUMBIA NATIONAL INSURANCE COMPANY, | ) ) ) | |
| Defendants. | ) | |

## CURT PATTERSON'S MOTION TO COMPEL CLAIM FILES AND OTHER DOCUMENTS

Plaintiff Ronald Curtis Patterson submits this brief and Motion to Compel Claim Files and Other Documents from Defendant Columbia National Insurance Company. This case follows an "Underlying Lawsuit" that the Dunn Family, the other plaintiffs in this action, brought for injuries they sustained when they were hit by a pickup truck. The truck was owned by Lawson Air Conditioning & Plumbing, Inc. Lawson owns a fleet of vehicles and had assigned the truck to Mr. Patterson, a plumbing foreman. Lawson had commercial automobile liability

insurance with Columbia.  Although the truck assigned to Mr. Patterson was an insured vehicle, Columbia denied coverage to Mr. Patterson.  When the Underlying Lawsuit was filed, Columbia refused to defend Mr. Patterson, putting him into default.  Columbia did defend Lawson.  After settling the claims against Lawson, Columbia tried to reverse course, cure its breach and defend Mr. Patterson.  It was too late, and an $11.5 million judgment was entered against Mr. Patterson and in favor of the Dunn Family.

In this suit, Mr. Patterson seeks disclosure of two groups of documents.[1]

1.      The claim notes and claim file reviewed by David Hubbard, a Columbia executive and Litigation Manager, in preparation for his deposition.

2.      Communications regarding coverage for Mr. Patterson to which Mr. Hubbard and Lawson defense counsel were a party during the Underlying Lawsuit.

Although the legal principles requiring disclosure of these documents is straightforward, it is important to understand the factual background of the Underlying Lawsuit, the roles of various attorneys and adjusters and the different "claim files" Columbia generated.  Accordingly, the fact section is detailed.

---

[1] The email to the Court identifying these coverage issues listed three groups of documents.  The parties have resolved the issues regarding the third group.

I.      **STATEMENT OF FACTS**

     A.      **The Accident and Mr. Patterson's Use of His Truck.**

When he hit the Dunn Family, Mr. Patterson was driving a truck owned by Lawson.  A year before the accident, Lawson had assigned the truck to Mr. Patterson as a "perk" in exchange for lower hourly pay.  (Exhibit A, Patterson Depo, 12:9-18)  Lawson gave Patterson the keys and allowed him to keep the truck at his home.  (Exhibit A, 14:16-21)  Lawson told Patterson to treat the truck as if it were his own.  (Exhibit A, 17:12-15)  Lawson gave Mr. Patterson a credit card for all gas for the truck.  (Exhibit A, 16:9-10)  Mr. Patterson used the truck as his primary vehicle, parked it at home on holidays and weekends and used it for personal errands.  (Exhibit A, 15:5-12)  Lawson knew about Mr. Patterson's personal use of the truck.  (Exhibit A, 30:21 – 31:25 and 19:4-24)  Lawson never complained about Mr. Patterson's use of his truck or disciplined him.  Lawson never revoked permission for Mr. Patterson to drive the truck until after the accident.

The accident was on June 7, 2013.  Mr. Patterson was arrested at the scene and later pled guilty to driving under the influence of pain medication he was taking for an injured hand.  (Exhibit A, 39:4-19)

### B.      The Coverage "Investigation" and Denial of Coverage.

Columbia was promptly advised of the accident and assigned the claim to adjuster John Barczykowski.  Barczykowski confirmed that Mr. Patterson's truck was a "covered auto" under liability policies Columbia had issued to Lawson.  The policies define an insured to include "[a]nyone else while using with your permission a covered auto."  (Doc 24-4, p. 47 of 152 and Doc 24-4, p. 75 of 152)

On June 11, 2013, Barczykowski had a telephone conversation with Debbie Lawson Davis (an owner of Lawson) who told him that "employees are allowed to take vehicles home; however are not allowed to use for personal use."  (Exhibit B, entry dated June 11, 2013, 1:19 p.m.)  Barczykowski then attempted to call Mr. Patterson.  The number was disconnected, so Barczykowski did not leave a message.  (Exhibit B, "Coverage" Claim Diary, entry dated June 11, 2013, 2:07 p.m.)  Barczykowski did not attempt to find an alternative telephone number. (Exhibit C, Barczykowski Depo, 75:16 – 76:9)

Also on June 11, Barczykowski wrote a letter addressed to Mr. Patterson that asked Mr. Patterson to contact him.  (Exhibit D)  The letter did not advise Mr.

