**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

AMY DUNN, individually and as the
natural parent of DANIELLE
DEMONBREUN, JAMES DUNN, and
RONALD CURTIS PATTERSON,

                    Plaintiffs,

      v.

COLUMBIA NATIONAL
INSURANCE COMPANY

                Defendant.

CIVIL ACTION
2:17-CV-00246-RWS

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF**
**PATTERSON'S MOTION TO COMPEL CLAIM FILES**
**AND OTHER DOCUMENTS**

Defendant Columbia National Insurance Company ("Columbia") files its

Response in Opposition to Plaintiff Ronald Curtis Patterson's Motion to Compel

Claim Files and Other Documents (Dkt. 49).

**I.**    **Summary of the Argument**

This is an insurance coverage dispute in which Patterson alleges that

Columbia breached its duty to defend him in a prior case and negligently failed to

settle that case, which was brought against him and his former employer, Lawson

1

Air Conditioning & Plumbing, Inc. ("Lawson").   Patterson seeks privileged documents contained within the claim file that Columbia set up to defend Lawson in the underlying action—arguing that Fed. R. Evid. 612 overcomes the applicable work-product doctrine and attorney-client privilege.   But Rule 612 does not apply in the first instance because the witness, Columbia employee David Hubbard, testified that he did not review unredacted documents in preparation for his deposition, and all of the redacted documents have already been produced.   Even if that were not the case, Rule 612 does not result in the waiver of either privilege, particularly where Mr. Hubbard handled only the defense of Lawson, which is not at issue in this case.   Patterson already deposed Hubbard, who had no role in the decision not to defend Patterson or the evaluation of the settlement offer—the claims at issue here—so there is no substantial need for any of the requested information.

The second category of documents sought by Patterson consists of communications among Mr. Hubbard, defense counsel for Lawson, another Columbia employee (Preston Burroughs), and coverage counsel hired by Columbia during the underlying action.   None of these communications were disclosed to a third party, so Columbia has not waived either the applicable attorney-client privilege or the work product doctrine.   There is nothing improper about Mr.

Hubbard or Lawson's counsel—who was hired by Columbia—sharing information with Mr. Burroughs or coverage counsel for Columbia.  Columbia in fact needed that information to evaluate coverage under the applicable policy, and its receipt of information from another Columbia employee in no way renders it non-privileged.

Columbia has already produced an unredacted copy of the claim file set up for the defense of Patterson in the underlying action, including communications between defense counsel for Patterson and Columbia,[1] as well as non-privileged documents from the Lawson defense file and the coverage file.  In addition, Plaintiffs have deposed three Columbia employees, who testified as to the reasons that coverage was initially denied to Patterson, why a defense was later offered to him, and why Columbia did not settle the claims against Patterson.  Plaintiffs have already obtained all of the information they seek, and they do not identify any missing information that is relevant to the claims or defenses at issue in this case.

Accordingly, the Court should deny the Motion to Compel.

## II.   <u>Factual Background</u>

In the underlying lawsuit, Plaintiffs Amy and James Dunn sued Patterson and his employer, Lawson, for injuries they sustained when a vehicle Patterson was driving struck them in a Wal-Mart parking lot.  (Dkt. 1-7).  At the time of the

---

[1] The Court ordered production of these communications on September 18, 2018. (Dkt. 45).

incident, Mr. Patterson was driving a pickup truck owned by Lawson. Because Mr. Patterson was driving the vehicle after hours and outside the scope of his employment, Columbia determined that Mr. Patterson was not covered by a business automobile liability insurance policy issued to Lawson by Columbia. (Dkt. 1-6).   This determination was made by Columbia employee John Barczykowski, whom Plaintiffs have already deposed.  (Dkt. 38).

