IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| AMY DUNN, individually and as the natural parent of DANIELLE DEMONBREUN, JAMES DUNN and RONALD CURTIS PATTERSON, | ) ) ) ) ) | CIVIL ACTION FILE NO.: 2:17-CV-00246-RWS |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| COLUMBIA NATIONAL INSURANCE COMPANY, | ) ) ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF PATTERSON'S MOTION TO COMPEL CLAIM FILES AND OTHER DOCUMENTS

Columbia National Insurance Company recognizes that claims at issue in this litigation are "the decision not to defend Mr. Patterson, and the evaluation of the settlement offer."  Because Columbia cites its original decision to deny coverage as the reason for the rejection (Doc 1-14), both issues are directly tied to the accuracy of Columbia's coverage investigation and it unconditional denial.  As explained below and in the original motion (Doc 49), communications regarding these issues and shared with those not involved with coverage should be produced.

## A.    Hubbard's Errata Sheet Should be Disregarded.

The "corrections" in Hubbard's errata sheet are extraordinary.  Below is his original sworn testimony.  In red brackets are the "corrections."

Q:    Okay. Now, how did you review that claims file?

A:    Yeah. I reviewed the notes and looked at the documents that were attached to the file –

Q:    And --

A:    -- briefly, yeah.

Q:    -- did you do that electronically?

A:    Yes. **[No.]**

Q:    Okay. So you did that electronically. You did not review the file as it's referenced on the exhibit that you were just referring to that you got the claim number for?

A:    Right. I didn't review it in paper format. **[I reviewed the redacted paper copy with Mr. Rapp.]**

Q:    Right.

A:    I did not. Yes, sir.  **[I reviewed the redacted paper copy with Mr. Rapp.]**

Q:    So the file that you reviewed, the claims file that you reviewed in its electronic format contained no redactions?

A:    Right. Correct. I had no redactions in mine.  **[No, I reviewed the redacted file copy with Mr. Rapp.]**

(Compare Doc 49-7, page 128, lines 4-21 with Doc 53-3)

1.     The Court is entitled to disregard errata sheets that
        contradict sworn testimony.

Deponents are entitled to correct the transcript of their depositions using an

errata sheet.  *See*, Fed. R. Civ. P. 30(e).

> The Rule cannot be interpreted to allow one to alter what was said
> under oath. If that were the case, one could merely answer the
> questions with no thought at all then return home and plan artful
> responses. Depositions differ from interrogatories in that regard. A
> deposition is not a take home examination.

*ChemFree Corp. v. J. Walter*, 2008 WL 5234247, at *4 (N.D. Ga.).  "If the

proposed changes clearly contradicted the deposition testimony, the changes may

not be appropriate."  *Dering v. Serv. Experts*, 2007 WL 4299968, at *5 (N.D. Ga.).

In *ChemFree*, this Court disregarded an errata sheet.  Noting that the

Eleventh Circuit has not laid down a clear rule, *ChemFree* identified three factors

helpful in the analysis:  The extent to which the errata sheet contradicts sworn

testimony; whether the deponent's attorney had "sufficient notice" of the subject

matter of questioning; and the sufficiency of the reasons for the change.  2008 WL

5234247, at *2-4.  Those factors support disregarding Hubbard's errata sheet.

Hubbard's errata sheet could not be more contradictory from his sworn

testimony.  He changed "yes" to "no." He changed "I didn't review it in paper

format" to "I reviewed the redacted paper copy."  He changed "I had no redactions

in mine" to "I reviewed the redacted file copy."  The degree of contradiction is

3

wide and repeated.  *Cf*, *Dering*, 2007 WL 4299968 (accepting errata sheet that merely expanded on answers with more detail).

Columbia's counsel had sufficient notice of this line of questioning, as every witness has been asked the same questions.  Columbia's counsel has asked the same questions of other witnesses.  This is a standard and expected line of questioning.  Counsel cannot claim to be "sandbagged" as discussed in *ChemFree*. *Id*. at 3.  There was no unfair surprise, and the Court should disregard the errata.

