## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

AMY DUNN, individually and as the
natural parent of DANIELLE
DEMONBREUN, JAMES DUNN, and
RONALD CURTIS PATTERSON,

                          Plaintiffs,          CIVIL ACTION
                                               2:17-CV-00246-RWS
        v.

COLUMBIA NATIONAL
INSURANCE COMPANY

                          Defendant.

### DEFENDANT'S RESPONSE IN OPPOSITION TO RONALD CURTIS PATTERSON'S MOTION FOR SUMMARY JUDGMENT

Defendant Columbia National Insurance Company ("Columbia") files its Response to Plaintiff Ronald Curtis Patterson's Motion for Summary Judgment (Dkt. 59) under Local Rule 56.1.

## I.   Summary of the Argument

This is an insurance coverage dispute in which Patterson alleges that Columbia breached its duty to defend him in a prior case and negligently failed to settle that case, which was brought against him and his former employer, Lawson Air Conditioning & Plumbing, Inc. ("Lawson").  The primary issue in this lawsuit

1

is whether Patterson had Lawson's permission to drive a company vehicle under the influence on the night he hit the Dunn Plaintiffs in a Walmart parking lot—an issue which is heavily disputed, and which determines if Patterson was insured under a primary insurance policy and umbrella policy issued by Columbia (the "Policies").  Plaintiff seeks summary judgment on that issue, as well as several others.

Patterson first argues that Columbia waived its coverage defenses when it tried, but failed, to send a letter to Patterson denying coverage before the underlying lawsuit was filed.  Columbia did not waive any defenses because Patterson did not receive the letter, had no knowledge of the attempted denial, and there was no lawsuit pending at the time.

Patterson also asserts that Columbia breached its duty to defend him in the underlying action, but Columbia had no such duty because Patterson never contacted Columbia and did not request a defense.  In addition, the allegations of the underlying complaint did not trigger a duty to defend, and when Columbia tried to defend Patterson, he refused to communicate with defense counsel.

Patterson next argues that he had permission to drive the Lawson truck on the night of the accident as a matter of law.  But Lawson's owner and chief financial officer disputes that fact, and Lawson's policy manual—which Patterson

acknowledged receiving—expressly prohibits personal use of company vehicles without prior approval, which Patterson did not seek on the day of the accident. Under these circumstances, Patterson was not a permissive user as a matter of law.

Patterson asserts that he did not breach the cooperation clause of the Columbia policy, but the undisputed evidence demonstrates otherwise.  Patterson refused to communicate with defense counsel hired by Columbia and did not appear for his deposition and a hearing in the underlying case, which resulted in the extreme sanction of a complete prohibition on the presentation of evidence or argument at trial.  In addition, the trial court removed defense counsel from the case because Patterson refused to communicate with them.  For these same reasons, Patterson failed to mitigate his damages as required under Georgia law.

The Court should deny Patterson's motion for partial summary judgment.

## II.   **Argument**[1]

### A.   **Columbia did not waive any coverage defenses.**

"The provisions of a written contract may be waived by acts or conduct which justify the other party to believe the express provisions are waived, and even a contractual provision against waiver may be waived by conduct."  Crawford v.

---

[1] The exhibits cited in this section are attached to Columbia's Statement of Additional Facts, which is being filed contemporaneously with this response, and Columbia incorporates these additional exhibits by reference.

First Nat. Bank of Rome, 223 S.E.2d 488, 490 (Ga. App. 1976).   Under Georgia law, "the existence of a waiver generally is a jury question." Greenberg Farrow Architecture, Inc. v. JMLS 1422, LLC, 791 S.E.2d 635, 640 (Ga. App. 2016). Patterson argues that Columbia waived all coverage defenses not identified in Columbia's August 22, 2013 letter, but Patterson is incorrect for several reasons.

First, Patterson admits that he did not receive the August 22 letter, (Dkt. 64, 46:6-13), and Columbia's claim notes corroborate that fact. (Dkt. 59-13, p.5, Sept. 13 note).   In fact, Patterson contends that he had no contact with Columbia until February 2016, several years after the accident, and long after the August 22 letter. (Dkt. 64, 84:3-6; Dkt. 59-4, ¶ 8).   Because Patterson never received the August 22 letter, and knew nothing about it, Columbia's August 22 letter is ineffective and cannot support a waiver.   See Crawford, 223 S.E.2d at 490.

