## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

AMY DUNN, individually and as the
natural parent of DANIELLE
DEMONBREUN, JAMES DUNN, and
RONALD CURTIS PATTERSON,

                        Plaintiffs,

      v.

COLUMBIA NATIONAL
INSURANCE COMPANY

                  Defendant.

CIVIL ACTION
2:17-CV-00246-RWS

## DEFENDANT'S RESPONSE IN OPPOSITION TO DUNN PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendant Columbia National Insurance Company ("Columbia") files its

Response to the Dunn Plaintiffs' Motion for Summary Judgment (Dkt. 70-1) under

Local Rule 56.1.

## I.    Summary of the Argument

This is an insurance coverage dispute arising out of an accident in which

Plaintiff Patterson hit the Dunn Plaintiffs with a truck he was driving on a Friday

night in a Walmart parking lot.  The Dunn Plaintiffs recovered a judgment against

Patterson in the underlying case and seek to recover that judgment up to the limits

1

of the insurance policies issued by Columbia to Patterson's employer, Lawson Air Conditioning & Plumbing, Inc ("Lawson").  The Dunn Plaintiffs seek summary judgment on their direct action claim, which is Count VI of the amended complaint, and the only substantive cause of action they can pursue since they are not insureds under the Columbia policies.

The primary issue in this lawsuit is whether Patterson had Lawson's permission to drive a company vehicle on the night of the accident, which determines if Patterson was insured under a primary insurance policy and umbrella policy issued by Columbia (the "Policies").  The Dunn Plaintiffs argue that Patterson had implied permission to drive the Lawson truck on the night of the accident as a matter of law.  But Lawson's owner and chief financial officer dispute that fact, and Lawson's policy manual—which Patterson acknowledged receiving—expressly prohibits personal use of company vehicles without prior approval, which Patterson did not seek on the day of the accident.  Under these circumstances, Patterson was not a permissive user as a matter of law, and the Court should deny the Dunn Plaintiffs' motion.

The Dunn Plaintiffs next argue that Columbia is estopped from disputing coverage because it initially did not defend Patterson in the underlying litigation. As third-parties who are not insureds under the Columbia policies, however, the

Dunn Plaintiffs lack standing to assert waiver or estoppel against Columbia as a matter of Georgia law.  Even if that were not the case, Columbia attempted to defend Patterson in the underlying action, but he refused to cooperate with defense counsel—ultimately resulting in their removal from the case.  Finally, Columbia has consistently maintained that Patterson is not an insured under the Columbia policies because he did not have permission to drive the Lawson truck on the night of the accident, so there is absolutely no basis for estoppel or waiver on that issue.

Accordingly, the Court should deny the Dunn Plaintiffs' motion for summary judgment.

## II.   <u>Argument</u>

### A.   **Patterson is not an insured under the Columbia policies.**

#### 1.   **The policies afford insured status only to people using a covered vehicle with Lawson's permission.**

The Columbia policies afford insured status to "[a]nyone else while using with your permission a covered auto you own…" (Dkt. 24-4, pp. 47 and 75).  The policies define "your" to mean Lawson, the named insured.  <u>Id.</u> at pp. 46 and 66.  Accordingly, whether someone is an insured under the policies depends entirely on whether that person had Lawson's permission to use a covered auto—a fact that is not controlled by the insurance policies, but by Lawson.

3

Patterson ignores this provision and argues that the policies do not distinguish between personal use and business use, but that is simply not the case because Lawson expressly prohibits personal use of its vehicles without managerial approval—and the scope of Lawson's permission is determinative. (Dkt. 59-10, pp. 5-6; Dkt. 68-4, ¶¶ 3-6).  Consequently, the relevant inquiry is whether Patterson was using the Lawson truck for personal or business use on the night of the accident, and because he was using it for personal reasons, he is not an insured under the Columbia policies.

The Dunn Plaintiffs argue that Columbia was not aware of Lawson's vehicle policies when the policies were issued, but that has no bearing on whether Patterson was an insured under the Columbia policies because that determination is based on the provisions of the policies above.  Whether Columbia was aware of Lawson's vehicle restrictions does not somehow render a contractual provision unenforceable, which appears to be what the Dunn Plaintiffs are arguing. Moreover, there is no evidence that Columbia was not aware of Lawson's vehicle policies—only that the few Columbia employees who worked on this claim were not previously aware of the vehicle restrictions.  (Dkt. 59-5, ¶¶ 20-23).

