**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| AMY DUNN, individually and as the natural parent of DANIELLE DEMONBREUN, JAMES DUNN, and RONALD CURTIS PATTERSON,<br><br>     Plaintiffs,<br><br> v.<br><br>COLUMBIA NATIONAL INSURANCE COMPANY<br><br>     Defendant. | CIVIL ACTION 2:17-CV-00246-RWS |

**DEFENDANT'S RESPONSE TO THE DUNN PLAINTIFFS' STATEMENT**
**OF UNDISPUTED MATERIAL FACTS**

Defendant Columbia National Insurance Company ("Columbia") files its

Response the Dunn Plaintiffs' Statement of Undisputed Facts (Dkt. 70-8) under

Local Rule 56.1:

The Dunn Plaintiffs adopt and incorporate by reference Plaintiff Patterson's

Statement of Undisputed Material Facts in Support of Mr. Patterson's Motion for

Partial Summary Judgment (Doc 59-28) and his referenced exhibits A through Z

(Doc 59-2 through 59-27).  In response, Columbia incorporates by reference its

1

response to that statement of material facts, including exhibits, and Columbia's statement of additional facts, including exhibits.  (Dkt. 68-1 through 68-11).

126.   Columbia denied coverage to Patterson, alleging he "was not a permissive driver" of Lawson's vehicle.  (Doc 59-16)  Columbia's denial letter cited one of Lawson's internal rules as Columbia's only justification for its conclusion.

> Company trucks will not be used for personal use at any time, unless approval has been granted by Lawson Air Conditioning & Plumbing management.   NOTE Non-employees of Air Conditioning & Plumbing are NOT covered by insurance coverage if driving OR riding in a company vehicle.

(Doc 1-6, ¶2 and Doc 60, 45:6-8)

**RESPONSE:**        **Columbia objects to the characterization of this policy as an "internal rule," but does not dispute that this policy is found in Lawson's Employment Practices & Policy Manual, and does not dispute that the quoted language—"not a permissive driver"—appears in the August 22, 2013 letter, which is located at Docket 59-16.**

127.   Columbia's insurance policy does not distinguish between "personal use" and "business use."  The policy does not require that a "covered auto" be used

in the course and scope of Lawson's employment or exclude coverage for personal use.  (Doc 60, 149:10-23 and <u>Exhibit AA</u>, Fey Depo, 39:20-25)

**<u>RESPONSE:</u>**       **Columbia disputes this statement for several reasons.  First, Columbia objects to the admissibility of the testimony of Mr. Fey, Patterson's expert witness, because "[t]he construction of a contract is a matter of law for the Court, and expert legal opinion is not admissible under Fed. R. Evid. 702." <u>Armstead v. Allstate Prop. & Cas. Ins. Co.</u>, 2016 WL 4123838, at \*3 (N.D. Ga. July 1, 2016); <u>Jewelers Mut. Ins. Co. v. Mangalam, LLC</u>, 2016 WL 589697, at \*1 (N.D. Ga. Feb. 11, 2016).  Columbia also disputes the contention that the Columbia policies do not distinguish between "personal use" and "business use. The Columbia policies afford insured status to "[a]nyone else while using with your permission a covered auto you own…" (Dkt. 24-4, pp. 47 and 75). The policies define "your" to mean Lawson, the named insured.  <u>Id.</u> at pp. 46 and 66.  Accordingly, whether someone is an insured under the policies depends entirely on whether that person had Lawson's permission to use a covered auto—a fact that is not controlled by the insurance policies, but by Lawson.**

128.   Columbia charged Lawson a premium to cover employees, like Patterson, driving the truck Lawson assigned to them 24 hours a day, seven days a week.  (Exhibit AA, Fey Depo, 38:24-39:16)

**RESPONSE:     Columbia disputes this statement because the cited testimony is inadmissible and does not support the statement.  First, Mr. Fey is Patterson's expert witness, and his testimony on what the policy covers or does not cover is inadmissible.  Armstead, 2016 WL 4123838, at \*3; Jewelers Mut. Ins. Co., 2016 WL 589697, at \*1.  Second, Mr. Fey has no personal knowledge of why Columbia charged Lawson premiums.  Third, and finally, the cited testimony never mentions premiums.**

