# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| AMY DUNN, individually and as the natural parent of DANIELLE DEMONBREUN, JAMES DUNN, and RONALD CURTIS PATTERSON,<br><br>     Plaintiffs,<br><br> v.<br><br>COLUMBIA NATIONAL INSURANCE COMPANY<br><br>     Defendant. | CIVIL ACTION 2:17-CV-00246-RWS |

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Columbia National Insurance Company ("Columbia") files its Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment under Local Rule 56.1.[1]

---

[1] The exhibits cited in this statement of facts are attached to Columbia's motion for summary judgment and are incorporated herein by reference.

## I.    Lawson's Prohibition on Personal Use of its Trucks.

1.    Lawson Air Conditioning & Plumbing, Inc. ("Lawson") hired Curtis Patterson as a plumber's foreman on June 12, 2012, and assigned him a Chevrolet truck to drive for work.  (Ex. A, Dkt. 64, 10:12-21; 14:5-11; Dkt. 68-6).

2.    Lawson did not allow employees to use marked company vehicles for personal use without managerial approval.  (Ex. B, Dkt. 68-3, 79:20-23; Dkt. 68-4, ¶¶ 3-5).

3.    This policy was set forth in Lawson's Employment Practices and Policy Manual (the "Manual"), which states that: "Company trucks will not be used for personal use at any time, unless approval has been granted by [Lawson] management. . . . Disciplinary action will be taken against violators."  (Dkt. 59-10, p. 5, § H).

4.    Patterson's supervisor reviewed the Manual with Mr. Patterson on the day Patterson was hired.  (Ex. C, Dkt. 65, 77:19-24)

5.    Patterson acknowledged in writing that he received the Manual, (Dkt. 59-10, pp. 5-6), and he never requested approval to use his truck for personal use on the day of the accident.  (Ex. C, 81:3-19).

6.     Lawson enforced the prohibition on personal use and would reprimand any employee who violated this policy.  (Ex. B, 80:22 – 81:12, Dkt. 68-4, ¶ 3-5).

## II.    The Accident

7.     On June 7, 2013, members of the Dunn Family were walking out of a Walmart in Gainesville, Georgia, when they were struck by Patterson, who was driving the truck assigned to him by Lawson. (Dkt. 59-5, ¶ 1).

8.     The accident occurred at 10:55 p.m. on a Friday night in the Walmart parking lot after Patterson left work, picked up his son, and ate dinner at a restaurant.  (Ex. A, 72:5-75:10).

9.     Patterson pled guilty to a charge of "DUI-DRUGS LESS SAFE" and "DUI-ENDANGERMENT OF A CHILD UNDER AGE 14" as a result of the accident.  (Dkt. 68-5).

10.    Patterson admits that "the accident was one hundred percent my fault." (Ex. A, 39:18-19; Dkt. 59-5, ¶ 4).

11.     No member of the Dunn Family was in any way at fault for causing the Accident.  (Dkt. 59-5, ¶ 3).

12.    Patterson did not contact Columbia after the accident.  (Ex. A, 78:15 – 79:13; Dkt. 59-4, ¶ 8).

### III.   The Columbia Policies

13.   Columbia issued two insurance policies to Lawson: a primary business auto policy, number CAPGA0000026827, with effective dates of July 1, 2012, to July 1, 2013 (the "Primary Policy"); and a commercial umbrella policy, number CUPGA0000026827, with effective dates of July 1, 2012, to July 1, 2013 (the "Umbrella Policy").  (Dkt. 24-4, pp. 5 and 64).

14.   At the time of the accident, the truck was a "covered auto" under the Primary Policy.  (Dkt. 59-5, ¶ 7).

15.   The Columbia policies afford insured status to "[a]nyone else while using with your permission a covered auto you own . . . ." (Dkt. 24-4, pp. 47 and 75).  The policies define "your" to mean Lawson, the named insured.  Id. at pp. 46 and 66.

16.   The Primary Policy provides that Columbia "has the right and duty to defend any 'insured' against a 'suit' asking for such damages or a 'covered pollution cost or expense.'" (Dkt. 24-4, p. 47, § II(A)).

17.   The Policies require any insured to "cooperate with us in the investigation or settlement of the claim or defense against the 'suit.'" (Dkt. 24-4, p. 53, § IV(A)(2)(b)(3); p. 76, § IV(3)(c)(3)).

## IV.    The Claim

18.    Lawson notified Columbia of the accident on June 10, 2013.  (Dkt. 1-3).

19.    Columbia assigned John Barczykowski to handle the claim the following day.  (Dkt. 59-13, June 11 note).

20.    Mr. Barczykowski contacted the owner and chief financial officer of Lawson, Debbie Davis, who told him that Patterson did not have permission to drive the truck on the night of the accident and sent him a copy of the Manual. (Dkt. 59-13, June 11 Note; Dkt. 68-4, ¶ 2; Ex. D, Dkt. 60, 63:5-8, 64:16-19; Dkt. 59-10).

