IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| AMY DUNN, et al., )<br><br>                Plaintiffs, )<br><br>v. )<br><br>COLUMBIA NATIONAL INSURANCE<br>COMPANY, )<br><br>                Defendant. ) | CIVIL ACTION<br>FILE NO. 2:17-CV-00246-RWS |

## CURT PATTERSON'S BRIEF IN OPPOSITION
## TO COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

Presented with a clear-liability, high-damages claim, Columbia National Insurance Company neglected to investigate coverage for Curt Patterson. Because of its slip-shod investigation, Columbia negligently or in bad faith failed to settle the claims against Mr. Patterson. This Court should deny Columbia's motion.

**A.    Patterson Is an Insured Under the Columbia Policies.**

1.    Columbia did not effectively reserve its rights.

A liability insurer that defends without reserving its rights waives the right to deny coverage. *Richmond v. Ga. Farm Bureau*, 140 Ga. App. 215, 217 (1976). Not just any old reservation will do. The reservation must be "**effective**." *World Harvest Church v. GuideOne Mut. Ins. Co.*, 287 Ga. 149, 153 (2010) ("Where, as

here, **there was no effective reservation of rights**, whether the insurer is estopped from asserting noncoverage depends upon whether, with actual or constructive knowledge of noncoverage, it **assumed or continued the defense** of a suit against its insured.") (emphasis added).  This Court recently ruled that defending for only three months without an effective reservation creates waiver as a matter of law. *Auto-Owners Ins. Co. v. Cribb*, 2019 WL 451555, at *4 (N.D. Ga.).

Whether an insurer avoids waiver depends on whether the reservation of rights is *bilateral* or *unilateral* and has been summarized as follows:

> To prevent such a waiver, an insurer has three options: (1) refuse to enter a defense, thereby avoiding the expense of litigation but losing all opportunity to contest the negligence of the insured and exposing the insurer to penalties for breach of contract; (2) obtain a **bilateral** reservation of rights agreement whereby the insurer and insured agree that though the insurer will enter a defense, it does not waive the right to assert its defenses to coverage against the insured; (3) send a **unilateral** notice of reservation of rights to the insured and enter an initial defense on the insured's behalf.
>
> 
>
> If an insurer enters a defense under the third option, it must take steps to prevent a waiver of its claim of noncoverage.
>
> 
>
> *Richmond* makes clear that the requirement for immediate declaratory relief only arises where the insured refuses to consent to a defense under a reservation of rights.  In other words, under Georgia law, an insurer is only **required to seek immediate declaratory relief when**

> **it proceeds under a unilateral reservation of rights**, the third option laid out above.

*Nationwide v. Meeks*, 2006 WL 8435514, at *6 (S.D. Ga.) (emphasis added).

Thus, under *World Harvest* and *Richmond*, an *effective* reservation must be either bilateral (i.e., with the insured's consent) or unilateral.  If unilateral, the defense must be accompanied by an "immediate" declaratory judgment action.

In this case, adjuster Preston Burroughs received the complaint before April 21, 2014, reviewed adjuster John Barczykowski's coverage investigation, and decided not to defend Mr. Patterson.  (Exhibit B, 63:3 to 65:16)  In other words, Columbia chose the first option described in *Richmond*.  It is a risky gambit, as it "expos[es] the insurer to penalties for breach of contract."  *Meeks*, at *6.

After allowing Mr. Patterson to go into default and settling with Lawson, Columbia got cold feet about Mr. Patterson being undefended.[1]  To get back in the game, Columbia attempted the second *Richmond* option, i.e., "obtain a **bilateral** reservation of rights agreement" and defend.  *Id*. at *6.  Columbia retained Gray, Rust, St. Amand, Moffett & Brieske ("Gray Rust") to defend Mr. Patterson on January 18, 2016.  (Exhibit E)  Columbia falsely alleges it hired Gray Rust in February.  (Doc 85-1, ¶40)  Gray Rust immediately began significant legal work on

---

[1] Ironically, Columbia literally encouraged the Dunn Family to get a big judgment against Mr. Patterson by urging them to settle with Lawson precisely so there would be no attorney at trial to keep the judgment down.  (Exhibit M)

Mr. Patterson's behalf.  (Exhibit F)  Gray Rust telephoned Mr. Patterson to advise

of its representation on February 22, 2016.  (Exhibit G)  At this time Columbia had

not reserved its rights, either bilaterally or unilaterally.  It was not until February

26, 2016, that Columbia offered to defend Mr. Patterson under terms set forth in its

reservation of rights letter.  (Doc 59-5, RFA Nos. 76-77 and Doc 59-21)

Columbia's ploy might have worked.  Like the insured in *Meeks*, Mr.

