## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| AMY DUNN, individually and as the natural parent of DANIELLE DEMONBREUN, JAMES DUNN, and RONALD CURTIS PATTERSON,<br><br>       Plaintiffs,<br><br>v.<br><br>COLUMBIA NATIONAL INSURANCE COMPANY<br><br>       Defendant. | CIVIL ACTION<br>2:17-CV-00246-RWS |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Columbia National Insurance Company ("Columbia") files this Reply in Support of its Motion for Summary Judgment under Local Rule 56.1.

### I. Summary of the Argument

This is an insurance coverage dispute in which Patterson alleges that Columbia breached its duty to defend and failed to settle a prior case brought against him and his former employer, Lawson Air Conditioning & Plumbing, Inc. ("Lawson"). Patterson never communicated with Columbia at any time after the accident through judgment in the underlying case, yet he now argues that the

1

judgment is somehow Columbia's fault. This is not a case in which an insured pleaded with its insurer to come to his aid, only to be refused. Instead, as demonstrated in Columbia's motion, Patterson's complete and utter failure to contact Lawson, Columbia, or otherwise cooperate in his defense led to extreme sanctions in the trial court and, ultimately, his current predicament. So complete was his failure to cooperate that the trial court ultimately forced defense counsel to withdraw from his representation. Against this backdrop, Patterson's arguments ring hollow, and Columbia is entitled to judgment as a matter of law on all of the claims at issue in this case.

## II. Argument

### A. Columbia effectively reserved its rights.

Patterson first argues that Columbia did not effectively reserve its rights before attempting to defend him in the underlying action. Quoting extensively from Nationwide Mut.Fire Ins. Co. v. Meeks, 2006 WL 8435514 (S.D. Ga. 2006), Patterson incorrectly argues that Columbia was required to file a declaratory judgment immediately upon sending the reservation of rights letters. As the Meeks court noted, however, where the insured does not object to a defense under a reservation of rights, he implicitly agrees to the defense, resulting in a bilateral reservation of rights. Id. at *7; Sims v. First Acceptance Ins. Co. of Georgia, 745

S.E.2d 306, 309 (Ga. App. 2013) (holding that insurer was not required to seek a declaratory judgment because insured never expressly rejected the defense under a reservation of rights); Jacore Systems, Inc. v. Central Mut. Ins. Co., 390 S.E.2d 876, 878 (Ga. App. 1990) (same); Wellons, Inc. v. Lexington Ins. Co., 566 F. App'x 813, 822 (11th Cir. 2014).

Patterson argues that he expressly rejected the defense offered by Columbia, but it is undisputed that he never communicated with Columbia in any way, so he could not have in fact objected. Instead, he initially agreed to meet with defense counsel, but later called and said he would have to reschedule the meeting. (Dtk. 68-9, p.2; Dkt. 88-7). He never responded to subsequent, repeated communications from defense counsel such that the trial court removed them from the underlying action. (Dkt. 68-9; Dkt. 68-8). Patterson did not expressly reject the defense under the reservation of rights; he simply refused to cooperate with it, and Columbia therefore did not have to file a declaratory judgment action (even if that were required) and did not waive any coverage provisions. Sims, 745 S.E.2d at 309; Jacore, 390 S.E.2d at 878.

Even if that were not the case, and Columbia's letters were somehow considered unilateral reservations of rights, Columbia is not deemed to have waived any policy provisions absent a showing of prejudice by Patterson.

3

OneBeacon Am. Ins. Co. v. Catholic Diocese of Savannah, 477 F. App'x 665, 669 (11th Cir. 2012).  Patterson does not even attempt to argue that he was prejudiced by Columbia's attempt to defend him under a reservation of rights, nor could he, since Columbia's attempted defense did not harm him in any way.

Patterson finally argues that Columbia assumed his defense before reserving its rights, citing an invoice from defense counsel showing some investigatory work over a ten-day period.  (Dkt. 88-6).  Under Georgia law, however, an insurer is entitled to investigate a claim without waiving any of its rights.  Home Indem. Co. v. Godley, 177 S.E.2d 105, 110 (Ga. App. 1970).  Defense counsel for Patterson did not file notice of appearance until after the initial February 26 reservation of rights letter was sent, (Dkt. 68-10, p.4; Dkt. 59-5, ¶ 79), and even the filing of a notice of appearance is not a waiver.  Prescott's Altama Datsun, Inc. v. Monarch Ins. Co. of Ohio, 319 S.E.2d 445, 447 (Ga. 1984).  Here defense counsel for Patterson did not file any pleadings or participate in the underlying action in any way until after Columbia sent the February 26 reservation of rights letter to Patterson.  Columbia did not waive any policy provisions.