Patterson that coverage was being questioned, that the purpose of the request was to investigate coverage or that his permission to use the truck was at all in question.  Mr. Patterson did not receive the letter, a fact Columbia does not dispute.  (<u>Exhibit A</u>, 84:3-6 and <u>Exhibit C</u>, 84:12-20)

On June 19, 2013, Davis provided to Columbia a single page of Lawson's "policy manual," which included the following internal rule:

> H. Company trucks will not be used for personal use at any time, unless approval has been granted by Lawson Air Conditioning & Plumbing management.

(<u>Exhibit E</u>)  Columbia had no knowledge of Lawson's internal rules for company vehicles when issuing insurance to Lawson.  Columbia learned of the internal rules only after the accident.  After receiving this single page of Lawson's internal rules, Barczykowski never asked anyone at Lawson if anyone in management had given "approval" for Mr. Patterson's personal use of his truck.  (<u>Exhibit C</u>, 66:11-18) Barczykowki never spoke to Mr. Patterson, but it might have made a difference in his coverage determination.  (<u>Exhibit C</u>, 67:5-10 and 70:7-12)

Instead, on August 22, 2013, Barczykowski sent a letter to Mr. Patterson denying coverage on the sole alleged basis that he was "not a permissive driver at the time of the accident."  (<u>Exhibit F</u>)  Thus, prior to denying coverage, Columbia made only one attempt to reach Mr. Patterson by telephone (but the number was

disconnected) and one attempt to communicate in writing (which Patterson did not receive).  Columbia's Litigation Manager, David Hubbard, *the day after reviewing documents at issue in this Motion to Compel*, gave Barczykowski's investigation a grade of 7.5 on a scale of 1 to 10.  (Exhibit G, Hubbard Depo., 141:1-10)  Hubbard has 37 years experience in the liability insurance industry.  (Exhibit G, 12:11-13)

### C.    The Underlying Lawsuit And "Split" of the File.

The Dunn Family filed the "Underlying Lawsuit" against Mr. Patterson and Lawson.  Columbia proceeded to provide Lawson both coverage and a defense, but it did not defend Mr. Patterson.  This is when Columbia began to "split" the claim file.  As Hubbard explained, splitting the file is common in the liability insurance industry when there is a conflict of interest among parties involved in a claim.  (Exhibit G, 18:15 – 19:12)  The purpose of splitting the file is so that claim professionals will not inadvertently share information with each other that might harm one or the other of two insureds with a conflict of interest.  (Exhibit G, 20:22 – 21:2)  Much like in the practice of law, the phrase "Chinese wall" accurately describes the way adjusters assigned to different parts of a "split" file are prohibited from sharing information.  (Exhibit G, 21:3-10)

At this point, the file was split in two:  A "coverage file" regarding coverage for Mr. Patterson and a "Lawson defense" file.  (Exhibit G, 53:8-13)  Hubbard put

himself in charge of the Lawson defense file.  (Exhibit G, 53:14-18)  Hubbard's

role was as a claim professional, not as an attorney, and he gave no legal advice to

anyone.  (Exhibit G, 24:12-23)  Hubbard retained Richard "Richie" Foster and

Marc Hood to defend Lawson.  (Exhibit G, 27:4-8)  Foster advised Lawson on the

defense, but he was not to give advice to Columbia regarding coverage for

Patterson, and it would have been a conflict of interest for him to do so.  (Exhibit

G, 27:12-24)  The internal operating procedures at Columbia, which Hubbard

himself developed and put in place, required the strict separation of

communications.  (Exhibit G, 28:7-18)  It would have been "unethical" for

Hubbard or Foster to be involved in coverage issues concerning Patterson.