Columbia hired attorney Richie Foster to defend Lawson in the underlying action, and Mr. Hubbard at Columbia was in charge of that defense and associated claim file (the "Lawson File").  (Ex. A, Hubbard Trans., 53:6-13).  Columbia also set up a separate file to address any coverage questions concerning the lawsuit.  Id. at 31:9 – 32:20; 37:15-18.  Columbia assigned employee Preston Burroughs to the coverage file, and he retained attorney Bill Strickland to provide legal advice to Columbia (the "Coverage File").   Id. After settling the claims against Lawson, Columbia offered a defense to Patterson and assigned Andrew Bach of Columbia to oversee that file, with the assistance of lawyers from the firm of Gray, Rust, St. Amand, Moffett, and Brieske (the "Patterson File").  Id. at 36:3 – 37:10. This is a visual representation of the three files:



Columbia transferred information from the Lawson file to the Coverage File to assist with the coverage analysis, but information from the Coverage File was not automatically placed in the Lawson File; this is to prevent any potential conflicts of interest on the part of defense counsel for Lawson. (Ex. A, 148:25 – 149:25). Mr. Burroughs had to obtain information from the Lawson File to complete his coverage analysis, and he therefore contacted Mr. Foster and Mr. Hubbard to get information. (Ex. B, Trans. Burroughs, 60:1-23; 77:17 – 78:10). Mr. Burroughs and Mr. Hubbard did not discuss coverage issues while Mr. Hubbard was handling the Lawson File. Id. The same procedure was followed with respect to the Patterson File: information from the Lawson File was populated into the Patterson File, but the Coverage File was not shared with the Patterson File. (Ex. A, 150:17 – 151:10).

5

Mr. Hubbard was not involved in the decisions upon which Patterson's claims in this case are based: to deny coverage to Patterson, to later attempt to defend him in the underlying litigation, or to decline the time-limited demand to settle the claims against Patterson. Id. at 25:8 – 26:22; 34:1-16; 50:5-25; 62:16 – 63:14; 69:14-16.

In their Motion, Plaintiffs seek the disclosure of the entire Lawson File, as well as communications contained in the Coverage File "regarding coverage for Mr. Patterson to which Mr. Hubbard and Lawson defense counsel were a party during the Underlying Lawsuit." (Dkt. 49, p. 2).

## III.   <u>Argument</u>

### A.   **Patterson is not entitled to privileged documents in the Lawson File.**

Patterson seeks privileged documents from the Lawson File, which was set up for the defense of Lawson, and which indisputably did not concern the defense of Patterson or the offer to settle the claims against Patterson—the primary issues in this case. Patterson's request is based solely on Federal Rule of Evidence 612, a rule which does not apply here, and which in any event does not overcome the attorney-client privilege and work product protection even if it did.

### 1.    Rule 612 does not apply.

Rule 612 "provides that if a witness uses a writing to refresh his memory for the purpose of testifying—before testifying, the court may order production of the document if the court in its discretion determines that it is necessary in the interests of justice." Coca-Cola Co. v. Allianz Ins. Co., 2004 WL 7308665, at *6 (N.D. Ga. Mar. 4, 2004). The Advisory Committee Notes explain that:

> The purpose of the phrase "for the purpose of testifying" is to safeguard against using the rule as a pretext for wholesale exploration of an opposing party's files and to insure [sic] that access is limited only to those writings which may fairly be said in fact to have an impact upon the testimony of the witness.

Fed. R. Evid. 612. Here, Plaintiffs attempt nothing more than a wholesale and improper exploration of the Lawson File, despite the fact that Columbia defended and settled the claims against Lawson. In doing so, Plaintiffs seek discovery of a file and material that has absolutely no bearing on this case. Mr. Hubbard handled only the Lawson File and was not involved in any of decisions that are at issue in this case: the initial denial of coverage to Patterson; the decision to defend him; and the decision to decline the time-limited demand. Ex. A at 25:8 – 26:22; 34:1-16; 50:5-25; 62:16 – 63:14; 69:14-16.

Plaintiffs argue that Hubbard reviewed unredacted documents to refresh his recollection before his deposition, and demand the allegedly-reviewed documents.