Hubbard's reasons for the changes are weak.  "Temporary confusion" might explain getting it wrong once, but Hubbard stated he reviewed the unredacted version of his file notes three times.  He had the redacted version in front of him, so he could easily tell the difference.  This Court has the same redacted version in front of it as Hubbard had in front of him.  Entire pages are blacked out.  (Doc 49-12, p.2)  Hubbard testified he saw the version that was not blacked out the day before.  He is an attorney and an insurance-company executive.  He is not so easily confused.  This Court should disregard the errata sheet.

### 2. Mr. Rapp's affidavit is credible, but it changes nothing.

Stephen Rapp submitted an affidavit stating that he prepared Hubbard with redacted versions of the documents.  (Doc 53-4)  The undersigned has no doubt that Mr. Rapp's affidavit is correct and truthful in all respects.  However, Mr.

4

Rapp's affidavit is not material, as Hubbard prepared twice; once without Mr.

Rapp and then with Mr. Rapp.

> Q:    Mr. Hubbard, how did you prepare for your deposition today?
>
> A:    Reviewed yesterday the file that I'd been handling **<u>and then</u>** I
>        talked a bit with Mr. Rapp yesterday.

(Doc 49-7, page 95, lines 15-18) (emphasis added).  This testimony was not

"corrected."  This Court should believe everything Mr. Rapp says and disregard

the errata, as Mr. Rapp's affidavit does not speak to Hubbard's first preparation.

> <u>3.</u>    <u>The errata sheet was delivered to the parties more than 30
>         days after the transcript was available to Hubbard.</u>

The Eleventh Circuit has construed Rule 30(e) to require that the errata sheet

be "delivered" within the 30-day period.  *Welch v. Mercer Univ.*, 304 F. App'x

834, 837 (11th Cir. 2008).  The deposition was August 8.  The errata sheet and

transcript were available to Hubbard on September 6.  (<u>Exhibit A</u>)  More than 30

days later, Mr. Patterson filed this motion.  (Doc 49)  The first time Mr. Patterson

saw the errata sheet was the same day it was filed in response to the motion.

(<u>Exhibit B</u>)  Mr. Patterson has no idea why the errata sheet states it was notarized

on September 12 but did not surface until October 24.  (<u>Compare</u> page 1 of Exhibit

B <u>with</u> page 2 of Exhibit B)  Mr. Patterson is not asking the Court to strike the

errata from the record, he is asking the Court to disregard it.

    4.    <u>This Court is the finder of fact and may chose to</u>
<u>disbelieve the altered testimony.</u>

The trial judge "acts as the fact finder in discovery disputes." *Florida v.*

*Indus. Chemicals*, 145 F.R.D. 585, 588 (N.D. Fla. 1991).  In deciding discovery

disputes, "judges necessarily must assess a witness' credibility." *DeSmeth v.*

*Samsung*, 1998 WL 315469, at *3 (S.D.N.Y.).  Unlike sworn testimony at the

summary judgment phase, affidavits and errata sheets are not entitled to favorable

inferences or deference during a discovery dispute. *See id*. at *2.

Hubbard's "corrected" story that he did not prepare for his testimony with

his *electronic* file is not credible in light of the following testimony:

Q:    When you sat down at your computer to look at the Amicus
       claim notes to prepare for your deposition –

A:    Uh-huh.

Q:    -- did you also go and -- into the other system to look at the
       claim notes that Mr. Barczykowski kept?

A:    I did not. No. I looked only at my own claim notes. Yeah.

Q:    Okay. In the -- was it Amicus or Americus?

A:    Yeah, Amicus.

Q:    Amicus?

A:    Right.

Q:    I'm sorry. In the Amicus computer system?

A:     That's right.

Q:     That's the version you looked at in preparation for your deposition today?

A:     Yes, sir.

Q:     And you read your claim notes?

A:     Read my claim notes and looked at some of the documents in the claim -- my claims file.

(Doc 49-7, page 180, line 20 – page 181, line 13)

This testimony was not "corrected."  It confirms that Hubbard sat down at his computer to read the original version in order to refresh his memory and prepare for his testimony.  Mr. Rapp's affidavit confirms he was not present during Hubbard's electronic review.  Mr. Rapp does not know what Hubbard reviewed when Hubbard sat at his computer.  The errata is not credible.

### B.     Hubbard Reviewed His File While Preparing to Testify.

Hubbard stated several times that the reason he reviewed his file was to prepare to testify in his deposition.  For example:

Q:     You indicated that in preparation for this deposition you've reviewed what -- what was it that you reviewed? You said the claims file?