Second, Hoover v. Maxum Indem. Co., 730 S.E.2d 413 (Ga. 2012) does not apply because there was no pending lawsuit against Patterson when Columbia attempted to send the August 22 letter to him.   Hoover is limited to a situation in which "an insurer is faced with a decision regarding how to handle a claim of coverage at the same time a lawsuit is pending against its insured." Id. at 416; see also id. at 417 ("When an insurer is presented with notice of a claim and demand for a defense . . . .").   Here, Patterson never notified Columbia of the accident and

could not have demanded a defense since there was no lawsuit pending against him in 2013.  Accordingly, Hoover does not apply. Silverman v. Unum Life Ins. Co. of Am., 2016 WL 6211728, at *4 (N.D. Ga. July 12, 2016) (holding that Hoover did not apply because the insured was not facing a lawsuit); ApolloMD Physician Servs. GA, LLC v. Travelers Indem. Co. of Am., 2013 WL 12244918, at *7 n.6 (N.D. Ga. Feb. 22, 2013) (same); see Travelers Cas. And Surety Co. v. Stewart, 663 Fed. Appx. 784, 787 (11th Cir. 2016) (noting that Hoover did not apply because the purported insured did not request a defense).

Third, even if Hoover applied, the court held only that policy defenses like late notice can be waived; coverage defenses cannot.  Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn., 110 F. Supp. 3d 1285, 1299 (N.D. Ga. 2014) aff'd, 609 F. App'x 578 (11th Cir. 2015).  A policy defense allows an insurer to deny coverage based on an insured's failure to fulfill a procedural condition of the policy, whereas a coverage defense allows an insurer to argue that the insurance policy does not cover the specific injury.  SavaSeniorCare, LLC v. Beazley Ins. Co., 309 F.R.D. 692, 698 (N.D. Ga. 2015); Yeagley v. Allstate Ins. Co., 2009 U.S. Dist. LEXIS 70958,*14 (N.D. Ga. Aug. 12, 2009).  Accordingly, even if Hoover applied, Columbia could not have waived any coverage defenses.

Finally, Columbia could not have waived the insured's obligation to cooperate in the defense of a lawsuit because under the Policies, that duty does not arise until after suit is filed.  (Dkt. 24-4, p. 53, § IV(A)(2)(b)(3); Dkt. 24-4, p. 76, § IV(3)(c)(3)).  As noted above, as of August 22, 2013, suit had not been filed, so the duty to cooperate in the defense of a lawsuit had not arisen and could not have been waived.

The court should deny Patterson's motion because Columbia did not waive any defenses by sending the August 22 letter, which was returned as undeliverable, and of which Mr. Patterson was unaware.

### B.      Columbia did not breach the duty to defend.

Patterson next argues that Columbia breached a duty to defend him when the underlying lawsuit was filed in April 2014.  Under both Georgia law and the provisions of the policies, however, Columbia had no duty to defend Patterson because he did not notify Columbia that he was served with the complaint in the underlying case and did not request a defense.  "Georgia law requires the named insured or additional insured affirmatively to elect coverage under the policy." Stewart, 663 Fed. Appx. at 787.  Consequently, "a defendant, such as [Patterson], who may be entitled to be an additional insured under an insurance policy must 'elect' coverage by forwarding a copy of the complaint to the insurer, here

6

[Columbia]."  Grange Mut. Cas. Co. v. Snipes, 680 S.E.2d 438, 440 (Ga. App.

2009).  This is consistent with the Columbia primary policy, which provides:

> We have no duty to provide coverage under this policy unless there
> has been full compliance with the following duties:
>
> * * *
>
> (2) Immediately send us copies of any request, demand, order,
> notice, summons or legal paper received concerning the claim
> or "suit."
>
> (3)  Cooperate with us in the investigation or settlement of the
> claim or defense against the "suit."

(Dkt. 24-4, p. 53, § IV(A)(2)(b)).  The Columbia umbrella policy contains almost

identical language. (Dkt. 24-4, p. 76, § IV(3)(c)(3)).

Here, there is no dispute that Patterson never contacted Columbia after the

accident or after he was served with the complaint in the underlying case.  (Dkt.