The Dunn Plaintiffs then appear to argue that Patterson had implied permission to drive the Lawson truck on the night of the accident, but they cannot

carry their burden.  Under Georgia law, courts employ an objective standard to determine if someone had permission to use a vehicle at the time of the accident.  Allstate Ins. Co. v. Spillers, 555 S.E.2d 489, 491 (Ga. App. 2001).  Under this standard, the employee's belief as to the scope of permission is irrelevant; rather, the question is "whether a reasonable person could conclude under the circumstances that the use of the [Lawson truck] fell within the scope of the permission granted by the policyholder."  Id.  In this case, no reasonable person could have so concluded.

Lawson's written company policy forbids personal use of any Lawson vehicles without managerial approval, and Patterson acknowledged receiving a copy of that policy.  (Dkt. 68-4, ¶¶ 3-5; Dkt. 59-10, pp. 5-6).  Matthew Poole, Patterson's supervisor, testified that he reviewed the company policies with Patterson when he was hired, and Patterson did not ask Poole's permission to drive the truck to Walmart on the day of the accident.  (Dkt. 65, 77:19-24, 81:11-13). Lawson's president and its chief financial officer were not aware of any instances of unapproved personal use of company vehicles until this accident.  (Dkt. 68-3, 14:24 – 13:2, 79:20-23; Dkt. 68-4, ¶ 6).  Lawson enforced the prohibition on personal use and would reprimand any employee who violated this policy.  (Dkt. 68-3, 80:22 – 81:12, Dkt. 68-4, ¶ 3-5).  After the accident, Patterson pled guilty to

DUI for being under the influence of drugs at the time of the accident.  (Dkt. 68-5).

Under these circumstances, no reasonable person could have understood that he

had permission to drive a company truck to Walmart late on a Friday night with a

child in the vehicle.

A similar situation occurred in <u>Select Ins. Co. v. Register</u>, 384 S.E.2d 238,

240 (Ga. App. 1989), which involved an identical policy provision affording

coverage to permissive users of company vehicles.  An employee of the company

was involved in an accident after drinking alcohol with friends.   When the

employee first started with the company, he was permitted to drive his company

truck for both business and personal use.  <u>Id.</u> at 239.  However, at some point a

new manager was hired, who told the employee that he could not drive his truck

"for any personal purpose."  <u>Id.</u>  The accident occurred on a Sunday after the

employee had driven the truck to a neighbor's house, then a convenience store, and

then to meet with friends to have a few beers.  <u>Id.</u>  After drinking for several hours,

he crashed into another car on the way home and was sued by the driver of the

other car.

The insurer sought a declaratory judgment that the employee was not an

insured under the policy because he was driving the car for personal use when the

accident occurred.  <u>Id.</u>  The trial court denied the insurer's motion for summary

judgment on that issue, and the Georgia Court of Appeals reversed.  The Court of Appeals held that the employee was not an insured under the policy because he was driving the truck for personal use when the accident occurred, and such use was expressly prohibited by the company.  Id. at 240; see also Massachusetts Bay Ins. Co. v. Wooten, 450 S.E.2d 857, 859 (Ga. App. 1994) (reversing directed verdict in favor of purported insured where company expressly forbade personal use of vehicles).  The same reasoning applies here, where Lawson expressly prohibited driving company vehicles for personal use without manager approval, which Patterson did not obtain on the day of the accident.

### 2.    The scope of permission granted by Lawson was limited to business use.

The Dunn Plaintiffs next argue that Lawson's prohibition on personal use of its vehicles was somehow ineffective, but their argument is based entirely on a factual error.  It is not undisputed, as the Dunn Plaintiffs contend, that Lawson gave Patterson permission to drive the truck for personal and business use. Instead, the opposite is true.  As noted above, Lawson's written company policy expressly forbids personal use of any Lawson vehicles without managerial approval, and Patterson acknowledged receiving a copy of that policy two days after he was hired.  (Dkt. 68-4, ¶¶ 3-5; Dkt. 59-10, pp. 5-6).  Matthew Poole, Patterson's supervisor, testified that he reviewed the company policies with

Patterson when he was hired, and Patterson did not ask Poole's permission to drive the truck to Walmart on the day of the accident.  (Dkt. 65, 77:19-24, 81:11-13).  Georgia courts have repeatedly recognized that such a prohibition on personal use is effective and controls whether a driver is an insured under an insurance policy.  Register, 384 S.E.2d at 240; Wooten, 450 S.E.2d at 859.