129.   Columbia had no knowledge of Lawson's cited internal rule concerning the use of Lawson's vehicles when Columbia underwrote, issued, or renewed Lawson's insurance coverage.  (Doc 59-5, RFA Nos. 20-23)

**RESPONSE:     Columbia objects to the characterization of this policy as an "internal rule," but does not dispute that the policy prohibiting personal use of company vehicles is located in Lawson's Employment Practices & Policy Manual.  Columbia disputes this statement because the cited admissions do not support it.  The admissions establish only that "before it issued the Policies, the Columbia employees who worked on this claim were not aware of**

4

the page from Lawson's Employment Practices and Policy Manual attached to these Requests for Admission as Exhibit A," and "that before the Accident, the Columbia employees who worked on this claim has not asked Lawson about Lawson's Employment Practices and Policy Manual attached to these Requests for Admission as Exhibit A."   Columbia also states that this statement is not material because whether anyone at Columbia was aware of Lawson's Employment Practices and Policy Manual before the policy was issued has no bearing on whether Patterson had permission to use the Lawson vehicle on the night of the accident.

130.   Columbia was not aware of Lawson's cited internal rule concerning the use of Lawson's vehicles until after the incident on June 7, 2013.  (Doc 60, 55:16-19)

**RESPONSE:**   **Columbia disputes this statement because the cited testimony does not support it.  Instead, the cited testimony establishes only that John Barczykowski—as opposed to Columbia—was not aware of Lawson's prohibition of personal use of its vehicles.   Columbia also states that this statement is not material because whether anyone at Columbia was aware of Lawson's Employment Practices and Policy Manual before the**

**policy was issued has no bearing on whether Patterson had permission to use the Lawson vehicle on the night of the accident.**

131.   Patterson did not steal Lawson's truck or swipe its keys from Lawson. Lawson fully expected its truck would be in Patterson's possession on the day of the accident.  (<u>Exhibit BB</u>, Lawson Depo, 123:16 – 124:9)

**<u>RESPONSE:</u>**       **Columbia does not dispute this fact for purposes of summary judgment.**

132.   Patterson had been driving the truck as his primary vehicle for approximately one year.  (Doc 64, 14:5 – 15:7)

**<u>RESPONSE:</u>**       **Columbia does not dispute this fact for purposes of summary judgment.**

133.   Columbia has denied coverage to Patterson based on his alleged violations of Lawson's internal rules.  Lawson did not enforce its internal rules. (Doc 60, 45:18 – 46:18, Doc 59-3, ¶10 and Doc 65, 78:22 – 79:11)

**<u>RESPONSE:</u>**       **Columbia objects to the characterization of this policy as an "internal rule," but does not dispute that the policy prohibiting personal use of company vehicles is located in Lawson's Employment Practices & Policy Manual.  Columbia also notes that although Columbia attempted to send two letters to Patterson denying coverage for the accident, Patterson did not**

6

**receive either of them.  (Dkt. 64, 46:6-13, 84:3-6; Dkt. 59-13, p.5, Sept. 13 note;**

**Dkt. 59-4, ¶ 8).  Columbia disputes the statement that Lawson did not enforce**

**its prohibition on personal use of its vehicles without managerial approval;**

**Lawson regularly enforced this policy.  (Dkt. 68-4, ¶¶ 3-6).  Lawson did not**

**permit the use of marked company vehicles unless the employee first obtained**

**permission from Lawson management.  Id.; Dkt. 68-3, 79:20-23.**

134.   Lawson had a variety of internal rules for company owned vehicles:
B – Valid driver's license, C – Reporting repairs, D – Accumulated trash, E –
Obey traffic laws, G – Lock vehicles.  (Exhibit BB, Lawson Depo, 113:3 – 15)

**RESPONSE:        Columbia objects to the characterization of these policies as**

**"internal rules" and disputes that the statement is supported by the cited**

**deposition testimony, which says nothing about "internal rules" and does not**

**describe any of these policies.  Columbia does not dispute that these policies**

**are located in Lawson's Employment Practices & Policy Manual.**

135.   Columbia could have plainly stated its policy does not cover an
employee's "personal use" of Lawson's truck with an exclusion.  (Exhibit AA, Fey
Depo, 39:15-16)