21.    Barczykowski called Patterson to ask him about the accident, but could not reach him and was not able to leave a message.  (Dkt. 59-13, June 11 Note; Ex. D, 72:9-15).

22.    Barczykowski obtained an alternative number for Patterson and left a message for Patterson at that number.  (Ex. D, 72:23 – 73:3).

23.     Barczykowski also sent a letter to Patterson on June 11, 2013, which stated: "Please contact me at your earliest convenience to discuss the above-captioned accident.  I am available Monday through Friday, 8:00 AM – 4:00 PM at

(770) 410-3726.  I look forward to hearing from you."  (Dkt. 59-15).  The letter was not returned to Columbia.  (Ex. D, 69:17-19).

24.    Patterson did not respond to the call or letter.  (Ex. D, 67:13-15; Ex. A, 78:15 – 79:13; Dkt. 59-4, ¶ 8).

25.    Debbie Davis informed Barczykowski that Patterson stopped working at 4:00 p.m. on the day of the accident.  (Ex. A, 57:18 – 58:11; Ex. J, July 16, 2013 Email).

26.    Barczykowski also reviewed the Primary Policy, the police report, and the Manual as part of his investigation.  (Dkt. 59-13, June 11 Note, June 12 Note, and June 20 Notes; Ex. D, 170:21 – 171:13).

27.    Barczykowski attempted to contact one of the victims from the accident, Amy Effler, by phone, and left a voicemail for her; he also searched Facebook to investigate the extent of her alleged injuries.  (Dkt. 59-13, June 20 Note).

28.     He also spoke with one of the victim's sister-in-law, and with the plaintiffs' attorney, about the accident.  Id. at June 21 and June 25 Notes.

29.    After completing his investigation, Barczykowski decided to deny coverage to Patterson based on Barczykowski's conclusion that Patterson was not

an insured under the Primary Policy because Patterson did not have permission to drive the truck on the night of the accident.  (Ex. D, 45:6-25).

30.     Barczykowski sent two letters to Patterson at two different addresses attempting to explain Columbia's coverage decision, but both letters were returned to Columbia.  (Dkt. 59-16; Ex. A, 46:2 – 47:1; Dkt. 59-13, p.5, Sept. 13 note).

31.     Patterson claims that he had no communication with Columbia until February 2016, so he was not aware of Columbia's attempted denial of coverage in 2013, 2014, or 2015. (Ex. A, 84:3-6; Dkt. 59-4, ¶ 8).

**V.     The Lawsuit**

32.     The Dunn Plaintiffs sued Patterson and Lawson on April 7, 2014, in a case styled *Amy Dunn and James Dunn, individually, and Amy Dunn as the natural parent of Danielle Demonbreun v. Ronald Patterson and Lawson Air Conditioning and Plumbing, Inc.*, State Court of Hall County, Georgia, Civ. Action No. 2014-cv-200-z (the "Underlying Action").  (Dkt. 59-17).

33.     The complaint in the Underlying Action included an exhibit which identified the plaintiffs' total medical costs as $32,600.98.  (Dkt. 59-17, p. 14).

34.     Patterson did not contact Columbia after he was served with the complaint in the Underlying Action and did not request a defense. (Ex. A, 79:5-13; Dkt. 61, 71:5-12).

35.     Columbia hired attorney Richie Foster to defend Lawson in the underlying action, and David Hubbard at Columbia was in charge of that defense and associated claim file.  (Ex. F, 53:6-13; Dkt. 59-5. ¶ 55).

36.     Columbia also set up a separate file to address any coverage questions concerning the lawsuit.   Id. at 31:9 – 32:20; 37:15-18.   Columbia assigned employee Preston Burroughs to the coverage file, and he retained attorney Bill Strickland to provide legal advice to Columbia.  Id.

37.     Columbia did not initially retain defense counsel for Patterson in the Underlying Action, and Patterson went into default because he did not file an answer.  (Dkt. 59-5, ¶¶ 56-57).

38.     Columbia settled the claims against Lawson in the Underlying Action for $125,000.  (Ex. F, 113:24 – 114:4; Ex. E, 4-:6-13).

39.     Columbia attempted to settle the claims against Patterson during the mediation at which it settled the claims against Lawson, but Columbia was not able to effectuate a global settlement.  (Ex. F, 35:3-18, 64:6-15; 65:13-22).

40.     In February 2016, Columbia retained defense counsel to appear for and defend Patterson in the Underlying Action.  (Ex. E, 44:19 – 45:20; Dkt. 1-10; Dkt. 1-11).

41.     Columbia decided to defend Patterson because it believed that defense counsel could limit any potential damage award against Patterson to an amount equal to or less than the $125,000 paid to settle the claims against Lawson, and in doing so, reduce the likelihood of any future litigation against Columbia.  (Ex. E, 44:24 – 45:12; 47:4-15; 48:24 – 49:13).