Patterson might have consented to the defense pursuant to the terms of the

reservation of rights letter, meaning Columbia would be "under no obligation to

seek an immediate declaratory judgment." *Id*. at *7.  But Mr. Patterson rejected

the defense and did not consent.  (Doc 59-5, RFA No. 78)  Thus, there was no

bilateral reservation of rights.  Nonetheless, Columbia had the Gray Rust firm

continue to defend for 16 months.  (*Compare* Exhibit E *with* Doc 70-7 and Doc 45,

p.2)  Yet, Columbia never sought declaratory relief in state or federal court.

Thus, Columbia chose the third *Richmond* option and defended pursuant to a

unilateral reservation of rights.  Under *Richmond* and its progeny, an insurer is

"**required to seek immediate declaratory relief when it proceeds under a**

**unilateral reservation of rights**." *Meeks*, 2006 WL 8435514, at *6.  Columbia

failed to seek declaratory relief, waiving coverage defenses as a matter of law.

    2.    <u>If Columbia has not waived coverage defenses, its</u>
           <u>motion fails to even create an issue of fact.</u>

"Under Georgia law, insurance policies are liberally construed in favor of coverage." *Evanston Ins. Co. v. Dillard House, Inc.*, 2017 WL 3498953, at *6 (N.D. Ga.).  Under the policies, Mr. Patterson is covered if he had "permission" to use the truck.  (Doc 24-4, p. 47 of 152, §II.A.1.b)  Undisputed evidence shows that Mr. Patterson and others had permission to use trucks for personal errands.  (*E.g.*, <u>Exhibit A</u>, Doc 59-3, 59-4, 59-8 and 59-9)  The argument that Mr. Patterson had no "permission" if he was on a personal errand relies on sparse facts:  (1) The mere existence of Lawson's internal rule, and (2) statements by the owners that the rule was enforced.  However, none of Columbia's facts presents a *genuine* dispute.

The mere existence of the internal rule does not create a genuine dispute, because the rule does not bar personal use.  The rule allows personal use with management "approval."  (Doc 59-10, p.5)  It is undisputed that Lawson gave permission to use trucks for personal errands so long as management "approved."  The record is silent, however, on the manner of approval, the alleged need for advance approval, the alleged need for approval for each personal errand or which members of management can approve.  By its plain language, the internal rule allows any manner of approval, express or implied, by anyone in management.

Statements by the owners do not create a genuine dispute, because they

5

never allege that they enforced the rule against Mr. Patterson or even that Mr. Patterson violated the rule.  The owners' affidavits do not dispute evidence that other managers did approve Mr. Patterson's personal use.

Indeed, it is undisputed that management "approved" Mr. Patterson's personal use.  Mr. Patterson's direct supervisor, Matthew Poole, did not enforce the rule.  (Doc 59-7, 78:22 – 79:11)  A lack of enforcement with knowledge that Mr. Patterson used his truck for a variety of personal errands is approval.  (Doc 59-4, ¶¶2-5; Doc 59-2, 30:20 – 32:2)  Supervisor Ottie Rich approved by not objecting when Mr. Patterson used the truck to take his wife to the hospital or when he dented it while helping his dad with a weekend project.  (Doc 59-2, 105:7 – 106:5 and 106:20 – 107:9)  (Doc 59-2, 19:3-24)  Jeff Dale and Mike Marien approved by confirming that personal use of the truck was a "perk" of the job.  (Doc 59-4, ¶7; Doc 59-2, 11:5-18; Doc 59-3, ¶¶3-4; and Exhibit A, ¶12 and ¶19)  Mr. Patterson is the one entitled to summary judgment on coverage.

In the alternative, it is a jury issue.  Everyone agrees Mr. Patterson had permission to use the truck exclusively, park it at home and keep the keys.  A jury could easily determine Mr. Patterson had general permission for an occasional personal errand, or, alternatively, that a reasonable person in his situation would think he had implied permission for an occasional personal errand.

**B.**   **Columbia Had a Duty to Defend.**

1.   Georgia has abandoned the "rule of election," and Mr. Patterson could not reject coverage even if he wanted to.

A "non-owner driver is entitled to coverage up to the full policy limits as a matter of law, regardless of whether the non-owner affirmatively seeks coverage." Jenkins & Miller, *Ga. Automobile Insurance Law* § 12:8 (2018-2019 ed.) (The cited treatise is attached hereto as Exhibit K). Georgia law used to be different. Under the "rule of election," a permissive user could reject coverage, even if a judgment was returned against the insured. *Id.* "But in 1990 the 'rule of election' was rejected by the Georgia Supreme Court." *Id.* Columbia's argument that Mr. Patterson was required to request a defense is not applicable to a permissive user under an automobile liability policy. Columbia invites error by suggesting that permissive users must "request" a defense. This Court should deny the motion and rule Columbia had a duty to defend as a matter of law.