### B. Columbia had no duty to defend Patterson.

Patterson argues that Columbia had a duty to defend him despite the fact that he never requested a defense and never contacted Columbia during the entire case.

4

This argument appears to be based on Cotton States Mut. Ins. Co. v. Starnes, 392 S.E.2d 3 (Ga. 1990), but that case does not apply because Patterson is not an injured victim of an accident; he caused the accident and is trying to hold Columbia liable for breach of the duty to defend. Nor is this a coverage dispute about the duty to defend ongoing litigation, as in Starnes. Consequently, the public policy concerns at issue in Starnes about ensuring compensation for accident victims are not at issue here. Id. at 5 ("the operator cannot refuse to elect the coverage so as to defeat public policy.").[1]  Moreover, the vehicle driven by Patterson was owned by Lawson and insured by Columbia, and Columbia paid the injured plaintiffs $125,000 in the underlying action—an amount that far exceeds the minimum amounts required by O.C.G.A. § 33-34-4. Patterson cannot recover for a breach of an alleged duty to defend when he never requested a defense or otherwise communicated with Columbia.

Patterson's assertion that Columbia does not require its insureds to request a defense is misplaced. The testimony cited in support of this statement addressed only whether Lawson was required to do anything more after Columbia was provided with a copy of the complaint and was not the testimony of a corporate

---

[1] Columbia is not arguing that Patterson's failure to request a defense impacts Columbia's ultimate responsibility to the Dunn Plaintiffs for the underlying judgment up to the limits of its policies if Patterson is determined to be an "insured" under the policies and is otherwise entitled to coverage.

5

representative of Columbia under Fed. R. Civ. P. 30(b)(6). (Ex. A, 57:3-12). The cited testimony did not relate to "insureds" in general, and the witness later clarified that he would defer to the provisions of the policies to determine an insured's obligations. Id. at 184:7-9.

### C. Patterson fails to point to any damages caused by Columbia's initial decision not to defend him.

Columbia is entitled to summary judgment on Patterson's claim for breach of the duty to defend because even if there were such a breach (there was not), Patterson has identified no harm allegedly caused by the alleged breach. If an insurer wrongfully refuses to defend its insured, it is liable for the costs of defense and any damages that flow solely from the breach and that were contemplated by the parties as probable result of the breach. Leader Nat'l Ins. Co. v. Kemp & Son, Inc., 380 S.E.2d 458, 459 (Ga. 1989). Columbia pointed out in its motion that the only arguable[2] consequence of the initial decision not to defend Patterson was default as to liability, which was harmless because Patterson was 100% at fault for the accident. Patterson does not dispute this contention in his response—focusing instead on the ultimate judgment entered against him. But by that point in the case, Columbia had offered and attempted to defend Patterson, so any alleged prior

---

[2] Even that consequence is doubtful because Patterson could have filed an answer without counsel.

6

breach had been cured. This fact distinguishes this case from those cited by Patterson. Columbia is entitled to summary judgment on the claim for breach of the duty to defend.

### D. Patterson breached his duty to cooperate as a matter of law.

#### 1. Columbia did not waive the cooperation provisions.

Even if Patterson were insured by the Columbia policies, he forfeited that coverage when he refused to communicate with Columbia, refused to communicate with defense counsel, failed to appear at his deposition, and failed to appear at a court-ordered hearing. Columbia did not make Patterson do any of these things, and when all of this was taking place, Patterson had no idea that Columbia had previously attempted to deny coverage because he never received the denial letters, so he has no excuse.

Faced with this undeniable evidence, Patterson resorts once again to arguing that Columbia waived these provisions of the policies (and Georgia law) when it initially attempted to deny coverage. Patterson is wrong. There was no lawsuit pending against Patterson or Lawson when Columbia sent the initial denial letters, nor would there be for more than six months, so Columbia had no defense obligation at that time which it could breach. Columbia cannot have waived a duty that did not exist at the time. Moreover, Patterson never received the letters and

knew nothing about Columbia's position, so he could not have relied on the attempted denials.

Even if that were not the case, Columbia was entitled to reconsider its initial decision and assume the defense of Patterson, particularly where, as here, the insured was unaware that coverage was denied. State Farm Mut. Auto Ins. Co. v. Allstate Ins. Co., 208 S.E.2d 170, 171 (Ga. App. 1974) (rejecting argument that an insurer, by "having issued an original statement that it was not liable and would not defend, it was forever precluded from a change of course."); see Dawdry v. Direct General Ins. Co., 586 S.E.2d 228, 230 (Ga. 2003).