(Exhibit G, 30:14 – 31:3)

Hubbard testified that when the Underlying Lawsuit was filed and he

became involved in April, 2014, there were "ongoing" coverage issues.  (Exhibit

G, 31:23 – 32:5)  That is one reason he "split" the file and put another adjuster,

Preston Burroughs, in charge of the Patterson coverage file.  (Exhibit G, 32:5-12)

Burroughs, now acting independent of Hubbard, retained outside coverage counsel,

William Strickland, to advise Burroughs on coverage issues.  (Exhibit G, 37-40)

Strickland was the sole coverage counsel for Columbia with respect to this claim,

and no one but Strickland and his firm provided legal advice to Columbia

regarding coverage for Mr. Patterson.  (Exhibit G, 39:14 – 40:7)  Although

coverage counsel is routinely copied on communications regarding litigation and

the ongoing defense of Lawson, the opposite is not true.  Those handling coverage

issues concerning Patterson should not be discussing those coverage issues with

those handling Lawson's defense.  The attorney assisting Burroughs on coverage

(Strickland) should "absolutely not" copy Hubbard on coverage correspondence.

(Exhibit G, 75:13 –76:18)

Columbia did not retain counsel to defend Mr. Patterson, nor did Columbia

file a declaratory judgment action to seek judicial guidance on coverage.  Mr.

Patterson went into default.

## D.    Columbia Attempts to Get Involved in the Underlying Lawsuit As a Substitute for a Declaratory Judgment Action on Coverage for Mr. Patterson.

Discovery proceeded in the Underlying Lawsuit, and the Dunn Family

questioned Lawson witnesses about Mr. Patterson's permission to use the truck.  In

response to this testimony, Columbia's outside coverage counsel, Strickland, filed

a Motion for Entry of Appearance as Counsel for Columbia in the Underlying

Lawsuit on December 9, 2014.  (Exhibit H)  Columbia unabashedly told the trial

court it wanted to appear to save the cost and trouble of a declaratory judgment

action and to have the jury in the Underlying Lawsuit decide whether Mr.

8

Patterson had coverage.  (Exhibit H, p.1)  The trial court denied the motion.

Columbia tried again, and on January 22, 2015, filed a motion to intervene in the

Underlying Lawsuit.  (Exhibit I)  Columbia wanted to intervene for the same

reasons, *i.e.*, to have the jury in the Underlying Lawsuit decide issues related to

coverage for Mr. Patterson.  (Exhibit I, pp.4-5)  The trial court denied Columbia's

motion to intervene.  Columbia of course did not notify Mr. Patterson of its attempt

to seek an adverse coverage determination from the court in the Underlying

Lawsuit.  During this period, in violation of the "Chinese wall," Hubbard, who was

handling only Lawson's defense file was copied on many communications

regarding coverage for Mr. Patterson.  (Exhibit K)[2]

On January 5, 2016, the Dunn Family settled their claims against Lawson

only.  Lawson was dismissed from the Underlying Lawsuit, which proceeded with

Mr. Patterson as the sole defendant.

### E. Columbia Attempts to Cure its Earlier Breach by Defending Mr. Patterson Under a Reservation of Rights.

Two and a half years after Columbia's unqualified denial of coverage to

Patterson, and after years of litigation against Patterson in default, on February 26,

---

[2] For the convenience of the Court and parties, correspondence regarding coverage
that was shared with Hubbard and/or Foster in a manner contrary to the policies
and procedures put in place by Columbia is highlighted on Exhibit K.

2016, Columbia made the unorthodox decision to send a "reservation of rights"
letter to Mr. Patterson offering to provide a defense to him under terms set forth in
the letter.  (Exhibit J)  This required another "split" of the file.  Columbia created a
third file, the "Patterson defense file," which was assigned to adjuster Andrew
Bach.[3]  Bach hired the firm of Gray, Rust, St. Amand, Moffet & Briske to defend
Mr. Patterson.  Michael Rust and David Sawyer filed entries of appearance, stating
that they were defending Mr. Patterson.  Rust and Sawyer in fact attended hearings
and depositions and filed briefs on Mr. Patterson's behalf.  Nonetheless, Mr.
Patterson rejected the defense under the terms proposed by Columbia in its
reservation of rights.  During this time, the Dunn family provided Columbia an
opportunity to settle the claims against Mr. Patterson within the remaining policy
limits.  Columbia summarily rejected the opportunity to settle.  The trial court
eventually required Rust and Sawyer to withdraw, as they had no authorization to
appear on behalf of Mr. Patterson.

**F.**      **The Judgment and Instant Action.**

The Underlying Lawsuit went to trial with Mr. Patterson as the sole
defendant and unrepresented by counsel.  The jury rendered a verdict against Mr.