But Hubbard never testified that he reviewed any documents to "refresh his memory" of the events in question.  Instead, when asked how he prepared for his deposition, Hubbard stated: "Reviewed yesterday the file that I'd been handling and then I talked a bit with Mr. Rapp yesterday."  (Ex. A, 95:15-18).  He later clarified that he reviewed only "some of the documents" in the Lawson File, and did so "briefly."  Id. at 181:11-13; 128:4-8.  Despite mistakenly answering yes to a series of questions about whether he reviewed his file electronically, Hubbard corrected his testimony via an errata sheet to make clear that he reviewed only redacted hard copies of documents with counsel, and did not review any electronic documents at all.  (Ex. C, Errata Sheet; Ex. A, 127:7 – 128:21).  Undersigned counsel for Columbia likewise confirms that during his meeting with Hubbard the day before the deposition, Hubbard reviewed no electronic documents, and that he reviewed only hard copies of redacted documents that have previously been produced in this case.  (Ex. D, Rapp Declaration).  Moreover, and as a practical matter, the Lawson File consists of thousands of pages of material, which could not be reviewed in detail in a single day, and most certainly could not be reviewed "briefly," as Hubbard described his sole review of the redacted documents provided to him by counsel during the deposition preparation.

Since Hubbard did not review any unredacted documents to refresh his memory before testifying at his deposition, Rule 612 does not apply.  The Court should deny Patterson's Motion for unfettered access to the Lawson File.

> **2.      Rule 612 does not result in a waiver of the attorney-client privilege.**

Furthermore, and contrary to Patterson's argument, even if the Court were to somehow conclude that a review of unredacted documents actually occurred, and that Rule 612 applied, this would not properly result in an automatic waiver of the attorney-client privilege or work product protection.   <u>Coca Cola Co.</u>, 2004 WL 7308665 at *6; <u>Morrow v. UniCare Life & Health Ins. Co.</u>, 2006 WL 8431495, at *7 (N.D. Ga. May 26, 2006).[2]  As the Advisory Committee Notes make clear, "The Committee intends that nothing in the Rule be construed as barring the assertion of a privilege with respect to writings used by a witness to refresh his memory."  Fed. R. Evid. 612.   The only specific document identified by Patterson is Hubbard's claim notes, which contain summaries of attorney-client communications as well

---

[2] "Most courts now reject the absolute-waiver approach in favor of a test that balances the interests promoted by recognizing Rule 612 rights in the adverse party against the burden those rights impose on work-product and privilege protections." 28 <u>Fed. Prac. & Proc. Evid.</u> § 6188 (2d ed.).

as work product since the entire Lawson File was created to defend Lawson in the underlying litigation, and Hubbard's information came from defense counsel.[3]

In a diversity action like this one, Georgia law governs the attorney-client privilege, and under Georgia law, the attorney-client privilege prohibits the evidentiary use of privileged communications. Coca Cola Co., 2004 WL 7308665 at *6; O.C.G.A. § 24-5-501(a)(2). "Georgia courts are reluctant to waive the attorney-client privilege." Perrigo Co. v. Merial Ltd., 2017 WL 5203054, at *3 (N.D. Ga. Oct. 5, 2017). Before finding an implicit waiver, a court must make "two inquiries: (1) a subjective evaluation of whether or not the client intended to waive the privilege; and (2) an objective determination of whether or not it is fair to assert the privilege under the circumstances." Id. "Georgia courts simply do not waive the attorney-client privilege absent a showing of the client's intent to manipulate the legal system through the assertion of the privilege." Id. at *4. "[A]n insurer's communications with the attorney assigned to represent the insured under an insurance policy are generally protected by this common interest or attorney-client privilege." Jones v. Tauber & Balser, P.C., 503 B.R. 510, 517–18 (N.D. Ga. 2013).

---

[3] For example, the entry on 5/27/14 begins "Richie reports," and the remainder is redacted. (Dkt. 49-12, p. 2). "Richie" is Mr. Foster, defense counsel for Lawson, and this note recounts his report to Hubbard, which is an attorney-client communication.

Patterson does not address either waiver element in his Motion, and even if he did, he could not satisfy them.  Hubbard did not subjectively intend to waive the redactions in his claim notes.  And even if the Court concludes that Hubbard reviewed unredacted notes, he did not rely on any of the redacted information during his deposition (and his Lawson File has nothing to do with this case). Under these circumstances, it would be objectively unfair to force Columbia to disclose the attorney-client communications.