A:     Yeah. Reviewed the claims file that I was involved in and handled, yeah, which would be the one for the defense of the Lawsons.

(Doc 49-7, page 127, lines 8-13)  This testimony was not "corrected."

Columbia *argues* that when Hubbard reviewed his file the day before his deposition it was not to refresh his recollection, but Columbia provides no other explanation for why Hubbard would review a file "in preparation for this deposition" other than to refresh his recollection.  Any other explanation would be absurd.  As the fact finder, this Court should find that Hubbard reviewed his file in preparation for his deposition to refresh his memory and order it produced.

Columbia argues the file is not relevant.  If it were not relevant, Hubbard would not have reviewed it.  If it were not relevant, Mr. Rapp would not have prepared Hubbard with the redacted version of the file.

Hubbard's file is highly relevant to the coverage issues in this case, because Columbia used its involvement in the defense of Lawson to attempt to make an appearance and intervene to litigate coverage issues against Mr. Patterson.  (Doc 49-8 and Doc 49-9)  Columbia should have filed a declaratory judgment action to litigate coverage.  Instead, it chose a highly unorthodox approach that is highly relevant to Columbia's bad faith and breach of its duty to defend.

Furthermore, the point is not whether Columbia believes the file is relevant to the issues it wants to focus on in this litigation.  The point is that Hubbard reviewed the file and his claim notes to prepare for his testimony.  He gave the

coverage investigation a grade of C+.  If Hubbard did not know anything about the coverage investigation, he could have so testified rather than grading it.  If he now thought he was wrong, we can safely assume he would not have hesitated to "correct" the grade with an errata sheet.

Columbia creates a straw man by arguing that reviewing documents prior to testifying does not "automatically" result in a waiver.  Mr. Patterson never argued waiver was automatic.  Rather, Rule 612 requires this Court to first determine what justice requires.  In his original brief, Mr. Patterson addressed why justice requires a thorough cross-examination with the relevant documents and cited relevant case law.  Columbia relies on inapposite cases:

In *Coca-Cola Co. v. Allianz*, the witness affirmatively testified that a review of her file prior to her deposition did "[n]ot really" help her remember.  *Id*. at n.8. As testimony quoted above reveals, Hubbard reviewed his file for the purpose of preparing.  He purported to remember important details, such as Mr. Patterson needing written permission to drive the truck, but those details appear in no other record.  Justice requires that Mr. Patterson be allowed to cross-examine Hubbard on the papers he reviewed the day before so testifying.

In *Morrow v. UniCare*, the witness reviewed notes from a video on how to answer deposition questions because "she has short-term memory problems caused

by prescription medicine."  2006 WL 8431495, at *7 (N.D. Ga.).  Hubbard is a

sophisticated and experienced litigant with no claims of illness or medication.

Justice does not require he be accommodated as was the sick person in *Morrow*.

In *In re Rivastigmine*, the court noted that "this is not a case in which the

accuracy of Dr. Williams' memory is a central concern."  486 F. Supp. 2d 241, 244

(S.D.N.Y. 2007).  Hubbard's memory is a huge concern, and justice requires a

thorough cross-examination.

Columbia cites many cases that do not address the Rule 612 analysis and

simply do not apply to this motion.[1]  This part of this motion is not a "run-of-the-

mill" waiver by disclosure.  The analysis is controlled by a specific Rule of

Evidence, 612, which is set forth an applied in Mr. Patterson's original brief.  Mr.

Patterson should be able to cross-examine Hubbard on his criticisms of

Barczykowski and his curiously incorrect view of the facts using documents that

contain those facts and that Hubbard reviewed electronically the day before he

graded Barczykowski and testified to incorrect facts.  This Court should grant this

motion.

---

[1] *E.g.*, *Perrigo v. Merial*, 2017 WL 5203054 (N.D. Ga.); *Jones v. Tauber & Balser*, 503 B.R. 510 (N.D. Ga. 2013); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir.); *Underwriters v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 670 (N.D. Ga. 2008); and *Liberty Mutual v. APAC-Se*, 2008 WL 11320055, at *2 (N.D. Ga.).