64, 78:15 – 79:13).  He never requested a defense and did not seek coverage under

the Policies.[2]  In other words, he did not "elect" coverage as required by Georgia

law and the policy.  As a result of his inaction, Columbia had no duty to defend

him in the underlying case.

_____

[2] It makes no difference that Lawson requested a defense by Columbia because
Lawson and Patterson had conflicting interests in the underlying case—with
Lawson arguing that Patterson was outside the scope of his employment when the
accident occurred.  (Ex. E,  pp. 5-8).  Mattison v. Travelers Indem. Co., 307 S.E.2d
39, 43 (Ga. App. 1983).

7

Even if that were not the case, the allegations of the complaint in the underlying action did not trigger a duty to defend because they did not allege that Patterson had permission to operate the Lawson vehicle at the time of the accident. (Dkt. 1-7, ¶ 46).  Instead, the complaint alleged only that Patterson was operating the truck within the course and scope of his employment with Lawson.  Id.  But under Georgia law, "the issue under the permissive use or omnibus clause is not whether [the employee] was acting within the scope of his employment, as it would be if the suit were against the employer under the theory of respondeat superior." Ditmyer v. Am. Liberty Ins. Co., 160 S.E.2d 844, 848 (Ga. App. 1968); Select Ins. Co. v. Register, 384 S.E.2d 238, 240 (Ga. App. 1989).  Patterson attempts to argue that the use of the word "entrusted" in another paragraph of the complaint triggered the duty to defend, but the word "entrust" is not synonymous with "permission," and the paragraph in which the word "entrusted" appears does not refer to the date or time of the accident.  Accordingly, Columbia had no duty to defend Patterson based on the allegations of the complaint.

Finally, Columbia eventually attempted to defend Patterson in the underlying action, which it is permitted to do under Georgia law, even if the Court determines that the attempted August 22 denial was effective.  See Drawdy v. Direct Gen. Ins. Co., 586 S.E.2d 228, 230 (Ga. 2003) ("an insurer is not estopped

from changing its position after an initial denial of coverage and is allowed to seek declaratory judgment in those situations where the insurer has both indicated its willingness to reconsider its insured's claim and has positively demonstrated that it considers the question of coverage to still be in issue, e.g., by undertaking a defense of its insured under a reservation of rights.").  But Patterson rejected that defense and refused to meet with the attorneys hired to defend him.  (Dkt. 1-10; Dkt. 1-11; Dkt. 59-5, ¶¶ 76, 78; Dkt. 81:4-15).  The trial court ultimately removed defense counsel for Patterson because of his failure to cooperate with them.  (Ex. F).  Accordingly, the Court should deny Patterson's motion and hold that Columbia did not breach the duty to defend Patterson.

## C.    Patterson was not a permissive user.

Patterson is only an "insured" under the Columbia Policies if he was using the truck with Lawson's permission at the time of the accident—10:55 p.m. on Friday night in a Walmart parking lot after he left work, picked up his son, and ate dinner at a restaurant.  (Dkt. 64, 72:5-75:10; Dkt. 59-28, ¶ 54).  Patterson argues that as a matter of law, he had Lawson's implied permission to drive the truck to Walmart that night, but once again, Patterson cannot carry his burden.  Under Georgia law, courts employ an objective standard to determine if someone had permission to use a vehicle at the time of the accident.  Allstate Ins. Co. v. Spillers,

555 S.E.2d 489, 491 (Ga. App. 2001).  Under this standard, the employee's belief as to the scope of permission is irrelevant; rather, the question is "whether a reasonable person could conclude under the circumstances that the use of the [Lawson truck] fell within the scope of the permission granted by the policyholder." Id.  In this case, no reasonable person could have so concluded.