The Dunn Plaintiffs never mention these cases and, instead, cite Great American V. Anderson, 847 F.3d 1327 (11th Cir. 2017), which simply held that the relevant inquiry under a permissive use clause such as the one at issue here is the purpose for which permission is given as opposed to how the vehicle is operated.  Thus, for example, the driver in Anderson was a permissive user of the vehicle despite the fact that he operated the vehicle while intoxicated, a violation of company policy.  Id.  Here, however, Lawson employees had permission to drive company vehicles only for business purposes, not personal ones.  (Dkt. 68-4, ¶¶ 3-5; Dkt. 59-10, pp. 5-6).  That limitation has nothing to do with how the vehicle is operated; instead, it determines the scope of permission, which is the relevant inquiry under the provisions of the Columbia policies.  Register, 384 S.E.2d at 240; Wooten, 450 S.E.2d at 859; Spillers, 555 S.E.2d at 491.

The Dunn Plaintiffs next argue that Lawson's prohibition on personal use of its vehicles did not apply because a violation of that prohibition did not

automatically result in the loss of the use of the vehicle.  This argument again misses the mark because the relevant inquiry is the scope of permission, not the penalty imposed by the company for exceeding that scope.   See id.  The Dunn Plaintiffs appear to argue that Patterson had implied permission to drive the Lawson truck for personal use, but implied permission cannot exist where there is an express prohibition on personal use.  Am. Emp. Ins. Co. v. Johns, 178 S.E.2d 207, 209 (Ga. App. 1970); Register, 384 S.E.2d at 239-40.

Even if that were not the case, the facts here demonstrate that Lawson enforced its express probation on personal use of vehicles and reprimanded anyone who violated it.  (Dkt. 68-3, 80:22 – 81:12, Dkt. 68-4, ¶ 3-5).[1]  The Dunn Plaintiffs' reference to the affidavit of Lawson's former vice president, Jeff Dale, is unavailing because he left the company the day after Patterson started work in 2012, so his affidavit is not evidence of Lawson's practices when Patterson worked for the company in 2012 and 2013.  (Dkt. 68-4, ¶ 7).  And the statement that Lawson did not revoke Patterson's permission to use the truck for two weeks is misleading since Patterson would not answer his phone during that time frame. (Dkt. 70-4, 24:10 – 25:23).  Lawson attempted to contact Patterson repeatedly by phone and drove to his house on multiple occasions, but was not able to locate him

---

[1] Additional facts are located at pages 5-6 above, but will not be repeated here.

for almost two weeks, so there was no opportunity to obtain the truck from him. Id.  It is not, as the Dunn Plaintiffs imply, as if Lawson made no attempt to reach him during that time to repossess the truck.

The Dunn Plaintiffs also misconstrue the testimony of Debbie Davis, the owner and CFO of the company, when they claim that she admitted that Lawson's employees use trucks for personal use.  Her testimony is not that the employees use the vehicles for personal use, but that it theoretically "could happen."  (Dkt. 70-3, 123:7-11).

The Court should deny the Dunn Plaintiffs' motion for summary judgment on permissive use.

**B.    Columbia is not estopped from disputing coverage.**

  **1.    The Dunn Plaintiffs lack standing to assert waiver or estoppel.**

The Dunn Plaintiffs spend the next seven pages of their motion arguing that Columbia is estopped from disputing coverage in this case because it did not immediately defend Patterson in the underlying lawsuit and because its reservation of rights letters were supposedly insufficient.  But the Dunn Plaintiffs lack standing to assert waiver or estoppel under long-standing Georgia law because they are not insureds under the Columbia policies.  See Nat'l Union Fire Ins. Co. v. Am. Motorists Ins. Co., 504 S.E.2d 673, 675 (Ga. 1998); Capitol Indem. Corp. v.