**RESPONSE:        Columbia objects to the admissibility of the cited testimony**

**of Mr. Fey, Patterson's expert witness, because "[t]he construction of a**

contract is a matter of law for the Court, and expert legal opinion is not admissible under Fed. R. Evid. 702." **Armstead v. Allstate Prop. & Cas. Ins. Co.**, 2016 WL 4123838, at *3 (N.D. Ga. July 1, 2016); **Jewelers Mut. Ins. Co. v. Mangalam, LLC**, 2016 WL 589697, at *1 (N.D. Ga. Feb. 11, 2016)

136.  Patterson had "permission" and was "authorized" to drive the truck Lawson assigned to him, as well as other Lawson vehicles.  (Exhibit BB, Lawson Depo, 109:13-24)

**RESPONSE:** **Columbia does not dispute that Patterson had permission to drive the truck assigned to him for business purposes, but he was prohibited from driving the truck for personal use without managerial approval. Lawson did not permit personal use of marked company vehicles unless the employee first obtained permission from Lawson management.  (Dkt. 59-10, p. 5; Dkt. 68-4, ¶¶ 3-6; Dkt. 68-3, 79:20-23.).**

137.  Patterson's supervisor did not enforce Lawson's internal rule H. concerning personal use of Lawson's trucks.  (Doc 65, 78:22 – 79:11 and video excerpt filed separately)

**RESPONSE:** **Columbia objects to the characterization of this policy as an "internal rule," but does not dispute that the policy prohibiting personal use of company vehicles is located in Lawson's Employment Practices & Policy**

**Manual. (Dkt. 59-10, p. 5).  Columbia does not dispute that Mr. Poole testified that Lawson did not enforce this prohibition, but disputes this contention, as Lawson regularly enforced this policy and would reprimand any employee who violated this policy.  (Dkt. 68-3, 80:22 – 81:12; Dkt. 68-4, ¶¶ 3-6).**

138.   Lawson employees would use the truck Lawson assigned to them for personal errands to travel to Hall County Parks and Rec, Gainesville Parks and Rec, or other local youth sport practices and ball games.   Lawson allowed employees to use the truck assigned to them for these and similar personal errands without having to ask Lawson management permission to do so.  (Doc 59-3, ¶6 and Doc 65 43:3-18, 44:13-45:2)

**RESPONSE:       Columbia disputes this statement.   Lawson enforced the prohibition on personal use and would reprimand any employee who violated this policy.  (Dkt. 68-3, 80:22 – 81:12; Dkt. 68-4, ¶¶ 3-6).**

139.   Lawson employees would use the truck Lawson assigned to them for personal errands to travel to high school sporting events.   Lawson allowed employees to use the truck assigned to them for these and similar personal errands without having to ask Lawson management permission to do so.  (Doc 59-3, ¶6 and Doc 65 45:8-21)

**RESPONSE:**       **Columbia disputes this statement.   Lawson enforced the prohibition on personal use and would reprimand any employee who violated this policy.  (Dkt. 68-3, 80:22 – 81:12; Dkt. 68-4, ¶¶ 3-6).**

140.   Lawson employees would use the truck Lawson assigned to them for personal errands to travel to church on Wednesday evenings after work, and on Sundays.  Lawson allowed employees to use the truck assigned to them for these and similar personal errands without having to ask Lawson management permission to do so.  (Doc 59-3, ¶6 and Doc 65 45:22-46:18)

**RESPONSE:**       **Columbia disputes this statement.   Lawson enforced the prohibition on personal use and would reprimand any employee who violated this policy.  (Dkt. 68-3, 80:22 – 81:12; Dkt. 68-4, ¶¶ 3-6).**

141.   Lawson employees would use the truck Lawson assigned to them for personal errands to travel to the grocery store, convenience store, Walmart, Target, or other similar department stores for personal matters.   Lawson allowed employees to use the truck assigned to them for these and similar personal errands without having to ask Lawson management permission to do so.  (Doc 59-3, ¶6 and Doc 65 46:19-47:1)

**RESPONSE:** **Columbia disputes this statement. Lawson enforced the prohibition on personal use and would reprimand any employee who violated this policy. (Dkt. 68-3, 80:22 – 81:12; Dkt. 68-4, ¶¶ 3-6).**