42.     Columbia sent two separate letters to Patterson on February 26, and March 1, 2016, notifying him that Columbia had retained counsel to defend Patterson in the Underlying Action subject to a reservation of rights.  (Dkt. 1-10; Dkt. 1-11).

43.     Columbia retained David Sawyer and Michael Rust to defend Patterson in the Underlying Action.  (Ex. E, 4-15; Dkt. 68-1, ¶ 118).

44.     Sawyer contacted Patterson to discuss his defense.  (Ex. A, 81:4-12; Dkt. 59-4, ¶ 8).

45.     Defense counsel then wrote a series of ten letters to Mr. Patterson requesting his cooperation in his defense, (Dkt. 68-9), which were sent to Patterson's correct address.  (Ex. A, 94:20 – 95:11).

46.     Patterson rejected the offered defense and refused to meet with the attorneys hired to defend him.  (Dkt. 59-5, ¶¶ 76, 78; Ex. A, 81:4-15).

47.   The only reason Patterson rejected the defense offered by Columbia was that he discovered that Lawson was no longer a defendant in the underlying case.  (Ex. A, 82:4-22).

48.   The plaintiffs in the Underlying Action offered to settle the claims against Patterson for $1,125,000 on August 18, 2016.  (Dkt. 1-13).

49.   Patterson was informed of the offer.  (Ex. K, Aug. 19, 2016 Letter).

50.   Columbia employee Preston Burroughs, who was assigned to handle the coverage aspects of the Underlying Action, evaluated the offer based on all of the information he learned in his investigation of the matter and the Underlying Action.  (Ex E, 89:22 – 91:19).

51.   At that point in the Underlying Action, several Lawson employees had been deposed, including Patterson's supervisor and the president of the company, both of whom testified that they were not aware of a single instance of someone using a Lawson vehicle for personal use without permission. (Ex. G, Dkt. 84, 90:22-25; Ex. H, Dkt. 83, 79:20 – 81:12).

52.   Lawson's chief financial officer had also affirmed the prohibition on personal use. (Ex. I, Dkt. 82, 110:6-13).

53.   After his evaluation, Burroughs rejected the settlement offer because he believed the amount was unreasonable based on (1) a determination that a trial

verdict could be held to $125,000 or less, and (2) the fact that Patterson was not an insured under the Policies.  (Dkt. 1-14; Ex. E, 89:22 – 94:4).

54.    The trial court in the Underlying Action ultimately removed defense counsel for Patterson because of his failure to cooperate with them.  (Dkt. 68-8).

55.    In addition, the trial court in the Underlying Action sanctioned Patterson for failure to appear at his deposition and at a court-ordered hearing. (Dkt. 68-10).

56.    The trial court expressly found that "Patterson willfully refused to attend his deposition," and that he "consciously and intentionally chose not to attend [the hearing] in willful disregard of the consequences."  Id. at p. 5-6.

57.    The court noted that "Defendant's counsel subpoenaed the Defendant to attend the hearing but he refused to attend, ordering the representative of counsel off his property while threatening him should he return."  Id. at p. 9.

58.    The trial court ordered that "Defendant shall not be permitted to question witnesses, put forth argument, present an opening statement at trial, or otherwise oppose the Plaintiff's showing as to damages."   Id. at p. 10.

59.    In its order, the trial court noted that Patterson's "behavior in refusing to speak to or cooperate with is current counsel casts doubt on [whether Patterson wanted them to represent him.]"  Id. at p. 4.

11

60.  The trial court determined that Patterson "is wholly personally responsible for his failure to attend his deposition and participate in this lawsuit." Id. at p. 8.

61.  After the court removed Sawyer and Rust from the case, Columbia sent another letter to Patterson denying coverage for two reasons:  (1) that he was not a permissive driver and (2) that he failed to cooperate with defense counsel in the Underlying Action, resulting in sanctions by the Court which impaired the ability to provide any defense at trial.  (Dkt. 59-25).

62.  The Underlying Action proceeded to trial against Patterson, without defense counsel, and the jury returned a verdict of $11,500,000.  (Dkt. 59-28, ¶¶ 123-124).

63.  The court entered judgment against Patterson for that amount.  (Dkt. 59-28, ¶ 125).

64.  In this case, Patterson asserts causes of action against Columbia for breach of the duty to defend (Count 2) and common law negligent/bad faith failure to settle the Underlying Action (Count 3).  (Dkt. 1).

65.  Patterson seeks punitive damages from Columbia.  (Dkt. 1).

Respectfully submitted this 20th day of February, 2019.

/s/ Stephen J. Rapp
John C. Bonnie
Georgia Bar No. 067540
Stephen J. Rapp
Georgia Bar No. 103806
srapp@wwhgd.com
*Attorneys for Columbia National Insurance Company*

WEINBERG, WHEELER, HUDGINS,
 GUNN & DIAL, LLC
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, Georgia 30326
T: (404) 876-2700
F: (404) 875-9433

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to all attorneys of record

This 20th day of February, 2019.

/s/ Stephen J. Rapp
Stephen J. Rapp
Georgia Bar No.: 103806