2.   Georgia law requires auto insurers to defend insureds who do not request a defense if a third party gives notice.

An automobile liability insurer that receives actual notice of a lawsuit must defend a permissive user, even if the permissive user did not give notice or "request" a defense. *Mahone v. State Farm*, 188 Ga. App. 664, 666, (1988). *Mahone* concentrated on the permissive user's failure to give notice of the lawsuit

7

rather than a failure to "request" a defense.  However, if a permissive user fails to give notice of the lawsuit, he obviously did not "request" a defense.  Similarly, if a third party gives notice of a lawsuit, the insured is excused.  O.C.G.A. § 33-7-15.

Furthermore, Columbia does not require insureds to request a defense if it receives a "courtesy copy" of the lawsuit.  (Doc 77-1, 55:19 – 57:12)  Columbia received a courtesy copy.  (Doc 59-17)  Columbia considered defending, and its decision not to defend had nothing to do with whether Mr. Patterson requested a defense.  (Exhibit B, 63:3 to 65:16)  This Court should not excuse Columbia's breach because of a *post hoc* technicality that has nothing to do with why Columbia did not defend.  This Court should deny Columbia's motion.

### C.      Damages for Breach of the Duty to Defend are for the Jury.

Mr. Patterson's damages are "those which are traceable to [Columbia's] refusal to defend."  *Leader National v. Kemp & Son*, 259 Ga. 329, 331 (1989).  "Thus, whether the full amount of the judgment is recoverable for failure to defend … is a jury question."  *Leader National v. Smith*, 177 Ga. App. 267, 279 (1985).  "[C]onsequential damages" and "causation" for the failure to defend are "for jury determination."  *Khan v. Landmark Am. Ins. Co.*, 326 Ga. App. 539, 545 (2014).

Throughout its brief, Columbia insists that if it had defended, it would have kept the verdict at or below $125,000.  Therefore, Mr. Patterson's damages are at

least the amount of the judgment less $125,000.  Bringing down damages is precisely why it is so important for insurers to defend even when coverage is only "potential" or "arguable."  *Penn-America*, 268 Ga. at 565.  As to causation, Columbia encouraged the Dunn Family to get a large judgment.  (Exhibit M)

Columbia's argument that Mr. Patterson, who did not graduate from high school (doc 59-4, ¶1), is at fault because he did not defend himself is contrary to law.  In *Leader National* and *Kahn*, the insured was not defended at trial.  *Leader National v. Smith*, 177 Ga. App. at 267 ("no counsel, appeared"); and *Khan*, 326 Ga. App. at 540 ("After Flashers [the insured] failed to comply with discovery, Khan obtained a default judgment.").  If Columbia were correct, the insurers in *Leader National* and *Kahn* would have been entitled to summary judgment.  Instead, juries decided damages for breach of the duty to defend in both cases.  The Court should deny Columbia's motion.

### D.    Mr. Patterson Did Not Breach the Cooperation Clause.

#### 1.    Columbia's unconditional denial and failure to defend released Mr. Patterson from the duty to cooperate.

"[A]n insurer that denies coverage and refuses to defend an action against its insured, when it could have done so with a reservation of its rights as to coverage, waives the [cooperation clause]."  *S. Guar. Ins. Co. v. Dowse*, 278 Ga. 674, 676 (2004).  "[O]nce the carrier has wrongfully denied coverage, an insured is no

longer bound by the insurance policy's provisions governing cooperation."  Windt, 1 Insurance Claims and Disputes § 3:10 (6th ed.).  "Once an insurer has breached the insurance contract by refusing to defend, the insured is not required to accept the insurer's defense if the insurer subsequently changes its mind."  *Id*. at § 4:25.

Columbia denied coverage and later refused to defend.  These two acts constitute a waiver.  Columbia could not reverse its waiver without Mr. Patterson's consent.  *Ponse v. Atlanta Cas. Co.*, 254 Ga. App. 641, 643 (2002).