This Court addressed a similar situation in Travlers Indemnity Co. v. Williams, 2011 WL 13176104 (N.D. Ga. March 16, 2011). The insurer in Williams denied coverage for an auto accident that resulted in the death of the other driver before suit was filed. The estate later sued the driver and his employer, and the insurer agreed to defend under a reservation of rights. When the insurer sought a declaratory judgment, the insured argued that it could not proceed because it initially denied coverage. The Court rejected this argument, explaining that "the fact that Travelers first denied coverage under the policies does not estop Travelers from changing its position in light of the filing of the tort action by the Walkers." Id. at *3. This reasoning applies equally here, and because Columbia

was entitled to withdraw its denial and assume the defense of Patterson under a reservation of rights, Patterson was not excused from his obligation to cooperate with Columbia.

### 2. Columbia reasonably requested Patterson's cooperation.

An insurer is excused from affording coverage under a cooperation provision if: (1) the insurer reasonably requested the insured's cooperation in defending against the plaintiff's claim, (2) the insured willfully and intentionally failed to cooperate, and (3) the insured's failure to cooperate prejudiced the insurer's defense of the claim. Travelers Home & Marine Ins. Co. v. Castellanos, 773 S.E.2d 184, 186 (Ga. 2015).  Unable to avoid his failure to cooperate, Patterson instead seeks to change the burden of proof—adding requirements of "diligence" and "fraud" that are not required by the Georgia Supreme Court in Castellanos.³ There are no such requirements, and Columbia reasonably requested Patterson's cooperation.

After the accident, Columbia attempted to contact Patterson by phone and by mail—neither of which were successful.  Columbia again wrote to Patterson in February and March 2016, informed him that Columbia had agreed to defend him

---

³ It appears that Patterson may have found the word "diligent" in the syllabus of the Georgia Court of Appeals' decision in H.Y. Akers & Sons, Inc. v. St. Louis Fire & Marine Ins. Co., 172 S.E.2d 355, 358 (Ga. App. 1969), but that supposed requirement is never mentioned in the body of the opinion.

against the claims brought by the Dunns, and expressly requested his cooperation. (Dkt. 1-10; 1-11) (Columbia "requests your cooperation as it continues to investigate and gather information regarding the claim and lawsuit."). Columbia retained defense counsel, who contacted Patterson to discuss his defense. (Ex. B, 81:4-12). Defense counsel then wrote a series of ten letters to Mr. Patterson requesting his cooperation in his defense, (Dkt. 68-9), which were sent to Patterson's correct address, (Ex. B, 94:20 – 95:11), and he is therefore presumed to have received them. Hagner v. United States, 285 U.S. 427, 430 (1932). These undisputed facts demonstrate that Columbia reasonably requested Patterson's cooperation in defending against the plaintiff's claim. Castellanos, 773 S.E.2d at 186.

A remarkably similar situation occurred in Vaughn v. ACCC Ins. Co., 725 S.E.2d 855 (Ga. App. 2012). In that case, like this one, defense counsel hired by the insurer had an extremely difficult time getting in touch with the insured. Defense counsel initially spoke to the insured by phone, sent her several letters, and then tried to call her numerous other times to no avail. Id. at 858. The insured failed to appear at a hearing, and the court entered a default judgment against her as to liability. Id. at 859. Even after the hearing, defense counsel continued his attempts to contact the insured, and the insurer then sent her a reservation of rights

letter asking her to call defense counsel. When the insured failed to respond to defense counsel, the insurer sent a final letter informing her that coverage was denied because of her failure to cooperate with defense counsel. Id. at 859. The court affirmed a verdict in favor of the insurer, explaining that this evidence was sufficient to bar coverage for the insured's failure to cooperate. Id.

The suggestion that "fraud" is required to substantiate a failure-to-cooperate defense is again belied by the Georgia Supreme Court's decision in Castellanos, which confirms that no such showing is required. 773 S.E.2d at 186.

Columbia reasonably requested Patterson's cooperation in the defense of the claims against him, and he refused to do so. As a result, the Columbia policies do not afford coverage for the underlying judgment, and Columbia is entitled to summary judgment.

**E.     There is no clear and convincing evidence in support of punitive damages.**

Patterson's claim for punitive damages fails because there is no clear and convincing evidence that Columbia's actions "showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). Patterson misleadingly cites Thomas v. Atlanta Casualty, 558 S.E.2d 432 (Ga. App. 2001)—which was partially disapproved by the Georgia Supreme Court's

11

recent decision in First Acceptance Ins. Co. of Georgia, Inc. v. Hughes, 2019 WL 1103831, at *3 n.4 (Ga. Mar. 11, 2019)—for the proposition that an insurer's failure to settle always creates a jury question as to whether clear and convincing evidence exists.  But the court actually held that "[w]here there has been such entire want of care amounting to a conscious indifference to the consequences, this may constitute tortious conduct making punitive damages authorized in any action for negligence or intentional tort of bad faith . . . ."  558 S.E.2d at 440.  Here, there is no such evidence.