---

[3] Columbia originally withheld this claim file from production.  However,
following this Court's ruling that documents generated by the Gray Rust firm
could not be withheld from Mr. Patterson (doc 45), Columbia agreed to produce it.

Patterson and in favor of the Dunn Family. On June 8, 2017, the court in the

Underlying Lawsuit entered a judgment against Mr. Patterson in the gross amount

of $11.5 million for the various claims, including $5 million for punitive damages.

This lawsuit brought by the Dunn Family and Patterson against Columbia

followed, requiring yet another "split" of the file.  The fourth file is a "Columbia

defense" file, which is not sought in this motion to compel.

In preparation for his deposition, Hubbard reviewed his claim file.  (Exhibit

G, 95:15-18 and 127:7 – 128:21 and 180:20 – 182:13)  His review included the

claim notes in their original, electronic version *without* redactions.  (Exhibit G,

128:5-21)  The claim notes produced are *heavily* redacted.  (Exhibit L)  His review

was in preparation for his deposition.  (Exhibit G, 180:20 – 182:13)

**G.**    **Summary of Files and Actors.**

Columbia "split" its original claim file handled by Barczykowski into four.

The files and persons involved are summarized below:

1.    The Patterson coverage file was handled by adjuster Burroughs.

Columbia's outside coverage counsel was Strickland.

2.    The Lawson defense file was handled by adjuster Hubbard.  Hubbard

hired Foster and Hood as counsel to defend Lawson.

3.      The Patterson defense file was handled by adjuster Andrew Bach,
        who retained the Gray Rust firm to defend Mr. Patterson.

4.      The Columbia defense file regarding the instant lawsuit.  This file is
        not at issuing in this motion.

As explained below, Mr. Patterson is entitled to the second file, the Lawson

defense file, because Hubbard reviewed it (and the claim notes within) to refresh

his recollection in advance of his deposition.  Mr. Patterson is also entitled to

communications from other files regarding coverage for Mr. Patterson on which

Hubbard and/or Foster was a party, because those communications were not kept

confidential.

## II.  ARGUMENT  AND CITATION TO AUTHORITY

### A.  Mr. Patterson Requested Production of all Claim Files.

It is not disputed that the documents that are the subject of this motion are responsive to requests for production.  Rather, the dispute is whether they are subject to privilege.  Nonetheless, in compliance with the Local Rules, Mr. Patterson cites his Request to Produce No. 9 and Columbia's response:

> **Request:**  In native format, the claim diary, claim log, activity log and other recordkeeping systems that document the adjustment, investigation, evaluation and other activities relating to the Accident or Underlying Lawsuit.

> **Response:**  Columbia objects to this request because it seeks information protected by the attorney-client privilege and work product doctrine. The documents withheld as privileged are identified on Columbia's privilege log. Without waiving the foregoing objections, responsive documents are enclosed in pdf format. Columbia is working on producing the information in native format.

"The party resisting discovery has a 'heavy burden' of showing why discovery should be denied."  *Williams v. The Art Inst. of Atlanta*, 2006 WL 3694649, at *3 (N.D. Ga.).

### B.  Hubbard Used Documents to Prepare for His Deposition, Requiring Their Production, Even if Privileged.

#### 1.  Rule of Evidence 612 applies.

If a witness uses a writing to refresh memory for testifying, the adverse party may use the writing for cross examination if the court decides that justice so

requires.  Fed. R. Evid. 612.  "The purpose of the rule is ... to promote the search of credibility and memory."  Fed. R. Evid. 612 (advisory committee notes).  Rule 612 applies to depositions.  Fed. R. Civ. P. 30(c)(1).

"[W]hen confronted with the conflict between the command of Rule 612 to disclose materials used to refresh recollection and the protection afforded by the attorney-client privilege the weight of authority holds that the privilege is waived." *Ehrlich v. Howe*, 848 F. Supp. 482, 493 (S.D.N.Y. 1994) (ordering disclosure of protected material that witness reviewed for deposition).