This Court addressed a similar argument in <u>Coca Cola</u> and held that rule 612 did not overcome the attorney-client privilege because the witnesses "reviewed their entire files in preparation for the deposition and [the subject documents] were contained in the complete files.  Nothing in their testimony suggests that the documents to which Defendants refer impacted the testimony of the witnesses." 2004 WL 7308665 at *6.  This reasoning applies equally here, where Hubbard briefly reviewed some of the documents in his claim file in a single day—none of which were electronic or unredacted—and they did not impact his testimony. Instead, as the person assigned to the Lawson File, Hubbard has first-hand knowledge of all claim notes because he wrote them, and he was questioned extensively during his deposition.  There is no basis to overcome the attorney-client privilege.  See <u>Morrow</u>, 2006 WL 8431495, at *7 (holding that Rule 612 did

not overcome the attorney-client privilege because "it does not appear that Plaintiff used any portion of her notes substantively to answer questions posed during the deposition."); In re Rivastigmine Patent Litigation, 486 F. Supp. 2d 241, 244 (S.D.N.Y. 2007) (refusing to order production of redacted documents because the witness "had the factual information about which she testified from the outset and was subject to cross-examination regarding her own knowledge.").

Accordingly, the Court should deny Patterson's Motion.

### 3.     Rule 612 does not overcome the work product protection.

In addition to attorney-client communications, the vast majority of the Lawson File is protected work product.  Under Fed. R. Civ. P. 26(b)(3), "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." These documents are discoverable only if the party shows substantial need for the materials and demonstrates that they cannot obtain the information from an alternative source without undue hardship.  Id.  Opinion work product cannot be discovered absent extraordinary circumstances.   Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1422 (11th Cir. 1994).

As noted above, the Lawson File was created for the defense of Lawson in the underlying action, and Hubbard was assigned to oversee that defense. Hubbard retained Richie Foster to defend Lawson, and the claim notes and Lawson File include numerous communications from Foster to Hubbard about strategy, deposition summaries, draft motions, and other pleadings—all of which are protected work product prepared by an attorney during active litigation. Underwriters Ins. Co. v. Atlanta Gas Light Co., 248 F.R.D. 663, 667 (N.D. Ga. 2008) (explaining that when litigation is imminent, an insurer's claim file "and its contents are protected by the work product doctrine.").

Patterson cannot demonstrate a substantial need for Hubbard's claim notes or any of the privileged information in the Lawson File. "A party shows substantial need for work product where its opponent's knowledge is material to the asserted action, and can only be shown by the withheld documents." Liberty Mut. Fire Ins. Co. v. APAC-Se., Inc., 2008 WL 11320055, at *9 (N.D. Ga. May 16, 2008). Here, Hubbard handled only the defense of Lawson, which is not at issue in this case, and he had no role in the decision to deny coverage to Patterson, to later attempt to defend him, or to decline an offer to resolve the claims against him. Accordingly, neither Hubbard's claim notes nor the Lawson File are material to this case.

Moreover, Patterson has already obtained all of the information he seeks through the depositions of three Columbia employees.   Hubbard has already testified extensively about his handling of the Lawson File,[4] and alleged factual inaccuracies are insufficient to overcome work-product protection. Preston Burroughs, who was responsible for declining the time-limited demand and for attempting to defend Patterson, explained the reasons for each decision in detail during his deposition.   (Ex. B, 44:24 – 45:25; 89:1 – 91:12).   And John Barczykowski, who decided to initially deny coverage to Patterson, explained all of the reasons for that decision in his deposition.   (Ex. E, Barczykowski Trans., 45:6-25).