## C.   Coverage Communications Including Hubbard and Foster are Not Privileged in the First Instance.

Columbia's diagram is useful, but it is missing two arrows.  The diagram is corrected below by adding green arrows.



Columbia's uncorrected diagram illustrates how the flow of information was *supposed* to work.  As Hubbard testified, it would be improper for coverage memoranda to go to him or Foster.  As the privilege log shows, and as Columbia admits in its brief, coverage memoranda did go to Hubbard and Foster.  That is the entire point of this portion of Mr. Patterson's motion, and that fact is not recognized in Columbia's original diagram.

Columbia's opposition rests on the incorrect assumption that all of its employees have an attorney-client relationship with any attorney ever hired by

Columbia for any purpose.  Columbia's assumption is contrary to Georgia law, which requires that "the subject matter of the communication [be] within the scope of the employee's corporate duties."  *Marriott Corp. v. Am. Acad. of Psychotherapists, Inc.*, 157 Ga. App. 497, 505 (1981).  "In the corporate context," privileged communications must be "confined to employees within the corporate structure who are authorized, expressly or by business practice, to receive and act thereon."  *St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C.*, 293 Ga. 419, 427 (2013).

As Hubbard's testimony, which is cited in Mr. Patterson's original motion make clear, Columbia's business practice was to erect a Chinese Wall between Strickland and Hubbard and between Strickland and Foster with regard to coverage issues.  "Business practice" is highly relevant.  *St. Simons*, *supra*.  Also relevant under *St. Simons* is whether Foster or Hubbard could "act thereon," and they could not because of a conflict of interest.

Columbia argues that communications after the Lawson claim settled are somehow different.  They are not, as Columbia has not fulfilled its burden of showing that after the Lawson claim settled coverage was "within the scope of [Hubbard's] corporate duties" or of Foster's scope of representation.  *Marriott*, 157 Ga. App. at 505.  In fact, Hubbard affirmatively testified that after the Lawson

claim settled, responsibility for these matters remained with Preston Burroughs and not Hubbard.  (Exhibit C, page 124, line 5 – page 125, line 9)  Thus, coverage communications sent to Hubbard and Foster were not "confined to employees within the corporate structure" authorized to act on them.  *St. Simons*, 293 Ga. 419 at 427.

Columbia wants this Court to broadly construe the attorney-client privilege broadly, but Georgia law requires courts to keep the privilege "to its narrowest permissible limits."  *Tenet Healthcare v. Louisiana Forum*, 273 Ga. 206, 208 (2000).

For the same reasons, the work-product protection is not available.  Foster and Hubbard were not involved in preparing for this coverage litigation.  They had literally no business receiving the communications.  Strickland may just as well have sent the coverage memoranda to Columbia's ground maintenance crew.

Columbia concedes Hubbard had no role in the coverage issues that are the subject of the memoranda and emails withheld under the work-product doctrine. Columbia's argument merely begs the question as to why the alleged work product regarding coverage was provided to Hubbard or Foster.  Columbia is blurring lines of Hubbard's and Foster's responsibilities with those of Strickland's and Burroughs'.  These lines were recognized and distinguished by *Camacho v.*

*Nationwide*, 287 F.R.D. 688, 693-94 (N.D. Ga. 2012).  Not all communications are protected just because they are from an attorney or between attorneys.

    This Court should grant this motion.

    Respectfully submitted on November 7, 2018.

> */s/ Richard E. Dolder*
> James (Jay) Sadd
> Georgia Bar No. 622010
> Richard E. Dolder
> Georgia Bar No. 220237
> SLAPPEY & SADD, LLC
> 352 Sandy Springs Circle
> Atlanta, Georgia 30328
> (404) 255-6677 (voice)
> (404) 255-7460 (facsimile)
> jay@lawyersatlanta.com
> rich@lawyersatlanta.com
> Attorneys for Mr. Patterson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **Reply in Support of Patterson's Motion to Compel Claim Files and Other Documents** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record for all parties.  I further certify that the foregoing was prepared in Times New Roman 14pt font and otherwise complies with Local Rule 5.1.

Respectfully submitted November 7, 2018.

<u>/s/ Richard E. Dolder</u>
Richard E. Dolder
Georgia Bar No. 220237
SLAPPEY & SADD, LLC
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677 (telephone)
rich@lawyersatlanta.com
Attorney for Mr. Patterson