As noted above, Lawson's written company policy forbids personal use of any Lawson vehicles without managerial approval, and Patterson acknowledged receiving a copy of that policy.  (Ex. B, ¶¶ 3-5; Dkt. 59-10, pp. 5-6).  Matthew Poole, Patterson's supervisor, testified that he reviewed the company policies with Patterson when he was hired, and Patterson did not ask Poole's permission to drive the truck to Walmart on the day of the accident.  (Dkt. 65, 77:19-24, 81:11-13).  Lawson's president and its chief financial officer were not aware of any instances of unapproved personal use of company vehicles until this accident.  (Ex. A, 14:24 – 13:2, 79:20-23; Ex. B, ¶ 6).  Lawson enforced the prohibition on personal use and would reprimand any employee who violated this policy.  (Ex. A, 80:22 – 81:12, Ex. B, ¶ 3-5).  After the accident, Patterson pled guilty to DUI for being under the influence of drugs at the time of the accident.  (Ex. C).  Under these circumstances, no reasonable person could have understood that he had permission

to drive a company truck to Walmart late on a Friday night with a child in the vehicle.

A similar situation occurred in <u>Register</u>, 384 S.E.2d 238, which involved an identical policy provision affording coverage to permissive users of company vehicles. An employee of the company was involved in an accident after drinking alcohol with friends. When the employee first started with the company, he was permitted to drive his company truck for both business and personal use. <u>Id.</u> at 239. However, at some point a new manager was hired, who told the employee that he could not drive his truck "for any personal purpose." <u>Id.</u> The accident occurred on a Sunday after the employee had driven the truck to a neighbor's house, then a convenience store, and then to meet with friends to have a few beers. <u>Id.</u> After drinking for several hours, he crashed into another car on the way home and was sued by the driver of the other car.

The insurer sought a declaratory judgment that the employee was not an insured under the policy because he was driving the car for personal use when the accident occurred. <u>Id.</u> The trial court denied the insurer's motion for summary judgment on that issue, and the Georgia Court of Appeals reversed. The Court of Appeals held that the employee was not an insured under the policy because he was driving the truck for personal use when the accident occurred, and such use

was expressly prohibited by the company.  Id. at 240; see also Massachusetts Bay Ins. Co. v. Wooten, 450 S.E.2d 857, 859 (Ga. App. 1994) (reversing directed verdict in favor of purported insured where company expressly forbade personal use of vehicles).  The same reasoning applies here, where Lawson expressly prohibited driving company vehicles for personal use without manager approval, which Patterson did not obtain on the day of the accident.

Patterson cites numerous cases indicating that an insurance policy should be construed broadly to effectuate coverage, but no construction is necessary here because the Columbia Policies are not ambiguous.  O.C.G.A. § 13-2-3 (if the intention of the parties is clear, a contract "shall be enforced irrespective of all technical or arbitrary rules of construction.").  "[I]t is well-settled under Georgia law that courts may not look beyond the text of an insurance policy and apply canons of construction absent a finding of ambiguity."  Duckworth v. Allianz Life Ins. Co. of N.A., 706 F.3d 1338, 1342 (11th Cir. 2013).  Georgia courts have interpreted and applied identical permissive use provisions for decades, so the rules of contractual construction do not apply.  E.g. Williams v. Georgia Farm Bureau Mut. Ins. Co., 443 S.E.2d 711, 712 (Ga. App. 1994); Register, 384 S.E.2d 238.

Patterson also cites Am. Emp. Ins. Co. v. Johns, 178 S.E.2d 207, 209 (Ga. App. 1970) in support of his implied permission argument, but as the court in that

12

case explained: "Of course, if [the driver] had been specifically forbidden to use the Cadillac for his own personal use, there could be no implied consent."  The same is true here, where Lawson expressly prohibited personal use of its vehicles without managerial approval.  Under these circumstances, there can be no implied consent.  Id.; Register, 384 S.E.2d at 239-240.

Patterson's reliance on affidavits from two former Lawson employees, Jeff Dale and Charles Bryson, is misplaced.  Dale left the company the day after Patterson was hired, and Bryson left Lawson more than seven months before Patterson was hired, so their affidavits are not evidence of Lawson's practices when Patterson worked for the company in 2012 and 2013.  (Ex. B, ¶ 7).

The Court should deny Patterson's motion for summary judgment on this issue and hold that he did not have permission to drive the Lawson truck on the night of the accident.