Fraley, 597 S.E.2d 601, 603 (Ga. App. 2004) (holding that the injured party "lacks standing to assert the defense of waiver or estoppel against [the tortfeasor's insurer] for failing to provide a timely notice of reservation of rights."); Keever v. First Am. Title Ins. Co., 2014 WL 11460792, at *12 (N.D. Ga. May 21, 2014) ("any obligations an insurer may have flow only to its insured, and a stranger to the contract of insurance cannot draw rights thereunder based on a theory of waiver or estoppel."), aff'd, 605 F. App'x 953 (11th Cir. 2015); Pac. Specialty Ins. Co. v. Worthington, 2007 WL 9702338, at *10 (N.D. Ga. Jan. 25, 2007) ("In this case, Deveaux is a third party to and therefore has no rights under the insurance policy issued by Plaintiff to Worthington. Consequently, Deveaux does not have standing to assert the defense of waiver or estoppel against Plaintiff.").

This makes sense because waiver and estoppel exist only if the party asserting it detrimentally relied on the other party's conduct. Crawford v. First Nat. Bank of Rome, 223 S.E.2d 488, 490 (Ga. App. 1976) ("The provisions of a written contract may be waived by acts or conduct which justify the other party to believe the express provisions are waived, and even a contractual provision against waiver may be waived by conduct."); Allstate Ins. Co. v. Sapp, 477 S.E.2d 869, 871 (Ga. App. 1996) ("Estoppel requires justifiable reliance on the opposing party's representations or conduct and a change in position to one's detriment.").

Because the Dunn Plaintiffs lack standing to assert waiver or estoppel against Columbia, the Court should deny their motion for summary judgment on this issue.

### 2.    Columbia did not waive any defenses.

Even if the Dunn Plaintiffs had standing to assert the defenses of waiver or estoppel, they cannot satisfy their burden of proof because, under their theory of the case, Columbia denied coverage on August 22 or September 13, 2013, based on its determination that Patterson did not have permission to drive the Lawson truck on the night of the accident and, therefore, was not an insured under the Columbia policies.  Columbia cannot have waived or be estopped from asserting the very reason stated for its attempted denial of coverage, and the Dunn Plaintiffs completely ignore the August 22 and September 13 letters, despite asserting in discovery that "Columbia preemptively and unambiguously denied all coverage to Mr. Patterson" before the lawsuit was filed and before Columbia could have had any duty to defend.  (Dkt. 20, p.3).

The Dunn Plaintiffs cite McCraney v. Fire & Cas. Ins. Co. of Connecticut, 357 S.E.2d 327 (Ga. App. 1987), but that case completely undermines their argument.  In McCraney, the court applied well-established Georgia law and held that an insurer was entitled to assert an exclusion for non-permissive use despite its decision not to defend the driver in the underlying action.  Id. at 328.  In other

words, even if Columbia had a duty to defend Patterson and failed to do so, which is disputed, that decision does not result in the waiver of any coverage defenses. Id.

The Dunn Plaintiffs then spend one page arguing that Columbia lost the right to file a declaratory judgment action when it purportedly denied coverage to Patterson, but the Dunn Plaintiffs are not only legally incorrect, that issue is irrelevant because Columbia is not seeking a declaratory judgment. Under Georgia law, an insurer that has previously denied coverage is permitted to withdraw the denial, assume the defense of the insured, and seek a declaratory judgment if it so chooses.  Drawdy v. Direct Gen. Ins. Co., 586 S.E.2d 228, 230 (Ga. 2003).   Even if the insurer stands by its denial, the prohibition on seeking a declaratory judgment applies only in state, not federal, court.  Federal courts have consistently held that an insurer is permitted to file suit under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, even if the insurer has already denied coverage. Am. Ins. Co. v. Evercare Co., 699 F. Supp. 2d 1355, 1360 (N.D. Ga. 2010) aff'd, 430 F. App'x 795 (11th Cir. 2011).

### 3.   Columbia effectively reserved its rights.

The Dunn Plaintiffs next argue that Columbia's reservation of rights letters, which were sent to Patterson, were ineffective, but again, the Dunn Plaintiffs lack

standing to raise this argument for the reasons stated above.  Even if that were not the case, the five reasons asserted by the Dunn Plaintiffs lack merit.