142. From November of 2009 through the time of this incident in June of 2013 there was no real change in Lawson's internal rules, policies, or procedures for company-owned vehicles. (Doc 65 16:17-17:3, 17:9-17:13)

**RESPONSE:** **Columbia disputes this statement because the cited testimony does not support it. Mr. Poole testified only that he did not recall any changes, not that there were no such changes.**

143. From November of 2009 through 2017 there was no real change in how Lawson enforced its internal rules, policies, or procedures for company-owned vehicles. (Doc 65 17:4-8, 19:19-20:1)

**RESPONSE:** **Columbia disputes this statement because the cited testimony does not support it. Mr. Poole testified only that he did not recall any change, not that there was no such change.**

144. Lawson's owner acknowledged that Lawson applied its internal rules on a "case by case basis." (Exhibit BB, Lawson Depo 117:20 – 123:15)

11

**RESPONSE:** **Columbia disputes this statement because the cited testimony does not support it. The testimony does not say that Policy H, the prohibition on personal use of vehicles, was enforced on a case-by-case basis.**

145. Lawson's internal rule H concerning personal use of Lawson's trucks was never enforced on Patterson or his co-workers. (Doc 59-3, ¶10; Doc 59-4, ¶¶3-4; Doc 59-8, ¶¶3-4; and Doc 59-9, ¶¶4, 5, 7 and 8)

**RESPONSE:** **Columbia disputes this statement. Lawson enforced the prohibition on personal use and would reprimand any employee who violated this policy. (Dkt. 68-3, 80:22 – 81:12; Dkt. 68-4, ¶¶ 3-6).**

146. Lawson's employees had Lawson's "permission" to use the vehicle Lawson assigned to them even if the employee used the truck for "personal use". Lawson further recognized that its employees did use Lawson trucks for personal use:

> Q: All right. And I'm assuming, like the other policies, if someone fails to follow policy H, that they do not automatically lose their permission to use Lawson's truck; is that fair?
>
> **A: That's fair. But as you see, you read on, it says disciplinary action will be taken against violators.**
>
> Q: Okay. So if they violate provision H, they don't automatically lose Lawson's permission to use the truck, but they could be subject to Lawson's disciplinary actions; is that correct?
>
> **A: Right.**

Q:  All right.  And I'm assuming that -- that like the other policies, if that became a problem, then -- and Lawson became aware of it, then Lawson could revoke its permission to allow the employee to use the truck; is that correct?

**A:  That is a disciplinary action at our disposal.  Yes.**

Q:  Okay.  And is it fair to say that occasionally, that some of Lawson's employees may use some of Lawson's vehicles on -- for personal use, from time to time?

**A:  It is against policy, but I would -- that could happen, yes.**

Q:  Okay.  And just because that happens doesn't mean that Lawson automatically revokes its permission to the employee to use the vehicle; is that fair?

**A:  That's correct.**  (Exhibit BB, Lawson Depo 122:16 – 123:15)

**RESPONSE:** **Columbia disputes this statement.  Lawson enforced the prohibition on personal use and would reprimand any employee who violated this policy.  (Dkt. 68-3, 80:22 – 81:12; Dkt. 68-4, ¶¶ 3-6).  In addition, the cited testimony does not say that any employees used their vehicle for personal use, only that they theoretically "could."**

147.  If an employee fails to follow an internal rule concerning company owned vehicles, the employee still has Lawson's permission to use the truck.  The employee will not lose permission until somebody from Lawson informs the employee Lawson's permission is revoked.  (See general discussion of each of

13

Lawson's internal rules for company owned vehicles Exhibit BB, Lawson Depo 113:3-123:15)

**RESPONSE:       Columbia objects to the characterization of this policy as an "internal rule," but does not dispute that the policy prohibiting personal use of company vehicles is located in Lawson's Employment Practices & Policy Manual. (Dkt. 59-10, p. 5).  Columbia does not dispute that Lawson does not automatically revoke permission to drive a company vehicle if an employee violates a company policy.**

148.   Lawson did not revoke Patterson's permission to use Lawson's Truck until almost two weeks after this incident occurred.  One of Patterson's supervisor went to Patterson's home and retrieved his keys and company-issued phone and gas card.  (Exhibit CC, Rich Depo 24:13 – 25:3 and Doc 59-2 42:8 – 43:4)