Columbia cites no law allowing an insurer that unconditionally denies coverage and refuses to defend to swoop into the lawsuit **two years later** and force the insured to accept a defense under terms unilaterally imposed in a reservation of rights letter.  Insurers are allowed to do so only if the insurer issues a "qualified denial" **and** promptly defends under a reservation of rights.  *Drawdy v. Direct Gen. Ins. Co.*, 277 Ga. 107, 109 (2003) (ruling that "qualified denial letter" and prompt defense allowed insurer to change its mind) and *Colonial v. Progressive*, 252 Ga. App. 391, 392 (2001) (ruling that denial letter stating insurer "will reconsider our position" and prompt defense allowed insurer to change its mind).

This Court need not analyze whether Mr. Patterson cooperated.  Rather, this Court should rule that Mr. Patterson had no duty to cooperate as a matter of law.

2.   Columbia did not reasonably and diligently request
cooperation, so Mr. Patterson did not breach.

To prevail on its motion, Columbia must show there is no genuine issue of
material fact as to each element of its claim, including, *inter alia*, that Columbia
reasonably requested cooperation and was "diligent" in seeking it.  *Travelers v.
Castellanos*, 297 Ga. 174, 177 (2015) and *H.Y. Akers v. St. Louis Fire & Marine*,
120 Ga. App. 800, 800 (1969).  Columbia was neither reasonable nor diligent.

Columbia did not request Mr. Patterson's cooperation at the inception of the
claim.  Columbia wrote a letter with the wrong address.  (Doc 59-15 and Doc 77-2)
Columbia made one feeble and unsuccessful attempt to call Mr. Patterson.
(Exhibit D, 73:1 – 74:15 and Doc 59-5, RFA 36)  Columbia could have used a
third-party or field adjuster, hired an investigator, or used social media to contact
Mr. Patterson.  (Exhibit D, 71:16 – 72:17)  The lack of diligence is palpable.

Columbia first requested cooperation 32 months after the accident and two
years into a lawsuit.  (Doc 59-4, ¶6 and Doc 1-10, p.4 and Doc 59-23, 52:5-16)
Columbia's tardiness is unreasonable.  Columbia requested cooperation after
conspiring to provide the Dunns a path to a large judgment.  (Exhibit M)  The
request for cooperation after "setting up" Mr. Patterson was unreasonable.

"Willfulness and fraud are essential ingredients to substantiate the defense of
failure to cooperate." *Southern Mutual v. Mason*, 213 Ga. App. 584, 588 (1994).

Mr. Patterson's rejection of the defense and decision to not help Columbia revive its cooperation clause was not fraudulent.  He was honest about it.  He was legitimately suspicious.  (Doc 59-4, ¶¶8-9)  Although untrained in the law, his instincts were spot on.  Columbia's reservation of rights letter would have revived its ability to "to file a declaratory judgment action" and cured any "prior" waiver. (Doc 59-21, p.3)  Columbia cannot show any fraudulent behavior.

        3.    The trial court did not rule on the duty to cooperate.

Columbia suggests the court in the Underlying Lawsuit ruled Mr. Patterson violated the cooperation clause.  The trial court did not have the insurance policy in front of it and never made any rulings regarding its terms.  No ruling in the Underlying Lawsuit is relevant to Mr. Patterson's cooperation.

**E.**    **Negligent Failure to Settle.**

        1.    An insurer's negligent or bad faith failure to settle
                 presents issues a jury must decide.

"Generally, it is for the jury to decide whether the insurer, in view of the existing circumstances, has accorded the insured the same faithful consideration it gives its own interest." *First Acceptance Ins. Co. v. Hughes*, 2019 WL 1103831, at *3 (Ga.) (citing, *S. Gen. Ins. Co. v. Holt*, 262 Ga. 267, 268-69 (1992)).  Liability for failing to settle "is generally a jury issue." *Baker v. Huff*, 323 Ga. App. 357, 363-64 (2013).  "Georgia courts generally hold that the reasonableness of an

insurer's response in a tortious failure to settle claim is a question for the jury."
*Butler v. First Acceptance*, 652 F. Supp. 2d 1264, 1277 (N.D. Ga. 2009) (denying insurer's motion for summary judgment).

> 2.      Columbia's poor coverage investigation presents issues a jury must decide.

A liability insurer's incomplete coverage investigation creates a jury issue as to the failure to settle.  *Hulsey v. Travelers*, 460 F. Supp. 2d 1332 (N.D. Ga. 2006). "The law does require [] that in **conducting its investigation** the insurer accord the interest of its insured the same faithful consideration it gives its own interest."  *Id*. at 1336 (emphasis added).  Columbia is "charged with the duty to exercise ordinary care in investigating a case in the determination of whether to defend it." *Cotton States v. Phillips*, 110 Ga. App. 581, 584 (1964).  Relevant circumstances to the failure to settle include "the insurer's diligence in conducting a reasonable investigation to discover the relevant facts."  *Baker*, 323 Ga. App. at 363-64.