Patterson attempts to create questions of fact based on inferences and arguments he gleans from the record evidence in this case, but "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).  An implausible inference cannot create a factual dispute sufficient to withstand summary judgment.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 743 (11th Cir. 1996).  In this case, the story Patterson spins is contradicted by the record evidence and, therefore, Columbia is entitled to summary judgment.

Patterson spends much of his brief arguing about how Columbia handled the initial investigation of the accident before the lawsuit was filed, but Patterson's claim for punitive damages is based on Columbia's failure to accept a settlement offer during litigation, so he must prove that Columbia's failure to accept that offer was done willfully or wantonly. Griffith v. Burger King Corp., 2008 WL 11407208, at *3 (N.D. Ga. Apr. 22, 2008). There is no such evidence in this case. Columbia rejected the settlement offer based on its evaluation of the plaintiffs' alleged damages and the lack of coverage for Patterson—both of which were reasonable positions based on the information available at that time. See Dkt. 85, pp. 22-24. This included all of the information obtained in the defense of Lawson in the underlying action as well as the assistance of coverage counsel for Columbia. (Ex. C, 64:10 – 65:6, 131:3-13). Since Columbia had a reasonable basis for rejecting the offer, it cannot be liable for punitive damages as a matter of law. Harrison v. S&B Trucking, Inc., 346 S.E.2d 101, 103 (Ga. App. 1986) (affirming summary judgment on insured's claim for punitive damages because there was a reasonable basis to reject the offer).

Patterson's argument that specific intent is not addressed in Columbia's motion is without merit because Columbia moved for summary judgment on all claims. Patterson cannot satisfy the lesser burden of proof required to obtain

punitive damages—willful and wanton conduct under O.C.G.A. § 51-12-5.1(b); therefore, he cannot satisfy the much higher burden of proving by clear and convincing evidence that Columbia specifically intended to harm Patterson as required to avoid the statutory cap on punitive damages under § 51-12-5.1(f). There is no evidence that Columbia rejected the settlement demand with specific intent to harm Patterson, particularly where Columbia continued to try to defend him afterward.[4]

### F.   Columbia did not negligently fail to settle.

Columbia is entitled to summary judgment on this claim because the decision to reject the settlement demand was reasonable based on the damages at issue and the lack of coverage for Patterson. This includes Columbia's consideration of all damages available to the underlying plaintiffs. (Ex. C, 31:5 – 33:20; 49:6 – 50:7). Patterson argues that Columbia could have discovered more information, but whether Columbia negligently failed to settle is based on the information known at the time of the rejection, not what might have been. Baker

---

[4] The single reference to Patterson as being an "idiot" was based on his failure to cooperate with defense counsel and the resulting verdict against an unrepresented Patterson. (Dkt. 88-15). In any event, that email was sent more than one year after the settlement demand was rejected and, therefore, is not relevant to the failure to settle claim or the punitive damage claim.

v. Huff, 747 S.E.2d 1, 6 (Ga. App. 2013). And under the information known at the time, the rejection was reasonable.

### G. O.C.G.A. § 13-6-11 does not apply.

Patterson seeks attorneys' fees against Columbia under O.C.G.A. § 13-6-11, but that statute does not apply here. Patterson's assertion that Columbia "got confused" is wrong. Columbia cited the most recent decision of the Georgia Court of Appeals on this issue, which made no distinction between first-party or third-party insurance when it held that O.C.G.A. § 33-4-6 is an insured's exclusive method to recover attorneys' fees. Thompson v. Homesite Ins. Co. of GA, 812 S.E.2d 541, 546 (Ga. App. 2018). Patterson could have asserted such a claim but chose not to, and he cannot maintain this cause of action because where there was no "transaction" between Columbia and Patterson to support it since Patterson never communicated with Columbia.

## IV. Conclusion

The Court should grant Columbia's motion, enter judgment in favor of Columbia, and award any other relief the Court deems appropriate.

Respectfully submitted this 26th day of March, 2019.

/s/ Stephen J. Rapp
John C. Bonnie
Georgia Bar No. 067540
Stephen J. Rapp
Georgia Bar No. 103806
srapp@wwhgd.com
*Attorneys for Columbia National Insurance Company*

WEINBERG, WHEELER, HUDGINS,
 GUNN & DIAL, LLC
3344 Peachtree Road, N.E.
Suite 2400
Atlanta, Georgia 30326
T: (404) 876-2700
F: (404) 875-9433

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to all attorneys of record

This 26th day of March, 2019.

>*/s/ Stephen J. Rapp*
>Stephen J. Rapp
>Georgia Bar No.: 103806