Rule 612 "entitles an adverse party to discovery of any writing, even one subject to privilege, used to refresh a witness's memory for the purpose of testifying, whether his memory is refreshed (1) while testifying, or (2) before testifying.  *Coryn Grp. v. O.C. Seacrets*, 265 F.R.D. 235, 240 (D. Md. 2010).  In *Coryn*, the district court used its discretion under Rule 612 to order the production of protected documents used to prepare a witness for deposition.  "As a general rule, when a document is used to refresh one's recollection, any privilege protecting that document must give way."  *U.S. v. Beasley*, 2016 WL 3676465, at *7 (D. Kan.) (ruling that work product protection waived).

<u>2.</u>     <u>Hubbard used his claim notes and claim file to refresh his memory for the purpose of testifying.</u>

14

Rule 612 requires three elements: (1) a witness must use a writing to refresh his memory; (2) for the purpose of testifying; and (3) the court must determine that, in the interest of justice, the adverse party is entitled to the writing. *Nutramax Labs. v. Twin Labs*, 183 F.R.D. 458, 468 (D. Md. 1998).

Hubbard plainly testified that he reviewed his claim file the day before his deposition in preparation for his deposition testimony. (Exhibit G, 95, 127-28 and 180-82)  His review included the claim notes in their original, electronic version without the redactions that appear in the version produced. (Exhibit G, 128:5-21 and Exhibit L)  Hubbard agreed several times that the review was in preparation for his deposition. (Exhibit G, 180-82)  There can be no doubt that the first two elements are satisfied.

> ### 3.     Justice requires production of the claim notes and claim file to test Hubbard's testimony.

"[I]f the first two elements are met, then it safely may be concluded that the documents have been put to a testimonial use for purposes of work product doctrine analysis." *Nutramax*, 183 F.R.D. at 468.

Columbia has put the claim notes and claim file Hubbard reviewed to a testimonial purpose.  They are no longer subject to any privilege.  The redactions are extreme, so there is a substantial difference between the version Hubbard reviewed and the version produced. (Exhibit L)  Justice and common sense

15

demand that Mr. Patterson be given an opportunity to cross-examine Hubbard on the documents Hubbard used to prepare himself.

*Mr. Patterson should be able to cross-examine Hubbard on his criticisms of Barczykowski and his curiously incorrect view of the facts using the documents Hubbard reviewed the day before he graded Barczykowski and testified to incorrect facts.*

Hubbard testified that when he became involved in April, 2014, there were "ongoing" coverage issues.  (Exhibit G, 31:23 – 32:5)  This flatly contradicts Columbia's unambiguous denial of coverage eight months before (Exhibit F) and its failure to attempt to defend under a reservation of rights until almost two years later (Exhibit J).  If there were doubts as to coverage, Columbia should have immediately defended under a reservation of rights.  Mr. Patterson is entitled to know what these "ongoing" coverage issues were and what Hubbard had read about them the day before his deposition.

After reviewing his file detailing Barczykowski's coverage investigation, Hubbard gave Barczykowski's coverage investigation a score of 7.5 on a 10-point scale.  (Exhibit G, 141:1-10)  He further testified that the "goal" should be a score of 9 or 10 before denying coverage.   (Exhibit G, 142:7-17)  He gave this criticism

the day after reviewing his claim notes and claim file.  Mr. Patterson is entitled to

see the documents leading Hubbard to give Barczykowski a grade of C.

Hubbard had his facts wrong about the coverage investigation.  His source

was the claim file he reviewed.  He testified Barczykowski called Mr. Patterson

and left messages, using "messages" in the plural.  (Exhibit G, 68:3-7)  That

testimony is clearly incorrect, as Barczykowski called once and could not leave a

message.  (Exhibit B, entry dated June 11, 2013, 2:07 p.m.)  Hubbard testified Mr.

Patterson "refused to communicate" with Barcykowski.  (Exhibit G, 58:5-12)  That

statement is flat wrong.  There is no evidence in anything that has been produced

that Mr. Patterson refused to communicate with Barczykowski.  Hubbard either

saw something in his file that has not been produced, he is mistaken, or he is

making stuff up.  Either way, Mr. Patterson is entitled to cross-examine Hubbard

on the material he reviewed before so testifying.