Accordingly, Patterson cannot show substantial need or undue hardship.  See Lett v. State Farm Fire and Cas. Co., 115 F.R.D. 501, 504 (N.D. Ga. 1987) (granting motion for protective order of work product because the plaintiffs can obtain the requested information by deposing the people who authored the documents "without forcing production of otherwise protected documents."); Carver v. Allstate Ins. Co., 94 F.R.D. 131, 136 (S.D. Ga. 1982) (same); Cordell v. Pac. Indem. Co., 2006 WL 3335128, at *3 (N.D. Ga. Nov. 13, 2006) (same);

---

[4] For example, Patterson contends that he is entitled to know what certain "coverage issues" were, but Hubbard answered that exact question during his deposition, and there is no indication that anything in the claim notes or Lawson File has any bearing on that information.  (Ex. A, 33:9-25).

Pleasant Grove Missionary Baptist Church of Randolph County, Inc. v. State Farm Fire & Cas. Co., 2012 WL 1997916, at * 5 (M.D. Ga. June 4, 2012) (same).  Even if Patterson could show such a need, that does not warrant the disclosure of opinion work product.  United Kingdom v. United States, 238 F.3d 1312, 1322 (11th Cir. 2001).

During his deposition, Hubbard was asked to rate Mr. Barczykowski's investigation, which Hubbard had not previously done.  (Ex. A, 140:25 – 141:20).  Mr. Hubbard answered the question as best he could, and explained what more, if anything, could have been done.  Id. Patterson is now trying to use that line of questioning to invade the attorney-client privilege and work-product doctrine, but Hubbard never said his answers were based on privileged documents.  In fact, he did not refer to any documents when answering these questions.  Id.

Patterson also claims to need privileged documents because "Hubbard had his facts wrong about the coverage investigation."  That is simply incorrect, but even if it were accurate, it does not justify the disclosure of privileged documents.  This is particularly true where Hubbard was not involved in the coverage determination—only the defense of Lawson—and the people who were involved, Mr. Barczykowski and Mr. Burroughs, have already been deposed and explained their actions.

The Court should deny Patterson's Motion for privileged documents in the Lawson File.

**B.   Patterson is not entitled to privileged communications from the Coverage File.**

Patterson also seeks the disclosure of 37 emails between Columbia employees Hubbard and Burroughs, Richie Foster (defense counsel for Lawson), and Bill Strickland (coverage counsel for Columbia)—or some combination thereof.  Under Georgia law, "once an attorney-client relationship has been duly established between an attorney and his corporate client [] the legal advice confidentially communicated to the authorized agents of the client is by statute protected from discovery, and testimony concerning the content of such advice is inadmissible on grounds of public policy." S. Guar. Ins. Co. of Georgia v. Ash, 383 S.E.2d 579, 582 (Ga. App. 1989). As noted above, "Georgia courts simply do not waive the attorney-client privilege absent a showing of the client's intent to manipulate the legal system through the assertion of the privilege." Perrigo, 2017 WL 5203054, at *4. Patterson has not and cannot make any such showing here.

In this case, Richie Foster was retained by Columbia to defend Lawson and, therefore, he had an attorney-client relationship with Columbia and Lawson. Jones, 503 B.R. at 517–18.  Similarly, Bill Strickland was retained by Columbia to provide legal advice with respect to the underlying action and, therefore, he also

16

has an attorney-client relationship with Columbia.  Ash, 383 S.E.2d at 582.   As a result, both Richie Foster's and Bill Strickland's communications with Columbia are privileged, and the fact that both lawyers were included on some communications, (or that David Hubbard received some of Bill Strickland's communications), does not destroy the privilege.

For example, David Hubbard is the head of litigation for Columbia, and as such he is entitled to communicate with attorneys like Bill Strickland who are retained by Columbia.  Such a communication occurred at Bates number 2203, where Mr. Strickland emailed Burroughs and Hubbard about the scope of his representation of Columbia.  (Dkt. 49-11, p. 3).  That Hubbard was included on this email does not destroy the attorney-client privilege.