### D.    Patterson breached his duty to cooperate.

As noted above, the Policies provide that an insured is required to cooperate with Columbia in the defense of any lawsuit brought against the insured, and Georgia law imposes the same obligation.  O.C.G.A. § 33-7-15; Hurston v. Georgia Farm Bureau Mut. Ins. Co., 250 S.E.2d 886, 888 (Ga. App. 1978).  "The co-operation clause is a material condition of a liability policy and a breach of it in

any material respect relieves the insurer of liability." H.Y. Akers & Sons, Inc. v. St. Louis Fire & Marine Ins. Co., 172 S.E.2d 355, 358 (Ga. App. 1969). An insurer is excused from affording coverage under this provision if: (1) the insurer reasonably requested the insured's cooperation in defending against the plaintiff's claim, (2) the insured willfully and intentionally failed to cooperate, and (3) the insured's failure to cooperate prejudiced the insurer's defense of the claim. Travelers Home & Marine Ins. Co. v. Castellanos, 773 S.E.2d 184, 186 (Ga. 2015). Those elements are established here as a matter of law.

Columbia wrote to Patterson in February and March 2016 and informed him that Columbia had agreed to defend him against the claims brought by the Dunns. (Dkt. 1-10; 1-11). Columbia retained defense counsel, who contacted Mr. Patterson to discuss his defense. (Dkt. 64, 81:4-12). Defense counsel then wrote a series of ten letters to Mr. Patterson requesting his cooperation in his defense, (Ex. G), which were sent to Patterson's correct address, (Dkt. 64, 94:20 – 95:11), and he is therefore presumed to have received them. Hagner v. United States, 285 U.S. 427, 430 (1932). These undisputed facts demonstrate that Columbia reasonably requested the insured's cooperation in defending against the plaintiff's claim. Castellanos, 773 S.E.2d at 186.

The second element of a failure-to-cooperate defense is the insured's willful failure to cooperate, which is easily established here based on the trial court's order sanctioning Mr. Patterson for failure to appear at his deposition and hearing.[3]  The trial court's order noted that Patterson's "behavior in refusing to speak to or cooperate with is current counsel casts doubt on [whether Patterson wanted them to represent him.]"  (Ex. H, p. 4).  The trial court expressly found that "Patterson willfully refused to attend his deposition," and that he "consciously and intentionally chose not to attend [the hearing] in willful disregard of the consequences."  Id. at p. 5-6.  The trial court determined that Patterson "is wholly personally responsible for his failure to attend his deposition and participate in this lawsuit."  Id. at p. 8.  The court noted that "Defendant's counsel subpoenaed the Defendant to attend the hearing but he refused to attend, ordering the representative of counsel off his property while threatening him should he return."  Id. at p. 9.  These findings establish that Patterson willfully and intentionally failed to cooperate with defense counsel hired by Columbia as a matter of law.  See H.Y. Akers & Sons, Inc. v, 172 S.E.2d at 358 (finding that the insured's refusal to appear at trial was a breach of the duty to cooperate that barred coverage).

---

[3] The trial court's findings are binding on Mr. Patterson in this case under the doctrine of collateral estoppel since he had a full and fair opportunity to contest them in that court.  See B&B Hardware, Inc. v. Hargis Ind., Inc., 135 S.Ct. 1293, 1302 (2015).

The third and final element—that the insured's failure to cooperate prejudiced the insurer's defense of the claim—is also established by the undisputed facts.  As a result of the conduct described in the previous paragraph, the trial court held that it

> cannot conceive of a more willful refusal to attend his own deposition than the history Defendant has created in this record. As such, Defendant shall not be permitted to question witnesses, put forth argument, present an opening statement at trial, or otherwise oppose the Plaintiff's showing as to damages.

(Ex. H, p. 10).  The severity of these sanctions is no different than if Patterson refused to appear at trial, just as the insured did in H.Y. Akers.  And as in Akers, Patterson's conduct was a breach of the duty to cooperate as a matter of law that bars coverage under the Columbia Policies.  H.Y. Akers & Sons, Inc. v, 172 S.E.2d at 358.

Patterson again cites Hoover to argue that Columbia waived the cooperation clause of its policy, but as noted above, Hoover does not apply, and Columbia could not have waived the cooperation clause before the lawsuit was filed.  Even if the August 22 letter was somehow effective despite Patterson's failure to receive it, Columbia was permitted to change its mind and assume the defense of Patterson. Drawdy, 586 S.E.2d at 230.  But when Columbia tried to defend Patterson, he refused to communicate or cooperate with defense counsel, resulting in harsh

16

sanctions by the trial court.  Patterson cannot now try to take advantage of the consequence of his misconduct.