First, Columbia's reservation letters were timely.  Patterson never requested a defense or contacted Columbia at any time, and Columbia therefore had no duty to defend him.[2] Travelers Cas. And Surety Co. v. Stewart, 663 Fed. Appx. 784, 787 (11th Cir. 2016) ("Georgia law requires the named insured or additional insured affirmatively to elect coverage under the policy."); Grange Mut. Cas. Co. v. Snipes, 680 S.E.2d 438, 440 (Ga. App. 2009).  Accordingly, Columbia was not even required to send Patterson a reservation letter, but it did so when it decided to offer him a defense in the underlying litigation.  (Dkt. 1-10; Dkt. 1-11).  And as noted above, even if the Court determines that Columbia had already denied coverage by that time, an insurer is permitted to withdraw the denial and assume the defense of its insured under Georgia law.   Drawdy, 586 S.E.2d at 230.

Second, Columbia's reservation letters effectively and adequately informed Patterson of Columbia's coverage position, consistent with Georgia law.  North American Specialty Insurance Company v. Bull River Marina, LLC, 709 Fed. Appx. 623, 628 (11th Cir. 2017); Wellons, Inc. v. Lexington Ins. Co., 566 Fed. Appx. 813, 821 (11th Cir. 2014).  "[A] reservation of rights need not specify each

---

[2] Columbia is not arguing that Patterson failed to comply with the notice provisions of the policy but, rather, that he did not request a defense.

and every potential basis for contesting coverage, as long as the reservation fairly informs the insured that, notwithstanding the defense of the insured, the insurer does not waive its coverage defenses." <u>Wellons</u>, 566 Fed. Appx. at 821. Columbia's letters unquestionably informed Patterson that it was offering to defend him in the lawsuit but reserved the right to assert any and all coverage defenses.   (Dkt. 1-10; Dkt. 1-11).   It does not matter if Columbia allegedly attempted to reserve a right it did not have, as the Dunn's argue, but even if were relevant, Columbia had the right to seek a declaratory judgment in federal court, <u>Am. Ins. Co. v. Evercare Co.</u>, 699 F. Supp. 2d 1355, 1360 (N.D. Ga. 2010) <u>aff'd</u>, 430 F. App'x 795 (11th Cir. 2011), so Columbia did not attempt to reserve a right that it did not have.

Third, the Dunn Plaintiffs incorrectly argue that because Columbia reserved the right to withdraw from Patterson's defense, but did not voluntarily withdraw from the defense, the reservation of rights letters did not fairly inform Patterson of Columbia's intentions.   But Georgia law does not require an insurer to do everything it says it might do in a reservation of rights letter.  <u>North American</u>, 709 Fed. Appx. at 628; <u>Wellons, Inc.</u>, 566 Fed. Appx. at 821.  Instead, a reservation letter simply has to inform the insured that the insurer is assuming the defense of the insured while reserving its right to later contest coverage.  <u>Id.</u>  Columbia's

letters did so, and Columbia was not required to withdraw from the defense of Patterson simply because it reserved the right to do so.

Fourth, the Dunn Plaintiffs argue that Columbia was not permitted to withdraw its attempted denial and offer to defense Patterson, but Georgia law provides otherwise.  Drawdy, 586 S.E.2d at 230.  Patterson was permitted to reject that defense, which he did, but that does not make the reservation ineffective or somehow result in a waiver of coverage defenses.

The Dunn Plaintiffs then argue that Columbia retained defense counsel to defend Patterson in the underlying action despite Patterson's rejection of that defense.  But it is undisputed that Patterson never formerly rejected the offered defense or communicated in any way with Columbia.  (Dkt. 64, 78:15 – 79:13; 84:3-6; Dkt. 59-4, ¶ 8).  Instead, he simply refused to communicate with defense counsel after an initial call.  (Dkt. 64, 81:4-15).  The trial court in the underlying case had to hold a hearing to determine if Patterson wanted defense counsel to represent him.  (Dkt. 68-8).  In any event, the Eleventh Circuit rejected this argument in N. Am. Specialty Ins. Co., 709 F. App'x at 629, holding that even if the insured did not receive a reservation of rights letter, the defense of the insured did not result in the waiver of any rights under the policy. Under the Columbia policies, Columbia has a right to defend any insured—a right which Columbia

16

attempted to exercise before the trial court removed defense counsel because of Patterson's failure to cooperate with them.  (Dkt. 24-4, p. 47, § II(A); Dkt. 68-8).