**RESPONSE:       Columbia disputes this statement because the cited testimony says nothing about revoking permission. Columbia does not dispute that it was not able to retrieve the truck from Patterson for almost two weeks after the accident, but that was because Patterson would not answer his phone during that time frame.  (Dkt. 70-4, 24:10 – 25:23).  Lawson attempted to contact Patterson repeatedly by phone and drove to his house on multiple**

14

occasions but was not able to locate him for almost two weeks, so there was no

opportunity to obtain the truck from him.  **Id.**

149.   Lawson's internal rule H does not proscribe a lack of coverage for an

employee's personal use of a company vehicle.  (Exhibit BB, Lawson Depo 128:2-

11)

**RESPONSE:        Columbia objects to the characterization of this policy as an**

**"internal rule," but does not dispute that the policy prohibiting personal use**

**of company vehicles is located in Lawson's Employment Practices & Policy**

**Manual. (Dkt. 59-10, p. 5). Columbia disputes this statement because the cited**

**testimony is not included in Exhibit BB.  Columbia does not dispute that**

**policy H in Lawson's Employment Practices & Policy Manual mentions**

**insurance coverage only with respect to non-employees of Lawson. (Dkt. 59-**

**10, p. 5).**

150.   Columbia admits the "number one" reason Columbia continued to

defend without Patterson's consent and without timely and properly reserving its

rights is that Columbia was trying to protect Columbia's interests, not Patterson's.

(Doc 61, 44:24-45:25, 149:3-10)

**RESPONSE:        Columbia disputes this statement because the cited**

**testimony does not support it.  Mr. Burroughs testified as an individual, not as**

a representative of Columbia under Fed. R. Civ. P. 36, and there is no testimony about "continu[ing] to defend without Patterson's consent and without timely and properly reserving its rights" as stated here.  The question asked of Mr. Burroughs was why did Columbia decide to defend Mr. Patterson in February 2016, to which Mr. Burroughs responded as follows:

> We had settled the Lawson case -- when I say "we," I'm referring to Columbia, had settled the Lawson's case. The only pending case was the Patterson case, to the best of my recollection.  And in retaining counsel for Patterson, we believe that we would have been able to keep down any damage award against Mr. Patterson for the injuries sustained to the Dunns. And in doing so, in keeping down the damages, it would probably decrease the likelihood that the attorneys for the Dunns would try to file suit against Columbia to try to collect on a small award, or a smaller award.

(Dkt. 61, 44:24 – 45:12).

151.   The trial court in the Underlying Lawsuit specifically asked Columbia for its justification for the untimely reservation of rights and assignment of counsel to Patterson.  (Exhibit DD, Transcript 6/26/16, 32:6-15)

> THE COURT:  What's the justification for Columbia waiting two and a half years -- specifically more important to us seven days after mediation with the other person to afford Mr. Patterson counsel?
> Columbia's eventual response:
> MR. WILLIAMS:  … "I can't tell you."

**RESPONSE:**   Columbia objects to this statement as not material and inadmissible under Fed. R. Evid. 401 because the trial court's question of an

16

attorney for a non-party in the underlying case has no bearing on the claims or defenses at issue in this case and is not relevant.  Columbia also disputes the statement because it is missing important language which makes it clear that counsel could not explain that decision because he had not asked Columbia about it and would only be speculating.  (Dkt. 70-5, 3:10-14). Finally, Columbia disputes this statement because the cited language says nothing about an "untimely reservation of rights," nor does it say that anything was "untimely."

152.   In reviewing Gray Rust's initial right to appear on behalf of Patterson, the trial court expressed is frustration and disapproval of Columbia's contradictory positions.  (Exhibit EE, order, p. 6)  The trial court prophetically observed:  … Columbia National may, through its course of action and potentially untimely reservation of rights, be estopped from asserting the defense of noncoverage or be deemed to have waived its right to deny liability under the policy. …In sum, by failing to follow the "proper and safe course of action," Columbia National may find itself in an unfavorable position in future litigation, but that would be a determination for a different court."  (Exhibit EE, order, p. 6-7)