Columbia's coverage investigation was manifestly unreasonable.  Columbia falsely alleges Barczykowski called Mr. Patterson twice.  In truth, Barczykowski *tried* to call Mr. Patterson once and failed:

> Q:      . . . So, go ahead and take your time and look at Exhibit 24, and tell me how many times you tried to call Mr. Patterson.
>
> A:      It appears once.

(Exhibit D, 73:1 – 74:15 and Doc 59-5, RFA 36)  Mr. Patterson had his Lawson cell phone, but Columbia did not ask for the number.  (Exhibit N, ¶4 and 6(b)) Columbia wrote a single letter, but it has the wrong address on it.  (Doc 59-15; Doc 77-2 and Exhibit N, ¶4 and 6(c))

Barczykowski could have used a third-party field adjuster, hired a private investigator, or used social media to try and contact Mr. Patterson.  (Exhibit D, 71:16 – 72:17)  Such methods are common in the industry.  (Exhibit N, ¶4 and 6(c))  A jury could infer Barczykowski knows he should have done more, as he admitted he would do it differently if given another chance.  (Exhibit D, 116:23 – 117:6)  Columbia agrees he should have done more, as its executive gave his investigation a grade of "C".  (Exhibit C, 141:1-10)

No documents support the coverage decision.  (Exhibit D, 62:17 – 63:4) According to the claim diary, Davis told Barczykowski employees "are not allowed to use [Lawson trucks] for personal use."  (Doc 49-2, p.1)  But Davis sent Barczykowski the written version of the rule, and it clearly allows personal use. (Doc 59-10, p.5)  Barczykowski never noticed this obvious contradiction, which demanded some sort of review.  (Exhibit N, ¶6(a))  After receiving the rule, Barczykowski never bothered to ask anyone whether Mr. Patterson had been granted approval for personal use.  (Exhibit D, 67:11-18)  Barczykowski did not

14

investigate "implied permission," even though he knows implied permission makes Mr. Patterson an insured.  (<u>Exhibit D</u>, 57:7-13)

Barczykowski never checked prior claims regarding Lawson drivers or Mr. Patterson, specifically.  (<u>Exhibit D</u>, 56:25 – 57:6)  Granting inferences to Mr. Patterson, if Barczykowski had done so, he would have learned that Columbia previously paid a skateboarder for injuries sustained when Mr. Patterson clipped him while driving a Lawson truck on a personal errand.  (Doc 59-4, ¶7)

Columbia's failures are explained by the fact that it has no policies and procedures adjusters are required to follow before denying coverage.  (<u>Exhibit D</u>, 43:18 – 44:25)  The lack of policies and procedures violates insurance industry standards.  (<u>Exhibit N</u>, ¶11)

The coverage investigation is relevant to the failure to settle, because Columbia rejected the demand in reliance on the coverage investigation.  During the coverage investigation, Columbia was required to give Mr. Patterson's interests "the same faithful consideration it gives its own interest."  *Hulsey*, 460 F. Supp. 2d at 1336.  There is no evidence Columbia gave Mr. Patterson's interests any consideration whatsoever.  Columbia used no "diligence in conducting a reasonable investigation."  *Baker*, 323 Ga. App. at 363-64.  A jury must decide the effect of the coverage investigation on the failure to settle.

<u>3.</u>     <u>Columbia's poor damages investigation presents issues a</u>
<u>jury must decide.</u>

Columbia adjusters know they are required to evaluate damages.  (<u>Exhibit B</u>,

30:19 – 32:18)  A prudent liability insurer must evaluate damages to which an

insured is exposed.   (<u>Exhibit N</u>, ¶4 and ¶¶9-10)  Thus, to appreciate the

inadequacies of Columbia's damages evaluation, it is helpful to understand the

types of damages the Dunn Family was entitled to recover from Mr. Patterson.

The Dunns were entitled to "special damages" and "general damages."  Ga.

Law of Damages, § 2:2, *General and Special Damages Distinguished* (2017-2018

ed.) (citing Georgia statutes).  The most obvious element of special damages is

*past* medical expenses.  However, the Dunns were also entitled to future medical

expenses, past pain and suffering and future pain and suffering.[2]

By its own admission, the sole element of damages Columbia considered

was past medical expenses.  (Doc 85, p.21)  Yet, the jury awarded compensatory

damages of $6.5 million.  (Doc 1-12)  Columbia cannot explain the award, because

it failed to evaluate other compensatory damages, including pain and suffering.