Hubbard said Mr. Patterson had "taken" the truck (id.), but the truck was

assigned to Mr. Patterson by Lawson for more than a year.  Hubbard testified many

times that Mr. Patterson was "drunk," but it is undisputed he had taken medication

for an injured hand.  Hubbard testified Mr. Patterson should have had "written

authorization" to drive his truck on a personal errand.  (Exhibit G, 156)  Lawson's

17

internal rules are to the contrary, and they only require "approval" by management. (Exhibit E)  Approval is not the same as "written authorization"

Mr. Patterson is entitled to test Hubbard's poor grade for the coverage investigation and incorrect statements by seeing the documents Hubbard reviewed before he so testified.  Production of the claim notes and claim file will promote the purpose of the rule, which is "the search of credibility and memory."  Fed. R. Evid. 612 (advisory committee notes).  This Court should compel production of Hubbard's claim notes and complete claim file.[4]

### C.    Coverage Communications Including Hubbard and Foster are Not Privileged.

Columbia has simply listed a bunch of communications and applied a label of "AC WP" on nearly everything.  (Exhibit K)  Just because communications occur between lawyers and adjusters does not mean they are in fact "privileged" or protected by the work-product doctrine and forever barred from disclosure.

---

[4] The court in *Nutramax* identified a laundry list of factors some courts have applied to determine whether justice requires the disclosure of privileged material used to prepare a deponent.  183 F.R.D. at 469-70.  The factors are not binding on this Court.  The factors are clearly not a "one-size-fits-all" approach, and cumbersome to apply to all situations.  They are a departure from the plain language of Rule 612, which allows the Court to order production "if the court decides that justice requires" production.  Mr. Patterson respectfully suggests that the Court does not need to analyze the multiple factors in *Nutramax* to do justice in this case.

       <u>1.</u>     <u>Columbia has the burden to prove privilege.</u>

The party asserting privilege has the burden to establish its applicability and prove all elements. *Zielinski v. Clorox Co.*, 270 Ga. 38, 40, 504 S.E.2d 683, 685 (1998).[5] "[T]he privilege attaches where (1) there is an attorney-client relationship, (2) the communications in question relate to the matters on which legal advice was sought, (3) the communications have been maintained in confidence, and (4) no exceptions to privilege are applicable." *St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C.*, 293 Ga. 419, 423, 746 S.E.2d 98, 104 (2013) (internal citations removed).

The Supreme Court of Georgia instructs to circumscribe the privilege "to its narrowest permissible limits." *Tenet Healthcare v. Louisiana Forum*, 273 Ga. 206, 208, 538 S.E.2d 441, 444 (2000). "Inasmuch as the exercise of the privilege results in the exclusion of evidence, a narrow construction of the privilege comports with the view that the ascertainment of as many facts as possible leads to the truth, the discovery of which is the object of all legal investigation." *Id*.

**Attorney-client relationship:** With regard to the first element, there is no attorney-client relationship between Strickland and Hubbard or between Foster and

---

[5] In this diversity action, state law governs the attorney-client privilege. *Lazar v. Mauney*, 192 F.R.D. 324, 327-28 (N.D. Ga. 2000). Federal law applies to the work product doctrine.

Burroughs.  Strickland was Burroughs' outside counsel for coverage matters.

Foster was Hubbard's outside counsel for the defense of Lawson.  The "capacity"

in which an attorney gives advice is instructive.  *St. Simons*, 293 Ga. at 423.

Neither Hubbard nor Foster needed or sought legal advice from Strickland.

Indeed, they were supposed to avoid it.  (Exhibit G, 75:13 –76:18)  Burroughs did

not need or seek legal advice from Foster.  (Exhibit G, 27:12-24)  There is no

attorney-client relationship among this entire group, and their communications

regarding coverage are not protected.

**Relationship to legal advice sought:**  The second element is not satisfied

for similar reasons.  Hubbard confirmed that he and Foster had no purpose for legal

advice on coverage from Strickland.  "[T]he communication must have been made

for the purpose of getting or giving legal advice."  *St. Simons*, 293 Ga. at 426.

Hubbard testified very clearly that Columbia split the file and set up a "Chinese

wall" between him and coverage counsel.  (Exhibit G, 20-21)  He testified that the

outside coverage counsel (Strickland) advising the coverage adjuster (Burroughs)

should "absolutely not" include or copy Hubbard on coverage correspondence.

(Exhibit G, 75-76)  The coverage communications involving Hubbard and Foster

are not protected.