As another example, after judgment was entered in the underlying case, Mr. Burroughs and Mr. Strickland contacted appellate counsel in anticipation of a claim by the Dunns against Columbia.  (Ex. B, 189:12 – 191:6).   Those communications are protected by the attorney-client privilege because they were made for the purpose of obtaining legal advice.  One such communication is identified at Bates number 0835, and a summary of other such communications is included at Bates number 0831.  (Dkt. 49-11, p. 14).  Again, that Mr. Hubbard received these emails does not destroy the privilege—particularly where the

17

Lawson claims had been settled more than one year before, Hubbard was no longer handling the Lawson File, and he was acting in his role as head of litigation for Columbia.[5]

Another example is an email chain that includes Strickland, Foster, Hubbard, and Burroughs, identified at Bates number 2225-2226.  (Dkt. 49-11, p. 2).  The first email in that chain contains detailed legal analysis from Columbia's coverage counsel, which was then shared with the other recipients.  That analysis is attorney-client privileged and opinion work product, which is not discoverable simply because Mr. Hubbard or Mr. Foster received it.  If Richie Foster provided legal advice or work product to David Hubbard, and Hubbard shared that advice with another Columbia employee or an agent of Columbia like Mr. Strickland, the privilege is not waived because the communication has not been shared with a third party.

Patterson argues that because Columbia created three files for the underlying litigation, any communication from one file to the other results in a privilege waiver because of a potential conflict of interest.  (Dkt. 49, p. 20).  But while such

---

[5] In fact, ten of the emails on which Mr. Hubbard was copied were sent after the claims against Lawson were settled (January 5, 2016), and four of those emails were sent after judgment was entered in the underlying case, June 8, 2016, and therefore have no bearing on this case.  (Dkt. 49-11, pp. 7-14).  That Mr. Hubbard was part of these communications does not destroy any privilege because there was no longer any underlying claim for him to adjust.

communications may in certain circumstances create a conflict of interest for the people involved in the file—such as where the person handling the defense of an underlying case learns of a potential coverage defense that could influence the defense—such an issue would not result in the waiver of any privilege.  And there is no suggestion that any such problem occurred here.   Indeed, all of the communications sought by Patterson occurred after coverage had been denied to him, so there was no potential conflict of interest, particularly where there was never any question as to coverage for Lawson.  (Ex. A, 60:3-9).  And Columbia already produced the Patterson File.

Finally, some of the communications from Mr. Foster and Mr. Strickland include attorney work product, which is not discoverable absent a showing of substantial need and undue hardship.  For the same reasons noted above, Patterson has not and cannot demonstrate a substantial need for any of these emails because he has already deposed Hubbard, Burroughs, and Barczykowski—each of whom testified in great detail about their roles in this case, and the basis for their decisions.  And even a showing of substantial need cannot justify the disclosure of opinion work product.  United Kingdom, 238 F.3d at 1322.

The Court should deny Patterson's Motion.

**C.    Alternatively, the Court should conduct an in camera review before ordering production.**

If despite the above bases for the non-discoverability of the material being demanded, the Court has questions about the nature of the privileges, or determines that Patterson has made a *prima facie* showing that some of the communications may not be privileged, Columbia respectfully requests that the Court review the highlighted emails identified on Dkt. 49-11 *in camera* to consider the specific documents before determining whether production is warranted.  See United States v. Davita, Inc., 301 F.R.D. 676, 681 (N.D. Ga. 2014) ("the Court disagrees with Plaintiff that entire categories of such documents can be denied privileged status as a matter of law, based solely on the descriptions. Rather, as discussed below, the only way to effectively review many of the assertions of privilege in this case is to undertake a document-by-document in camera review.").

**IV.    Conclusion**

The Court should deny Patterson's Motion to Compel.

Respectfully submitted this 24th day of October, 2018.

/s/ Stephen J. Rapp
John C. Bonnie
Georgia Bar No. 067540
Stephen J. Rapp
Georgia Bar No. 103806
srapp@wwhgd.com
*Attorneys for Columbia National Insurance Company*

WEINBERG, WHEELER, HUDGINS,
 GUNN & DIAL, LLC
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, Georgia 30326
T: (404) 876-2700
F: (404) 875-9433

21

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to all attorneys of record

This 24th day of October, 2018.

*/s/ Stephen J. Rapp*
Stephen J. Rapp
Georgia Bar No.: 103806