The Court should deny Patterson's motion on the duty to cooperate.

### D.   Patterson failed to mitigate his damages.

Patterson finally moves for summary judgment on Columbia's affirmative defense of failure to mitigate and again falls short of the mark.  Under Georgia law, a plaintiff has a duty to mitigate his damages regardless of whether the claim is brought in contract or tort.  O.C.G.A. §§ 13-6-5; 51-12-11.  "Whether a plaintiff acted reasonably to mitigate his damages is typically a question of fact for the jury . . . ."  Knox v. Cessna Aircraft Co., 2007 WL 2874228, at *12 (M.D. Ga. Sept. 26, 2007).  Here, the trial court's findings—and the sanctions imposed— precluded Patterson from offering argument or evidence at the damages trial.  The trial court expressly found that Patterson was "wholly personally responsible for his failure to attend his deposition and participate in this lawsuit."  (Ex. H, p. 8).  It is hard to image a more quintessential example of failure to mitigate.

Patterson alleges that Columbia breached its duty to defend him when the lawsuit was filed, but even if that were true (it is not), he had a duty to mitigate his damages by accepting the defense offered by Columbia, attempting to defend

himself by hiring an attorney or acting *pro se*,[4] or at the very least not getting sanctioned by the trial court.  Instead, he refused to participate in the lawsuit at all—despite being ordered to do so by the trial court.

Patterson's argument that because he was liable for the accident, "there was nothing he could reasonably do to avoid the judgment," completely ignores the other half of the equation: damages.  Patterson could have contested the plaintiffs' damages, as defense counsel intended to do, but he lost that chance when he was sanctioned by the trial court and rejected Columbia's offered defense.  Under these circumstances, Patterson failed to use ordinary care and diligence to reduce his damages—as he is required to do under Georgia law.  See Wachovia Bank of Ga., N.A. v. Namik, 620 S.E.2d 470 (Ga. App. 2005) (holding that despite bank's breach of fiduciary duty, the plaintiff failed to mitigate his damages).

Patterson's argument that accepting Columbia's defense would have made matters worse for him is belied by the record, and is based solely on speculation. No one knows what would have happened if he accepted Columbia's defense—or sought a *pro bono* lawyer, or tried to defend himself.  Maybe defense counsel could have significantly limited the plaintiffs' damages at trial, avoiding an $11.5

---

[4] Patterson repeatedly refers to himself as "*pro se* plumber" in this section of his brief, as though being employed as a plumber somehow made him incapable of defending himself.

18

million verdict, which was certainly possible given the total medical expenses identified for all three plaintiffs in the underlying complaint was $32,600.98.  (Ex. I).  Or maybe Columbia could have settled the claims against Patterson for something closer to the $125,000 it paid to settle the claims against Lawson.  (Dkt. 62, 113:24 – 114:4; Dkt. 61, 4-:6-13).  Or maybe the plaintiffs' counsel would have made a mistake that resulted in a directed verdict.  Or maybe the judgment would have been reversed on appeal.  The fact that no one knows what would have happened is the reason this issue is inappropriate for summary judgment in favor of Patterson.  If anything, Columbia is entitled to summary judgment in its favor on this defense because Patterson literally did absolutely nothing to mitigate his damages, and there is no contrary evidence.

The Court should deny Patterson's motion for partial summary judgment on Columbia's failure-to-mitigate defense.

## IV.   <u>Conclusion</u>

The Court should deny Defendant Patterson's motion for partial summary judgment in total for the reasons expressed above.

Respectfully submitted this 18th day of December, 2018.

/s/ Stephen J. Rapp
John C. Bonnie
Georgia Bar No. 067540
Stephen J. Rapp
Georgia Bar No. 103806
srapp@wwhgd.com
*Attorneys for Columbia National Insurance Company*

WEINBERG, WHEELER, HUDGINS,
 GUNN & DIAL, LLC
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, Georgia 30326
T: (404) 876-2700
F: (404) 875-9433

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to all attorneys of record

This 18th day of December, 2018.

*/s/ Stephen J. Rapp*
Stephen J. Rapp
Georgia Bar No.: 103806