The Dunn Plaintiffs appear to argue that Columbia somehow assumed the defense of the insured without reserving its rights, and by doing so, waived any coverage defenses.  That concept does not apply where Columbia not only reserved its rights, but Patterson did not accept the defense, because the purpose of the waiver rule is to recognize that by accepting the insurer's defense, the insured gives up his right to control the defense, negotiate settlement, and decide which defenses are raised.  World Harvest Church, Inc. v. GuideOne Mut. Ins. Co., 695 S.E.2d 6, 12 (Ga. 2010).  Here, Patterson did not accept the defense, and Columbia did not defend Patterson without reserving its rights, so the waiver rule does not apply.

The Dunn Plaintiffs remaining arguments are a combination of those addressed above, and they will not be fully repeated here.  As previously explained, Columbia had no duty to defend Patterson because he never requested a defense or communicated with Columbia after the lawsuit was filed.  And even if the Court finds that the August 22 letter, which Patterson never received, was effective, Columbia was permitted to withdraw the denial and assume the defense of Patterson.  Drawdy, 586 S.E.2d at 230.

The Dunn Plaintiffs misleadingly quote a transcript from the trial court to make it appear as though Columbia had no explanation for its decision to defend Patterson, but the omitted language makes clear that counsel could not explain that decision because he had not asked Columbia that question and would only be speculating.  (Dkt. 70-5, 3:10-14).

The Dunn Plaintiffs want the Court to penalize Columbia for attempting to defend Patterson in the underlying action, while at the same time arguing that Columbia should have defended Patterson in the underlying action. And they fail to mention that the reason the trial court removed defense counsel for Patterson was a result of the Dunn Plaintiffs' objections—not any action taken by Patterson. (Dkt. 68-8).

The Court should deny the Dunn Plaintiffs' motion in full.

## C.    Columbia is not responsible for post-judgment interest.

The Dunn Plaintiffs finally argue that they are entitled to a judgment for the remaining limits of the Columbia policies, which they contend are $3,875,000, plus post-judgment interest on that amount from the date of the judgment in the underlying case.  But there is no record evidence of the remaining limits of the policies, and the Dunn Plaintiffs cite none other than an acknowledgement that Columbia paid $125,000 to settle the claims against Lawson in the underlying

18

case.  (Dkt. 70-1, p. 19).  In addition, and as demonstrated in section II(A) above, the Dunn Plaintiffs are not entitled to judgment against Columbia because Patterson did not have permission to drive the truck on the night of the accident; therefore, the Columbia policies do not afford coverage for the underlying judgment.

Even if that were not the case, and Columbia was responsible for the underlying judgment up to the limits of its policies, Columbia would not be responsible for post-judgment interest under the terms of the policies.  Both Columbia policies cover post-judgment interest only if a judgment is entered in a suit against an insured that Columbia defends.  (Dkt. 24-4, p. 48, § II(A)(2)(a)(6); Dkt. 24-4, p. 73, Supplementary Payments, § 1(g)).  Here, Columbia attempted to defend Patterson, but he rejected that defense, and by doing so, Patterson forfeited any coverage for post-judgment interest.  Accordingly, Occidential Fire & Cas. of N. Carolina v. Goodman, 793 S.E.2d 606 (Ga. App. 2016) does not apply.

The Court should deny the Dunn Plaintiffs' motion for summary judgment.

**III.   Conclusion**

The Court should deny Defendant Patterson's motion for partial summary judgment in total for the reasons expressed above.

Respectfully submitted this 10th day of January, 2019.

/s/ Stephen J. Rapp
John C. Bonnie
Georgia Bar No. 067540
Stephen J. Rapp
Georgia Bar No. 103806
srapp@wwhgd.com
*Attorneys for Columbia National Insurance Company*

WEINBERG, WHEELER, HUDGINS,
 GUNN & DIAL, LLC
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, Georgia 30326
T: (404) 876-2700
F: (404) 875-9433

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to all attorneys of record

This 10th day of January, 2019.

/s/ Stephen J. Rapp
Stephen J. Rapp
Georgia Bar No.: 103806