**RESPONSE:**       **Columbia objects to this statement as not material and inadmissible under Fed. R. Evid. 401 because the trial court's observation in**

the underlying case has no bearing on the Dunns' only claim in this case, which depends on whether Patterson had permission to dive he Lawson truck on the night of the accident.  The issues on which the trial court commented were not before the court at that time.  Columbia also objects to this statement under Fed. R. Evid. 403 because its lack of probative value is substantially outweighed by the danger of unfair prejudice.  Columbia further disputes the Dunn Plaintiffs' characterization of the trial court's order as "expressing [ . . . ] frustration [or] disapproval of Columbia's contradictory positions." The cited testimony says nothing about frustration or contradictory positions. In addition, the court expressly acknowledged that it was not its role to make any determinations about coverage or Columbia's actions, deferring instead to "a different court."

153.  Even though Patterson rejected Columbia's defense, Columbia continued to defend Patterson for over a year.  (Doc 59-5, RFA Nos. 79-87 and Exhibit FF)

**RESPONSE:**    Columbia disputes this statement because it implies that Patterson formerly rejected Columbia's defense or otherwise communicated with Columbia about his defense.  Instead, it is undisputed that Patterson never formerly rejected the offered defense or communicated in any way with

18

**Columbia.  (Dkt. 64, 78:15 – 79:13; 84:3-6; Dkt. 59-4, ¶ 8).  Instead, he simply refused to communicate with defense counsel after an initial call.  (Dkt. 64, 81:4-15).  The trial court in the underlying case had to hold a hearing to determine if Patterson wanted defense counsel to represent him.  (Dkt. 68-8).**

154.   In this case, the Dunn Family has an unsatisfied judgment against a Columbia insured that is far in excess of the available policy proceeds.  (Doc 1-12)

**RESPONSE:**        **Columbia does not dispute this statement.**

155.   The primary policy limits are $1 million.  (Doc 24-4, page 7 of 152) The umbrella policy limits are $3 million.  (Doc 24-4, page 63 of 152)   Total policy limits are $4 million.

**RESPONSE:        Columbia does not dispute that the total limits of the policies is facially $4,000,000, but Columbia notes that it paid $125,000 to settle the claims against Lawson in the underlying action, so the total available limits cannot exceed $3,875,000.  Columbia also notes that there is no evidence of whether this amount has been reduced by payment of claims other than the settlement of the Lawson claims in the underlying case.**

156.   Columbia paid $125,000 of those limits to settle the claims against Lawson.  (Doc 68-2, Par. 38)

**RESPONSE:**        **Columbia does not dispute this statement.**

157.   The primary policy provides coverage for "Supplementary Payments" that include the following:

> We will pay for the "insured":  [¶]  **All interest on the full amount of any judgment that accrues after entry of the judgment** in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court that part of the judgment that is within our Limit of Insurance.

(Doc 24-4, page 48 of 152, §2.a(6) (emphasis added))  The umbrella policy has a substantially similar provision.  It provides coverage for "All interest on the full amount of any judgment."  (Doc 24-4, page 73 of 152, §1.g)

**RESPONSE:**      **Columbia does not dispute that the quoted language appears in the policies, but notes that these quotes omit certain critical language that is found in the policies.**

158.   Post-judgment interest accrues at an annual rate of seven percent (7%).  (Compare, Doc 1, ¶66 with Doc 9, ¶66)  The judgment was rendered on June 8, 2017, in the amount of $11.5 million.  (Doc 1-12)  Thus, post-judgment interest accrues annually at $805,000 or daily at approximately $2,205.47, rounded down to the nearest cent.

**RESPONSE:**      **Columbia does not dispute these figures, but disputes that the Columbia Policies afford coverage for post-judgment interest.**

20

Respectfully submitted this 10th day of January, 2019.

> /s/ Stephen J. Rapp
> John C. Bonnie
> Georgia Bar No. 067540
> Stephen J. Rapp
> Georgia Bar No. 103806
> srapp@wwhgd.com
> *Attorneys for Columbia National Insurance*
> *Company*

WEINBERG, WHEELER, HUDGINS,
  GUNN & DIAL, LLC
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, Georgia 30326
T: (404) 876-2700
F: (404) 875-9433

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to all attorneys of record

This 10th day of January, 2019.

/s/ Stephen J. Rapp
Stephen J. Rapp
Georgia Bar No.: 103806