Columbia is collaterally estopped from questioning the correctness of the jury

award.  *Atlanta Cas. Ins. Co. v. Gardenhire*, 248 Ga. App. 42 (2001).

---

[2] *Massie v. Ross*, 211 Ga. App. 354 (1993) (future medical); *Olariu v. Marrero*,
248 Ga. App. 824, n.1 (2001) (past and future pain and suffering).

The accident video is disturbing and exposed Mr. Patterson to punitive damages.  (Doc 58)  Columbia did not evaluate punitive damages.  (Exhibit B, 49:6 – 49:23 and 90:21 – 91:7)  Referring to his evaluation, Burroughs testified:

> Q.   So did it take into consideration punitive damages?
> A.   Well, I can't say that it did.

(Exhibit B, 205:3-5)  Columbia alleges it carefully evaluated the demand in light of discovery in the Underlying Lawsuit, but Columbia presents no evidence to back up its allegation.  Indeed, Burroughs's claim diary shows no evaluation during the pendency of the demand, no receipt of depositions from the Underlying Lawsuit, and no evidence that he ever read the depositions.  (Exhibit H)  Columbia is making stuff up.  A jury must consider the failure to evaluate damages.

    4.    The demand was very reasonable.

"[A]n insurer's duty to settle arises when the injured party presents a valid offer to settle within the insured's policy limits.  *First Acceptance*, 2019 WL 1103831, at *3.  Relevant circumstances include "terms of the settlement offer." *Baker*, 323 Ga. App. at 363-64.  To prevail on summary judgment, an insurer must point to evidence that the demand was unreasonable.  *Dickerson v. Am. Nat. Prop. & Cas. Co.*, 2009 WL 1035131, at *8 (M.D. Ga.).

The Dunns presented a valid offer to settle (Exhibit I), triggering Columbia's duty to settle under *First Acceptance*.  2019 WL 1103831, at *3.  Columbia does

not contend the demand is unreasonable.  Indeed, the demand was very reasonable.

(Exhibit N, ¶9)  It offered to apportion proceeds among multiple plaintiffs, taking

that burden off Columbia.  (Exhibit I)  It offered to handle probate proceedings and

generously agreed to take care of liens, both of which can be points of difficulty in

achieving settlement.  Finally it offered a comfortable deadline for acceptance.

Because Columbia fails to show the demand was unreasonable in any respect, a

jury must decide whether a reasonably prudent insurer would have accepted it.

> 5.    Columbia's response makes no sense, so a jury must
>        decide whether the failure to settle was negligent.

"An insurer must act reasonably in responding to a settlement offer."  *Baker*,

323 Ga. App. at 363.  "[R]ecovery is permitted for a negligent refusal to settle."

*Home Ins. Co. v. N. River Ins. Co.*, 192 Ga. App. 551, 556, (1989).  *See also*, *First*

*Acceptance*, 2019 WL 1103831, at *3 (referring multiple times to a "negligent

refusal to settle.

Columbia's response opened with the bizarre allegation that the demand

"does not comply with statutory requirements."  (Exhibit J)  None applied.[3]

Columbia's rejection included a material mistake of law, raising jury issues as to

its negligence in failing to settle.  The Court should deny Columbia's motion.

---

[3] The demand was not "prior to" a lawsuit or for an accident occurring prior to July
1, 2013.  Thus, O.C.G.A. § 9-11-67.1 did not apply.  *See*, §67.1(a) and §67.1(h).

**F.** **The Failure to Settle Caused Damages.**

"[A]fter an insurer's liability for wrongful refusal to settle a claim against its insured is established, the insured or its assignee is entitled as a matter of law to recover damages equal to the amount by which the judgment exceeds policy coverage."  *Cotton States Mut. Ins. Co. v. Brightman*, 256 Ga.App. 451, 456 (2002), *aff'd*, 276 Ga. 683 (2003).  This Court applied *Brightman* in *Camacho v. Nationwide*, 188 F. Supp. 3d 1331, 1348 (N.D. Ga. 2016).  In *Camacho*, the verdict form had a single question:  Had the insurer "acted negligently or in bad faith in failing to settle"?  *Id*. at 1336.  Because the jury answered "yes," the failure to settle was the proximate cause of the judgment as a matter of law.  *Id*. at 1347.  The court then calculated an award as a matter of law.  *Id*. at 1348-63.  The Eleventh Circuit affirmed the "thorough and well-reasoned final order."  692 Fed.App'x. 985 (2017).  In this case, if the jury finds that Columbia failed to settle negligently or in bad faith, *Brightman* commands the amount of the judgment and all post-judgment interest to be the damages as a matter of law.