**Kept in confidence:**  The third element is not satisfied because the coverage communications were not kept in confidence.  Claims of privilege "do not protect communications not intended to be confidential."  3 Ga. Proc. Discovery § 1:20 (citing authority).  "In the corporate context," privileged communications must be "confined to employees within the corporate structure who are authorized, expressly or by business practice, to receive and act thereon."  *St. Simons*, 293 Ga. at 427.  Hubbard was not authorized to act on coverage advice.  Under the corporate rules he himself put in place, he was not authorized to receive Strickland's coverage advice.

Finally, some of the communications listed on the privilege log are from Hubbard to Strickland and others.  In evaluating an employee's communication to an attorney, it is privileged only if

> (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Marriott Corp. v. Am. Acad. of Psychotherapists, Inc.*, 157 Ga. App. 497, 505, 277 S.E.2d 785, 791-92 (1981).  For the same reasons described above,

communications from Hubbard to Strickland and others regarding coverage are not privileged.

Columbia cannot fulfill its burden to show all elements of the privilege exist, and the Court should grant this motion.

### 2.    Columbia has not shown application of the work-product doctrine.

Work product includes "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A).  Columbia's privilege log does not substantiate these elements.  As explained above, Hubbard and Foster were on a different team than Strickland and Burroughs with respect to coverage.  They were not preparing for litigation together on that issue.  Nothing Hubbard or Foster prepared (and they are the author of some of the withheld documents) was in anticipation of coverage litigation.  If Strickland and Burroughs were anticipating coverage litigation, they should have kept the communications confidential to maintain the work-product protection.  They did not do so, and the communications should be produced.

### 3.    Waiver.

A person waives the attorney-client privilege by sharing with a party not within the attorney relationship, even to someone as close as a spouse.  *Osborn v. State*, 233 Ga. App. 257, 259, 504 S.E.2d 74, 78 (1998).  "The privilege derived

from the work-product doctrine is not absolute [and] it may be waived." *U.S. v. Nobles*, 422 U.S. 225, 239 (1975).

Although Mr. Patterson believes no privilege or protection attached in the first instance, in the alternative, Columbia waived any privilege by breaching its own Chinese wall.  Columbia decided to institute internal operating procedures calling for a Chinese wall to avoid conflicts of interest, particularly between coverage and litigation issues.  Columbia's purpose was to prevent the intermingling of coverage and litigation correspondence.

Foster and Hood were hired to defend Lawson, not Columbia.  Hubbard was solely responsible for the defense of Lawson, not Columbia.  Foster, Hood and Hubbard are essentially third parties to Patterson's coverage dispute.  Columbia's own Chinese wall policies recognized this relationship and prohibited the disclosure of coverage issues to Foster, Hood, and Hubbard.  By sharing communications concerning Patterson's coverage with those devoted solely to the defense of Lawson, Columbia has disclosed communications to third parties to the coverage dispute and waived any privilege it now seeks to assert.

## III.   CONCLUSION

Mr. Patterson respectfully moves the Court to enter an order compelling production of the following:

1.      An unredacted version of <u>Exhibit L</u>, Hubbard's claim notes, because

Hubbard reviewed an unredacted version in preparation for his

deposition testimony;

2.      The portions of Mr. Hubbard's claim file not already produced, as he

reviewed the complete claim file in preparation for his deposition

testimony; and

3.      All communications regarding coverage for Mr. Patterson on which

Hubbard and/or Foster were a party for the reasons explained above.

Those communications are highlighted on <u>Exhibit K</u>.

Respectfully submitted on October 10, 2018.

<div style="margin-left: 2em;">

<u>*/s/ Richard E. Dolder*</u>
James (Jay) Sadd
Georgia Bar No. 622010
Richard E. Dolder
Georgia Bar No. 220237
SLAPPEY & SADD, LLC
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677 (voice)
(404) 255-7460 (facsimile)
jay@lawyersatlanta.com
rich@lawyersatlanta.com
Attorneys for Mr. Patterson

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **Curt Patterson's Motion to Compel Claim Files and Other Documents** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record for all parties.  I further certify that the foregoing was prepared in Times New Roman 14pt font and otherwise complies with Local Rule 5.1.

Respectfully submitted October 10, 2018.

/s/ Richard E. Dolder
Richard E. Dolder
Georgia Bar No. 220237
SLAPPEY & SADD, LLC
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677 (telephone)
rich@lawyersatlanta.com
Attorney for Mr. Patterson