In the alternative, a jury must weigh the facts and circumstances of the parties' actions and determine how Columbia's failure to settle contributed to the excess judgment against Mr. Patterson.  In either alternative, this Court should deny Columbia's motion.

### F.   Punitive Damages.

#### 1.   "Bad Faith" claims like the one at issue in this case are particularly appropriate for punitive damages.

"As with the bad faith inquiry, the issue of punitive damages is generally best left to the jury." *Noe v. Metropolitan General,* 2012 WL 12835879 at *7 (N.D. Ga.).  "[P]unitive damages [are] authorized in any action for negligence or intentional tort of bad faith." *Thomas v. Atlanta Casualty*, 253 Ga. App. 199, 205 (2001) (ruling that failure to settle "creates a jury question as to whether clear and convincing evidence exists").  In allowing punitive damages to go to the jury, *Thomas* reasoned that when an insurer fails to settle, the "insurer violates its fiduciary duty to its insured and puts its interests superior to its insured." *Id*.  The two factors *Thomas* considered – fiduciary duty and consideration of the insured's interests – are particularly relevant in this case.  It is undisputed that Columbia gave no consideration to Mr. Patterson's interests when it rejected the settlement opportunity.  Although Columbia *alleges* a subjective belief of no coverage, that belief was borne of Columbia's nearly non-existent coverage investigation.

#### 2.   Construing the facts in favor of Mr. Patterson, there is clear and convincing evidence of willful misconduct.

To prevail on its motion, Columbia has the burden of showing that no reasonable juror could find "clear and convincing evidence" that Columbia's

actions "showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A. § 51-12-5.1(b).  Columbia must do so while the Court views the facts in the light most favorable to punitive damages.

"Whether the tort was sufficiently aggravating to authorize punitive damages is generally a jury question, and a jury may award punitive damages even where the clear and convincing evidence **only creates an inference** of the defendant's conscious indifference to the consequences of his acts." *Tookes v. Murray*, 297 Ga. App. 765, 768 (2009) (emphasis added).

As outlined above, Columbia's coverage investigation was nonexistent.  The adjuster dialed one telephone number, which was disconnected, and drafted one letter, which had the wrong address.  Columbia knew Mr. Patterson's employer, and the employer had Mr. Patterson's correct address and (for a few weeks) his cell phone number.  (Doc 77-2, ¶3)  Columbia did not bother to ask.  A jury could infer Columbia consciously determined not to find coverage to save defense costs for itself.  After all, Columbia thinks it need not defend an insured if the insured does not reach out and request a defense.

 "[C]ontrary to defendants' argument, subjective good faith does not provide such legal justification as will negate malice." *Second Cont'l, Inc. v. Atlanta E-Z*

*Builders*, 237 Ga. App. 304, 307 (1999).  "The jury was authorized to conclude that plaintiffs did not fail to prove the malice element of their claim [which] also authorized the award of punitive damages."  *Id*.

Columbia's coverage investigation is relevant, because it relied on its coverage investigation in declining to settle.  Columbia relies on cases in which the insurer was much more diligent in its coverage investigation.  *Hulsey*, 460 F. Supp. 2d 1332.  In *Hulsey*, the jury was to decide simply whether the insurer negligently investigated coverage.  *Id*. at 1337.  Columbia did not merely negligently investigate.  Construing the facts in favor of Mr. Patterson, Columbia knew Mr. Patterson might be covered.  After all, Columbia sought to intervene in the Underlying Lawsuit, twice, to urge requests to charge that would determine coverage issues.  (Doc 49-8, p.1 and Doc 49-9, pp.4-5)  Columbia knew there was "potential" coverage, yet it still failed to settle.

Granting inferences to Mr. Patterson, Columbia tried to swoop in and defend in January, 2016, because Columbia knew there was "potential" coverage, triggering its duty to defend.  Yet, it failed to settle in September, 2016, knowingly exposing someone it believed it owed a defense.  Construing Columbia's unorthodox conduct in a light most favorable to Mr. Patterson, Columbia knew at the time it rejected the Dunns' settlement offer that Mr. Patterson was a potential

insured and Columbia was attempting to minimize its damages arising from its flawed coverage decision.  Columbia's conduct of unconditionally denying claims, "based on the calculated risk that an uninformed insured or tort plaintiff may be discouraged thereby from contesting the issues" gives rise to bad faith penalties, and Columbia's rejection of the offer was an intentional and willful act in pursuit of Columbia's sinister motives, giving rise to a claim for punitive damages. *Drawdy*, 277 Ga. 107 (2003).

Columbia did not request an extension of the demand to further investigate. Instead, it rejected the demand in knee-jerk fashion with conscious indifference to the consequences.  *C.f.*, *Hulsey*, 460 F. Supp. 2d at 1336.  Columbia did not enlist outside professionals in its coverage investigation, as did the insurer in *Hulsey*.

Columbia also had an opportunity to settle at mediation.  (Exhibit M, ¶7) Construing the facts in Mr. Patterson's favor, Columbia rejected that opportunity while inducing the Dunn Family to proceed against Mr. Patterson and intentionally harm him with a large judgment.  (Exhibit M, ¶¶8-11)  Columbia wanted to hurt Mr. Patterson in order to pay less to settle the claims against Lawson.  Columbia erroneously thought Mr. Patterson was an "idiot" who would not pursue his claims.

The "idiot" label comes from a Columbia executive who called Mr. Patterson names.  (Exhibit O)  Statements made after an event create inferences as

to why a party took certain actions during the event.  A jury could reasonably determine that Columbia was angry at Mr. Patterson for causing a wreck that exposed it and its named insured to liability and that Columbia wanted to punish Mr. Patterson.  More likely, a jury could correctly see that Columbia thought it was dealing with a simple plumber from Gainesville (an "idiot" in an insurance executive's way of thinking) who could be cast aside and denied benefits that would cost Columbia money.  This Court should allow all issues regarding punitive damages to go to the jury.[4]

### G.    Attorneys' Fees.

O.C.G.A. § 33-4-6 does not restrict Mr. Patterson's right to attorneys' fees under O.C.G.A. § 13-6-11.  *XL Ins. Am., Inc. v. Sto Corp.*, 2008 WL 11407266, at *4 (N.D. Ga.).  This is because O.C.G.A. § 33-4-6 provides a cause of action in contract for <u>bad-faith failure to pay a first-party</u> claim.  Mr. Patterson's cause of action is in tort and involves the <u>negligent failure to settle a third-party claim</u>. Therefore, "[t]he penalty provisions of the Insurance Code are inapplicable."  *U.S. Fid. & Guar. Co. v. Evans*, 116 Ga. App. 93, 94, *aff'd,* 223 Ga. 789 (1967) and *Great Am. Ins. Co. v. Exum*, 123 Ga. App. 515, 518, 181 S.E.2d 704, 707 (1971)

---

[4] Columbia only moved on the remedies available in O.C.G.A. § 51-12-5.1(b). Columbia made no arguments regarding "specific intent to cause harm" under O.C.G.A. § 51-12-5.1(f).  Therefore, that issue is not before the Court.

(construing previous codification of O.C.G.A. § 33-4-6).  Columbia got confused and cited to a case involving a first-party homeowner's claim, which this is not.

"For purposes of O.C.G.A. § 13–6–11, 'bad faith' means bad faith in the underlying transaction, and a plaintiff will survive a defendant's motion for summary judgment on this issue by presenting *any* evidence which establishes a jury issue on bad faith; even 'slight evidence' is sufficient to meet a plaintiff's burden."  *Dickerson v. Am. Nat. Prop. & Cas. Co.*, 2009 WL 1035131, at *10 (M.D. Ga.) (emphasis in original).  *Dickerson* ruled that a knowing refusal to accept a demand within limits creates an issue of fact for attorneys' fees.  *Id*.  That is what happened in this case.  For the same reasons described in the section on punitive damages, Columbia's liability under O.C.G.A. § 13-6-11 is for the jury.

Respectfully submitted on March 12, 2019.

*/s/ Richard E. Dolder*
James (Jay) Sadd
Georgia Bar No. 622010
Richard E. Dolder
Georgia Bar No. 220237
SLAPPEY & SADD, LLC
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677 (telephone)
jay@lawyersatlanta.com
rich@lawyersatlanta.com
Attorneys for Mr. Patterson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **Curt Patterson's Brief in Opposition to Columbia's Motion for Summary Judgment** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record for all parties.  I further certify that the foregoing was prepared in Times New Roman 14pt font and otherwise complies with Local Rule 5.1.

Respectfully submitted March 12, 2019.

*/s/ Richard E. Dolder*
Richard E. Dolder
Georgia Bar No. 220237
SLAPPEY & SADD, LLC
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677 (telephone)
rich@lawyersatlanta.com
Attorney for Mr. Patterson

26