UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| AMY DUNN, individually and as the natural parent of DANIELLE DEMONBREUN, JAMES DUNN, and RONALD CURTIS PATTERSON,<br><br>        Plaintiffs,<br><br>    v.<br><br>COLUMBIA NATIONAL INSURANCE COMPANY,<br><br>        Defendant. | CIVIL ACTION NO.<br>2:17-CV-0246-RWS |

# **O R D E R**

This case is before the Court on Plaintiff Ronald Curtis Patterson's Partial Motion for Summary Judgment [59]; the Dunn Plaintiffs' Motion for Summary Judgment [70]; and Defendant's Motion for Summary Judgment [85]. Also before the Court is a Motion for Leave to File Supplemental Brief Regarding Pending Motions [100], which was filed in support of Patterson's Motion for Summary Judgment. After reviewing the record, the Court enters the following Order.

## Background

This is an insurance coverage dispute where the insurance company did not bring a declaratory judgment action. As a result, the Court must now determine coverage, as well as whether Columbia National Insurance Company ("Columbia") breached its duty to defend and negligently failed to settle the underlying case. The below facts are undisputed.

On June 7, 2013, Patterson hit members of the Dunn family with a truck as they were walking out of a Walmart in Gainesville, Georgia. (Patterson's SMF, Dkt. [59-28] ¶ 44.) Surveillance video recorded the events, Patterson was fully at fault, and each Dunn Plaintiff suffered bodily injury as a proximate result of the accident. (Id. ¶¶ 45-48.) At the time of the accident, Patterson was driving a Chevy pickup truck owned by Lawson Air Conditioning and Plumbing, Inc. ("Lawson"), his employer. (Id. ¶¶ 1, 49, 50.)

Lawson was covered by two liability insurance policies with Columbia, a "Primary Policy" with limits of $1 million and an "Umbrella Policy" with limits of $3 million. (Id. ¶ 52.) Patterson's truck is a "covered auto" under the Primary Policy. (Id. ¶ 53.) The Primary and Umbrella Policies define an insured as "[a]nyone else while using with your permission a covered auto you own." (Id. ¶ 54; Insurance Policy, Dkt. [24-4] at 47, 75.) The Primary Policy also provides that

2

Columbia has "the right and duty to defend any 'insured' against a 'suit' asking for [] damages…" (Def.'s SMF, Dkt. [85-1] ¶ 16; Insurance Policy, Dkt. [24-4] p. 47.) Accordingly, Lawson promptly reported the accident to Columbia and otherwise complied with all conditions precedent to coverage. (Patterson's SMF, Dkt. [59-28] ¶ 54.) After opening an investigation into Lawson's claim on June 11, 2013, Columbia's adjuster sent a letter to Patterson on August 22, 2013, denying coverage on the sole basis that he was "not a permissive driver at the time of the accident." (Id. ¶¶ 58, 80; August Denial of Coverage Letter, Dkt. [59-16].)

On April 7, 2014, the Dunn family filed a lawsuit in the State Court of Hall County, Georgia against Patterson and Lawson ("underlying lawsuit"), of which Columbia received prompt and actual notice. (Id. ¶¶ 87-88.) In response, Columbia retained counsel to defend Lawson but did not retain counsel for Patterson or file a declaratory judgment action. (Id. ¶¶ 92-93.) Patterson went into default because he did not file an answer. (Def.'s SMF, Dkt. [85-1] ¶ 37.)

After discovery was underway, on December 9, 2014, Columbia's outside coverage counsel filed a Motion for Entry of Appearance as Counsel for Columbia in the underlying lawsuit, which the trial court denied. (Patterson's SMF, Dkt. [59-28] ¶¶ 97, 99; Def's Resp. to Patterson's SMF, Dkt. [68-1] ¶ 97.) Thereafter, on January 22, 2015, Columbia moved to intervene in the underlying lawsuit, which

the trial court also denied.  (Id. ¶ 100, 102.)  About a year later, the Dunn family

settled their claim against Lawson for $125,000 through mediation. (Id. ¶¶ 103-4;

Def.'s SMF, Dkt. [85-1] ¶¶ 38-39.)  At the mediation, Columbia considered

settling the claims against Patterson but did not.  (Def.'s SMF, Dkt. [85-1] ¶ 39.)

Ultimately, the suit proceeded with Patterson as the sole defendant. (Patterson's

SMF, Dkt. [59-28] ¶¶ 104.)

Columbia then hired attorneys for Patterson in January 2016 and sent him

two reservation of rights letters on February 26, 2016, and March 1, 2016.  (Id. ¶¶

105-6; Def.'s SMF, Dkt. [85-1] ¶ 42.)  The letters reserved the right "to assert

additional grounds for denial of coverage, should it be determined, at any time, for

any reason, the policy does not provide coverage for you," and "to file a

declaratory judgment action to obtain the judicial determination of the coverage

issues involved." (Id. ¶¶ 109, 111; ROR Letter, Dkt. [59-21].)  They also stated

that "[n]othing which Columbia National Insurance Company may have done prior

to this Notice of Reservation of Rights, and nothing that Columbia National

Insurance Company does hereafter should be construed as a waiver of any right or

defense of Columbia National Insurance Company under the policy."  (Id. ¶ 113.)

Attorneys filed an Entry of Appearance stating they were retained to defend

Patterson on February 29, 2016. Patterson, however, rejected Columbia's defense and did not meet with the attorneys, as requested. (Id. ¶¶ 107, 119-120.)

Despite Patterson's rejection, Columbia continued to defend him until they were removed by the trial court for lack of authority to appear on behalf of Patterson on May 12, 2017. (State Court Order, Dkt. [68-8] ("Because the evidence before the Court suggests there is no authority for counsel's representation of [Patterson], and because counsel has been unable to produce or prove the authority under which they appear, Counsel for [Patterson] shall be removed.")) In the meantime, on August 18, 2016, plaintiffs in the underlying action offered to settle the claims against Patterson for $1,125,000. (Def.'s SMF, Dkt. [85-1] ¶ 48.) Patterson was informed of the offer, but Columbia ultimately rejected it. (Id. ¶¶ 49, 53.)

Trial did not proceed well for Patterson. As a sanction for failing to attend his deposition and a court-ordered hearing, Patterson was not "permitted to question witnesses, put forth argument, present an opening statement at trial, or otherwise oppose the Plaintiff's showing as to damages." (Id. ¶¶ 55, 58; State Court Order, Dkt. [68-10] at 11.) The jury returned a verdict against Patterson for $11,500,000. (Def.'s SMF, Dkt. [85-1] ¶ 62.)

Patterson now alleges Columbia breached its contractual duty to defend him in the underlying suit and negligently failed to settle the claims against him. As co-Plaintiffs, the Dunns bring a judgment creditors direct action claim against Columbia for payment on the judgment they hold against Patterson, whom they argue is an insured under Lawson's policies. As affirmative defenses, Columbia argues Patterson breached his contractual duty to cooperate and that he failed to mitigate damages. Patterson now moves for summary judgment on his breach of contract claim, as well as Columbia's mitigation and cooperation defenses. The Dunns move for summary judgment on their claim. Finally, Columbia moves for summary judgment on Patterson's breach of contract and failure to settle claims, as well as the Dunns' claim.

## Discussion

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of a genuine issue of material fact.'" <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. <u>Id.</u> at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. <u>Id.</u> An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Id.</u> at 249-50.

Furthermore, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Patton v. Triad Guar. Ins. Corp.</u>, 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)). "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

Finally, the standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. Am. Bankers Ins. Group v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. Id. And while "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed," cross-motions may be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. United States v. Oakley, 744 F.2d 1553, 1555–56 (11th Cir. 1984).

## II.     Breach of Contract (Count II)

Under Georgia law, an insurer faced with a decision regarding how to handle a claim of coverage while a possible insured faces a lawsuit has three options: (1) defend the claim, thereby waiving its policy defenses and claims of non-coverage; (2) deny coverage and refuse to defend, avoiding the expense of litigation, but exposing the insurer to penalties for breach of contract; or (3) defend under a reservation of rights, preserving the option of litigating and ultimately denying coverage. See e.g., Hoover v. Maxum Indem. Co., 730 S.E.2d 413 (Ga. Ct. App. 2012).

Patterson argues that by sending the August 22, 2013 denial of coverage letter, Columbia chose the second option—to deny coverage and refuse to defend. Thus, Patterson focuses his arguments on the duty to defend standard and urges the Court that in applying that standard, Columbia breached its duty. Columbia, on the other hand, argues it is entitled to summary judgment because, since Patterson never requested a defense, no duty arose. Next, Columbia argues that it had no duty under the duty to defend standard. Finally, Columbia argues, even if the duty was triggered, it was cured by Columbia's eventual attempt to defend Patterson.

The Court finds Columbia breached its duty to defend Patterson for several reasons. First, the denial letter was effective because a permissive user under an

automobile policy is not required to request a defense. Indeed, contrary to the non-automobile insurance cases cited by Defendant, the Georgia Court of Appeals has repeatedly held that under O.C.G.A § 33–7–15 an automobile liability insurer that receives actual notice of a lawsuit has a duty to defend a permissive user, even if the permissive user did not give notice or "request" a defense.[1] See Canal Indem. Co. v. Greene, 593 S.E.2d 41, 44 (Ga. Ct. App. 2003) (citing Mahone v. State Farm, 373 S.E.2d 809 (Ga. Ct. App. 1988)).

This is consistent with the contract language in Lawson's insurance policies, which states that to trigger a duty to defend there must be full compliance with the duty to "[i]mmediately send [Columbia] copies of any request, demand, order, notice, summons or legal paper received concerning the claim or 'suit.'" (Def.'s Resp. to Patterson's MSJ, Dkt. [68] at 7.) Nothing about that language requires Patterson to "elect" or "request" a defense. The contract does not require permissive users or additional insureds to notice Columbia. Similarly, it does not require each insured to notice Columbia.

---

[1] While it appears Georgia has not spoken on this issue directly, many states have expressly found that in a situation such as this where the insurance company denied coverage before a lawsuit is filed against the insured, the insured is relieved of the obligation to give the insurer timely notice of the lawsuit. See, e.g., Davis v. Criterion Ins. Co., 754 P.2d 1331, 1332 (Alaska 1988); St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co., 724 F. Supp. 1173, 1181 (M.D. N.C. 1989), aff'd, 919 F.2d 235 (4th Cir. 1990).

It is undisputed Columbia had actual notice of the Dunns' suit against Lawson and Patterson. In general, it is an undisputed fact that Lawson, the insured, "promptly reported the [a]ccident to Columbia and otherwise complied with all conditions precedent to coverage." (Patterson's SMF, Dkt. [59-28] ¶ 55.) Likewise, it is undisputed that "Columbia received prompt and actual notice" of the underlying suit. (Id. ¶¶ 87-88.) Further, Columbia's executive acknowledged that the courtesy copy it received was sufficient to determine defense of the suit. (Hubbard Depo., Dkt. [77-1] at 55:19-57:12.) Accordingly, Columbia's notice argument fails, and any conditions precedent were satisfied.

Turning to the contract's duty to defend provision, the Primary Policy provides that Columbia has "the right and duty to defend any 'insured' against a 'suit' asking for [] damages…" (Def.'s SMF, Dkt. [85-1] ¶ 16; Insurance Policy, Dkt. [24-4] at 47.) Defendant maintains Patterson is not an insured. The Primary Policy defines an insured as "[a]nyone else while using with your permission a covered 'auto.'" (Insurance Policy, Dkt. [24-4] at 47.) The truck Patterson hit the Dunns with is a covered auto.

Thus, coverage turns on whether Patterson had Lawson's permission to use the vehicle. At the time of the accident, both parties now agree Patterson was using his truck personally. While it is undisputed Patterson had permission to use

11

the truck for work purposes, Columbia argues he did not have permission at the time of the accident because of Lawson's written policy that trucks "will not be used for personal use at any time, unless approval has been granted by Lawson Air Conditioning and Plumbing management." (Lawson Manual, Dkt. [59-10] at 5.)

Determination of Patterson's coverage, however, is not necessary for Columbia to have breached its duty to defend. Instead, Columbia had a duty to defend Patterson "[i]f the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." City of Atlanta v. St. Paul Fire & Marine Ins. Co., 498 S.E.2d 782, 784 (Ga. Ct. App. 1998). Indeed, "[t]o excuse the duty to defend the petition must unambiguously exclude coverage under the policy…Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured." Penn-America Ins. Co. v. Disabled American Veterans, 490 S.E.2d 374, 376 (Ga. 1997).

Here, the complaint in the underlying lawsuit alleges Lawson "entrusted" the truck to Patterson, who was operating the truck "within the scope and course of his employment with [Lawson]" at the time of the accident. (Underlying Lawsuit Complaint, Dkt. [59-17] ¶¶ 9, 46.) While it was ultimately concluded that Lawson was operating the truck outside the scope of his work duties, if he had been

operating within his work duties, there would be no dispute that he was insured because Columbia's sole defense to coverage is that Patterson's personal use of the truck was not approved pursuant to Lawson's manual. Columbia attempts to narrow the scope of the inquiry to say that the permissive use language does not inquire into the employee's scope of employment. The Court does not find this argument persuasive for the reasons discussed above. Its argument that the word "entrust" in the complaint does not refer to the date of the accident is similarly unconvincing.

Ultimately, Columbia breached its duty to defend because the complaint showed potential or arguable coverage. This is for the reasons articulated above as well as the undeniable circumstances currently before the Court. The Court found the coverage issue complicated, and fact-specific. An entire next section of this Order is devoted to the analysis on the issue. That in itself indicates that there was clear doubt as to liability and that the duty to defend should have been resolved in favor of Patterson.

Columbia also attempted to correct its breach by providing Patterson representation nearly two years after the suit was filed. Columbia appears to argue that this cures their breach. While an insurer can change its mind if it issued a "qualified denial letter" and provided a prompt defense, Columbia issued an

unqualified denial letter and provided a defense almost two years after the suit was filed.  See Drawdy v. Direct Gen. Ins. Co., 586 S.E.2d 228 (Ga. 2003).  Further, unlike the more diligent insurers in Travelers Indemnity Co. v. Williams, 2011 WL 13176104 (N.D. Ga. March 16, 2011), Columbia never filed a declaratory judgment action in this case.  Instead of curing the breach, the Court views Columbia's later attempt to defend Patterson as further confirmation that Columbia blatantly ignored Georgia's strong policy preference for defending possible insureds while filing a declaratory judgment to clarify coverage. See e.g., Richmond v. Georgia Farm Bureau Mut. Ins. Co., 231 S.E.2d 245 (Ga. Ct. App. 1976).

Thus, Patterson's Partial Motion for Summary Judgment [59] is **GRANTED** as to this issue, and Columbia's Motion for Summary Judgment [85] is similarly **DENIED**.

### III.    Judgment Creditors' Direct Action Against Debtor's Insurance (Count VI)

The Dunn Plaintiffs bring a direct action against Columbia to partially satisfy their judgment from the underlying suit against Patterson.[2]  To succeed,

---

[2] The Court notes the overlap in Patterson and the Dunns' briefing on the issue of coverage. Columbia argues the Dunns do not have standing to argue waiver and estopple.

Patterson must be an insured under Lawson's policies with Columbia. Plaintiffs submit various theories of coverage for the Court to consider. First, the Dunn Plaintiffs argue Columbia is estopped from disputing coverage because it initially did not defend Patterson. Second, Plaintiffs argue Columbia did not effectively reserve its rights to deny coverage by representing Patterson under a unilateral reservation of rights without seeking a declaratory judgment. Third, Plaintiffs argue under Eleventh Circuit precedent, Lawson's internal policy does not affect Patterson's permission to use the truck as a matter of law. Finally, Plaintiffs argue Columbia has failed to create an issue of fact as to Patterson's permission to use the truck.

The Court agrees with Plaintiffs that Columbia has failed to create an issue of fact, and therefore need not consider their additional arguments. All the same, for clarity, the Court will briefly address each in turn. First, Defendant is correct that it is not estopped from challenging Patterson's coverage, despite denying coverage and refusing to defend, because coverage was the basis for the denial. See Hoover, 730 S.E.2d at 418. Further, the Dunns' argument that Columbia lost

_____

While the Court briefly addresses those arguments for the sake of clarity, they are not material to the Court's findings on this issue. Further, because coverage is relevant to some of Patterson's claims, the Court will consider both parties' arguments collectively on this issue.

the right to file a declaratory judgment action is not applicable here absent such an action.

Second, it appears Columbia represented Patterson under a unilateral reservation of rights for about a year and never filed a declaratory judgment action. Despite Columbia's more recent contentions otherwise, it is undisputed that Patterson denied Columbia's representation by never accepting either reservation of rights letter and declining to meet with the attorneys. Further, when the insured refuses to consent to a defense under a reservation of rights, it is considered a unilateral reservation of rights and the insurer must, among other things, "seek immediate declaratory relief," to prevent a waiver of its claim of noncoverage. Nationwide Mut. Fire Ins. Co. v. Meeks, 5:04-CV-101, 2006 WL 8435514, at *6 (S.D. Ga. Mar. 29, 2006) (citing Richmond, 231 S.E. 2d at 248). Patterson moves to file a supplemental brief on this issue in light of a recent decision from the Georgia Court of Appeals, Southern Trust Ins. Co. v. Mountain Express Oil Co., 2019 WL 2366367 (Ga. Ct. App. June 5, 2019). Columbia objects for a myriad of reasons. Because the Court finds Columbia has not met its evidentiary burden, the Court need not consider Patterson's supplemental briefing and his Motion [100] is consequently **DENIED**.

At bottom, the primary issue all parties urge this Court to determine is whether Patterson was a permissive user under Lawson's policies. Columbia argues the internal company policy bars Patterson from Coverage. Plaintiffs disagree, first arguing the policy should not be considered, and next maintaining even under the policy, Patterson had permission.

Under Georgia law, Patterson had permission to use the truck if "a reasonable person could conclude under the circumstances that the use of the insured vehicle fell within the scope of the permission granted by the policyholder." Allstate Ins. Co. v. Spillers, 579 S.E.2d 876, 878 (Ga. Ct. App. 2003) (internal citations omitted). Relevant factors include possession of the keys and the lack of reprimand. See Id. Further, insurance contracts should be construed liberally in favor of the insured, even when there is no ambiguity in the language. See Roland v. Georgia Farm Bureau Mut. Ins. Co., S.E.2d 623, 625 (Ga. 1995).

Here, Patterson worked as a plumber's foreman for Lawson. At the onset of his employment, he was given a truck, and acknowledged in writing that he received Lawson's Employment Practices and Policy Manual ("manual" or "policy H"), which states that: "Company trucks will not be used for personal use at any time, unless approval has been granted by [Lawson] management." (Def.'s SMF,

Dkt. [85-1] ¶¶ 3, 5.) Lawson gave Patterson the keys to the truck, which he placed on his personal keyring and always kept in his possession. (Patterson's SMF, Dkt. [59-28] ¶ 2.) Throughout his time at Lawson, Patterson drove his truck full-time and parked it at his home on weekends and holidays. (Id. ¶ 7.) His use of the truck included driving from home to work and to job sites, as well as driving to grocery stores, at least on occasion, and driving on the weekends. (Id.) Lawson liberally provided Patterson with a company gas card that he kept in his possession and used unquestioned to purchase all gas for the truck, including use on the weekends and for personal errands. (Id. ¶¶ 8-13.) He was also allowed to keep the truck and use the gas card while he was laid off from work, which Patterson's supervisor confirmed was typical protocol at Lawson. (Id. ¶¶ 23-24, 36.) Two other foremen received trucks with the same parameters. (See Aff. of William Blankenship, Dkt. [59-8] ¶¶ 2-4; Aff. of Dusty Bryson, Dkt. [59-9] ¶¶ 3-5.)

This undisputed evidence supports Plaintiffs' contention that Patterson was given this truck as a perk of his job, including personal use. In fact, Patterson was told by his future manager, Matthew Poole, in his interview that "if you'll come on board with us at the lower pay, I'll go ahead and give you a truck off the bat." (Id. ¶¶ 2, 40.) Further, Lawson's former vice president, Jeff Dale, who was still a manager at Lawson when Patterson was hired, testified that it was Lawson's

practice "to allow employees to use the trucks Lawson assigned to them for personal errands so [they] could attract and retain skilled workers." (Id. ¶ 3.) Patterson's direct manager, Poole, also testified that he did not enforce the policy. (Poole Depo., Dkt. [59-7] at 78:22-79:11.)

What is more, Patterson points to several instances where Lawson supervisors knew he was using his truck personally. While Poole testified that he does not remember the instances involving him, it is undisputed that Patterson informed Ottie Rich, Lawson's field supervisor, that he dented the truck's bumper while helping his dad over the weekend. (Id. ¶ 14.) Rich responded, "not a problem, don't worry about it." (Id.) Two other plumber's foremen at Lawson around the time of Patterson's employment also used their trucks for personal errands and were never reprimanded. (See Aff. of William Blankenship, Dkt. [59-8] ¶¶ 2-4; Aff. of Dusty Bryson, Dkt. [59-9] ¶¶ 2, 4, 5.)

The testimony of Mike Marien is particularly revealing. Marien worked as a manager at Lawson for 16 years from 2002 through 2017, encompassing Patterson's tenure. (Marien Aff., Dkt. [88-1] ¶ 2.) Marien's testimony is like the others in that he was given a truck for business and personal use. (Id. ¶3-17.) He also testified that Lawson formalized its process for managerial approval for personal use after the incident with Patterson in June 2013. (Id. ¶¶ 17-19.)

Columbia does not argue against Marien's testimony in the summary judgment briefing.

Instead, Colombia, argues none of the above determines coverage because per the manual, Lawson has a "prohibition on personal use." Of course, this is not an unconditional prohibition as was the case in the cases it cites in support of its position. See Select Ins. Co. v. Register, 384 S.E. 2d 238, 240 (Ga. Ct. App. 1989) (employer expressly told employee he could not use the vehicle "for any personal purpose."); Massachusetts Bay Ins. Co. v. Wooten, 450 S.E.2d 857, 859 (Ga. Ct. App. 1994) ("Without question, the insurer presented evidence indicating that the decedent was expressly forbidden to use company vehicles for personal transportation.")  Here, the manual allows person use if it is managerially approved.  Further, without an express prohibition on personal use, Plaintiff's implied permission argument is also not misplaced.  See Am. Emp. Ins. Co. v. Johns, 178 S.E.2d 207, 209 (Ga. Ct. App. 1970)

Plaintiffs argue the manual's provision is so weak, that it should be treated like an internal company policy against driving while intoxicated.  Relying on Great Am. All. Ins. Co. v. Anderson, 847 F.3d 1327 (11th Cir. 2017), Plaintiffs correctly argue that under current Georgia law, a finding of permissive use under a policy only requires permission for the purpose served by the vehicle, not the

operational aspects. Id. at 1332. That said, personal and work-related use is a complicated distinction that goes more to the purpose served than the operation of the vehicle. Further, unlike the line of cases discussed in Anderson, such an overarching holding is not necessary here because Patterson did not violate an express prohibition.

Cutting through Columbia's other arguments, it is apparent that Columbia has not provided evidence that creates a genuine issue of material fact for trial. Specifically, Columbia repeatedly argues "Lawson did not give any employee permission to use a marked Lawson vehicle for personal use without prior approval from Lawson Management," and that "Lawson regularly enforced its prohibition on personal use of marked company vehicles." (Vince Davis Depo., Dkt. [68-3] at 80:22-81:12; Dec. of Debbie Davis, Dkt. [68-4] ¶¶ 3-5.) True, Lawson's president and chief financial officer ("the Davises") testified that they were not aware of any instances of unapproved personal use of company vehicles until this accident and would reprimand employees who violated it, but Columbia has not provided a single incident where an employee was so reprimanded before the accident and does not argue that the rule was ever enforced against Patterson. (Vince Davis Depo., Dkt. [68-3] at 14:24, 79:20-23; Dec. of Debbie Davis, Dkt. [68-4] ¶ 6.) Further, nothing in the manual requires the president and CFO's awareness of

personal use approval. All the Davises' testimony indicates is that they were not aware of what was happening at the lower level of their company. Importantly, it does not dispute the ample evidence presented by the Plaintiffs.

Columbia's final piece of material evidence is that Patterson did not request approval to use his truck for personal use on the day of the accident. (Poole Depo., Dkt. [65] at 81:11-13.) This argument falls similarly short because the manual does not specify how or when to obtain managerial approval for personal use. Columbia would like the Court to view it as a formal system, going up to the top of the company, and requiring specific approval for each request of personal use. If that were the case, Columbia would have an argument, but there is no evidence to suggest such a system.

Instead, the evidence strongly suggests widely accepted personal use of vehicles. Even discounting the evidence disputed by Columbia, there remains the strong undisputed evidence, discussed above, that personal use was an approved perk of the job. Missing from Columbia's case is any evidence that Patterson did not have general approval to drive his truck for personal errands, or even that Lawson did not regularly approve employees for personal use. Further, it is undisputed that Dale was a supervisor at the time Lawson hired Patterson, and that

he gave employees permission to use trucks personally as a perk of the job. (Dale Aff., Dkt. [59-3] ¶¶ 2-6.)

Finally, it is not lost on the Court that Columbia represented Patterson in an incident involving his Lawson truck in 2012. The situations are largely similar in nature except that the Dunns' injuries were more severe. It is difficult to understand why Columbia would defend Patterson in that suit but failed to even seek a declaratory judgment to coverage for the case currently before the Court.

In any event, the Court finds that there is no genuine issue of material fact and that as a matter of law, Patterson had Lawson's permission to use the truck to go to Walmart on the night of the accident. As a permissive user, Patterson is covered by both policies and the Dunns are entitled to recover as judgment creditors. Their Motion for Summary Judgment [70] is therefore **GRANTED** and Columbia's [85] is similarly **DENIED** as to this issue.

## IV.    Breach of Duty to Cooperate

Columbia argues as an affirmative defense that even if Patterson is an insured under the policies, he forfeited coverage when he refused to cooperate with Columbia in the investigation and defense of the claim and the underlying action. Patterson moves for summary judgment on Columbia's defense, arguing that he did not have a duty to cooperate, and even if he did, Columbia waived such a

policy defense when it denied coverage for the sole reason that Patterson was not a permissive user.

The Court finds that Patterson had no duty to cooperate, and thus need not consider Patterson's waiver argument. While the policies provide that an insured is required to cooperate with Columbia in the defense of any lawsuit brought against the insured, an insurer that "refuses to defend based upon a belief that a claim against its insured is excluded from a policy's scope of coverage does so at its peril, and if the insurer guesses wrong, it must bear the consequences, legal or otherwise, of its breach of contract." S. Guar. Ins. Co. v. Dowse, 605 S.E.2d 27, 29 (Ga. 2004). As Patterson asserts and Columbia fails to contradict, once an insurer wrongfully denies coverage and refuses to defend, the insured will no longer be obligated to comply with his or her own obligations under the policy. See generally Windt, 1 Insurance Claims and Disputes § 3:10 (6th ed. 2019). Thus, Patterson was not bound by the policies' provisions governing cooperation when Columbia requested his cooperation after refusing to defend. C.f. id.; Dowse, 605 S.E.2d at 29 ("In Georgia, an insurer that denies coverage and refuses to defend an action against its insured, when it could have done so with a reservation of its rights as to coverage, waives the provisions of the policy against a settlement by the insured," a provision of the cooperation clause) (internal citations omitted).

Further, Columbia does not present evidence that it reasonably requested Patterson's cooperation before the underlying lawsuit.

Simply put, where an insurer refuses to defend an action on the ground that the claim was not within the coverage of the policy, it is in no position afterward to claim that the insured failed to cooperate or assist in a defense that he was denied. Absent representation from Columbia, Patterson was left to defend the suit as a pro se litigant. His shortcomings in doing so are not a defense against liability on the policy. Further, as discussed in the breach of contract section of the Order, once Columbia breached the contract by refusing to defend, Patterson was not required to accept Columbia's defense once it changed its mind. This is especially true in situations such as here where accepting Columbia's defense would have been against his best interests. Accordingly, Patterson's Partial Motion for Summary Judgment [59] is **GRANTED** as to this issue.

## V. Negligent and Bad Faith Failure to Settle (Count III)

Columbia moves for summary judgment on Patterson's negligent and bad faith failure to settle claim. Under Georgia law, if a liability insurer negligently or in bad faith refuses an offer to settle a claim within policy limits and a judgment in excess of policy limits is entered against the insured, then the insured may recover the excess judgment. Cotton States Mut. Ins. Co. v. Brightman, 580 S.E.2d 519,

521 (Ga. 2003). To prevail on a negligent or bad faith failure to settle claim, an insured must prove that "the insurer had a duty to settle the case, breached that duty, and [the] breach proximately caused damages to the insured beyond the damages, if any, contemplated by the insurance contract." Delancy v. St. Paul Fire & Marine Ins. Co., 947 F.2d 1536, 1546–47 (11th Cir.1991) (applying Georgia law). More specifically, an insurer may be liable for damages for failing to settle for the policy limits if an ordinarily prudent insurer would consider that choosing to try the case rather than accept an offer to settle within the policy limits would be taking an unreasonable risk that the insured would be subjected to a judgment in excess of the policy limits. See Baker v. Huff, 747 S.E.2d 1, 6 (Ga. Ct. App. 2013) (citations, punctuation, and quotation marks omitted). The purpose of a bad faith claim is to prevent an insurer from "gambl[ing] with the funds of its insured by refusing to settle within the policy limits." Id. at 1547 (internal quotation marks omitted).

Here, while Columbia was representing Patterson under a unilateral reservation of rights, plaintiffs in the underlying suit offered to settle their claims against him for $1,125,000, well within the policy limits of 4 million. Columbia rejected the offer because it believed a trial verdict could be held to $125,000 or less, the amount paid in settlement to Lawson. Columbia also considered

Patterson's questionable coverage as a relevant factor, but of course, failed to file a declaratory action to clarify the issue. Finally, as Plaintiffs have pointed out, there is sufficient concern that Columbia did not diligently conduct a reasonable investigation to discover relevant facts. See Baker, 747 S.E.2d at 6 (investigative diligence is a factor a jury can consider in determining negligent or bad faith failure to settle).

Instead, Patterson proceeded to trial, at which an award of $11.5 million was return to the Dunns. The seemingly exorbitant award should not have come as a surprise. Patterson admitted fault immediately, and the Dunns were entitled to both past and future medical expenses, as well as compensatory damages such as past and future pain and suffering. Further, unlike Lawson, Patterson was exposed to punitive damages. Yet, Columbia appears to have relied on the Dunns' past medical expenses when considering the settlement offer. (Columbia's MSJ, Dkt. [85] at 20-1.)

The Court finds that Columbia is not entitled to summary judgment on this issue because the facts are sufficient to permit a jury to find that no ordinarily prudent insurer would have declined to accept the offer. See Fortner v. Grange Mut. Ins. Co., 686 S.E.2d 93 (Ga. 2009) "[I]t is for the jury to decide whether the insurer, in view of the existing circumstances, has accorded the insured the same

faithful consideration it gives its own interest." It must judge Columbia's actions in the light of "all the relevant circumstances including [Columbia's] knowledge of facts relevant to liability and damages on the claim; [Columbia's] diligence in conducting a reasonable investigation to discover the relevant facts; and the terms of the settlement offer and any response by [Columbia]." Baker, 747 S.E.2d at 6. Accordingly, Columbia's Motion for Summary Judgment [85] is **DENIED** as to this issue.

## VI. Damages

The parties' remaining arguments concern damages. The Court has determined that Columbia breached its contractual duty to defend Patterson in the underlying suit. As a result, Patterson had no duty to cooperate. Further, the Court decided the refusal was based on the erroneous assumption that Patterson was not within the policy coverage. And finally, a jury must decide whether Columbia negligently or in bad faith failed to settle the claims against Patterson. The parties raise final arguments as to damages the follow from these findings.

Because Columbia unjustifiably refused to defend Patterson in the underlying suit, Columbia is liable for the underlying judgment up to the policy limits, as per the contract, plus the cost of defending the suit and any amount in excess of the policy limits found to be caused by the wrongful denial of a defense.

See Leader Nat. Ins. Co. v. Kemp & Son, Inc., 380 S.E.2d 458, 459 (Ga. 1989).

Thus, because the underlying judgment exceeds the policy limits, Patterson could

be entitled to the full judgment if a jury determines that the failure to defend

proximately caused the excess judgment.  See Id.

Similarly, if the jury determines Columbia is liable for a failure to settle,

Patterson is entitled "as a matter of law to recover damages equal to the amount by

which the judgment exceeds policy coverage." Camacho v. Nationwide Mut. Ins.

Co., 188 F. Supp. 3d 1331, 1348 (N.D. Ga. 2016), aff'd, 692 Fed. Appx. 985 (11th

Cir. 2017) (citing Cotton States Mut. Ins. Co. v. Brightman, 568 S.E.2d 498, 502

(Ga. Ct. App. 2002), aff'd, 580 S.E.2d 519 (Ga. 2003); see also Fortner v. Grange

Mut. Ins. Co., 686 S.E.2d 93, 94 (Ga. 2009) (When "an insurer acts in bad faith in

refusing to settle a personal claim against its insured within the policy limits, it

may be liable for an excess judgment entered against its insured.").

On the issue of damages, Patterson moves for summary judgment on

Columbia's mitigation affirmative defense; Columbia moves for summary

judgment on Patterson's punitive damages and attorney fees claims; and the Dunns

argue they are entitled to the remaining policy limits plus post-judgment interest.

### a. Patterson's Recovery

Columbia seeks to lessen recovery by arguing Patterson failed to mitigate his damages and argues that it is not liable to him for punitive damages or attorney's fees. The Court considers each in turn.

#### i. Mitigation

Patterson moves for summary judgment on Columbia's affirmative defense that Patterson failed to mitigate his damages. Specifically, Columbia argues Patterson failed to mitigate his damages because Patterson rejected the defense offered by Columbia, he was sanctioned by the trial court for failure to participate in the trial, and he did not hire an attorney.

It is true that under Georgia Law, a plaintiff has a duty to mitigate his damages brought in contract and tort. O.C.G.A §§ 13-6-5; 51-12-11. That said, Columbia's first argument, regarding its attempt to defend Patterson two years after the suit began, fails for the same reasons discussed in Section II of this Order. Additionally, here, Patterson makes a compelling argument that not only did he have no duty to accept Columbia's representation after they denied coverage but doing so would have put him in a worse position because he would have waived all claims the Court has just found he rightfully had against Columbia. (See Patterson's MSJ, Dkt. [59] at 21-25.) Thus, as a matter of law, Patterson did not

fail to mitigate the judgment from the underlying suit by rejecting Columbia's change-of-heart defense.

Columbia's other mitigation arguments are issues for the jury. See Knox v. Cessna Aircraft Co., CIV A 405CV-131 HL, 2007 WL 2874228, at *12 (M.D. Ga. Sept. 26, 2007) ("Whether a plaintiff acted reasonably to mitigate his damages is typically a question of fact for the jury…"). First, Columbia argues that Patterson could have mitigated his damages by participating in the litigation and avoiding sanctions. It is undisputed that Patterson failed to attend his deposition and appear at a court-ordered hearing. As a result, the trial court precluded Patterson from offering argument or evidence of damages at trial. (State Court Order, Dkt. [68-10] at 11. (Patterson was not "permitted to question witnesses, put forth argument, present an opening statement at trial, or otherwise oppose the Plaintiff's showing as to damages."))

Patterson contends that he was justified in choosing not to participate in the litigation because he was wrongly denied representation by Columbia and could not afford an attorney. Thus, proceeding pro se without any legal knowledge and admitting liability, Patterson saw no reason to participate because he did not understand there was anything to litigate. Further, because Patterson pled guilty to driving under the influence, he was already exposed to punitive damages. See

O.C.G.A. § 51-12-5, 1(f). It is also relevant that as a pro se litigant in a case with tragic facts, Patterson might not have been able to lessen the judgment against him even if he were permitted to argue damages. While the Court is sympathetic to Patterson's argument, because the sanction for his decision not to participate in the litigation was a bar on contesting damages, the Court cannot say as a matter of law that he did not fail to mitigate the damages against him. Thus, it is left to the jury to determine if Patterson acted reasonably to mitigate his damages by failing to participate in the underlying litigation.

Second, Columbia's argument that Patterson should have mitigated his damages by hiring a lawyer is also an issue for the jury. As previously discussed, it is well-settled law that, when an insurer refuses to defend, the insurer transfers to the insured the power to conduct its own defense, and if it is later determined that the insured was entitled to coverage, the insured will be entitled to full reimbursement of the insured's litigation costs. See Dowse, 605 S.E.2d at 29. Patterson, like every civil litigant, is entitled to represent himself. Of course, legal representation might have lessened the damages in this case. Thus, the Court finds that this issue should be presented to a jury.

Accordingly, Patterson's Motion for Summary Judgment [59] is **DENIED** as to this issue. That said, Columbia is prohibited as a matter of law from arguing

that Patterson failed to mitigate damages by refusing to accept Columbia's too-late defense.  The issues remaining are whether Patterson failed to mitigate damages by failing to hire an attorney and incurring sanctions precluding him from contesting damages at trial.

### ii. *Punitive Damages*

Columbia moves for summary judgment on Patterson's Punitive Damages claim (Count IV).  Here, punitive damages could be available on Patterson's failure to settle claim because it is an action in tort. <u>See</u> O.C.G.A. § 51-12-5.1 Columbia claims that even if Patterson can show a negligent failure to settle, its actions do not rise to the level of culpability required for punitive damages.

To recover punitive damages, Patterson must prove "by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51–12–5.1(b).  The issue of punitive damages is generally left to the jury unless the plaintiff cannot reasonably meet the legal prerequisites to sustain such a claim. <u>SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc.</u>, 455 F. Supp. 2d 1347, 1369 (N.D. Ga. 2006); <u>Tookes v. Murray</u>, 297 Ga. App. 765, 768, 678 S.E.2d 209, 213 (2009) (holding that the issue of "punitive damages is generally a jury question, and a jury

may award punitive damages even where the clear and convincing evidence only creates an inference of the defendant's conscious indifference to the consequences of his acts").

Although a close question, a reasonable jury could find that Patterson's allegations that Columbia failed to settle the claims against him evidence an "entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51–12–5.1(b). A party acts with "conscious indifference to consequences" where it acts "with a knowing or wilful [sic] disregard of the rights of another." Wildcat Cliffs Builders, LLC v. Hagwood, 663 S.E.2d 818, 821 (Ga. Ct. App. 2008). Viewing the evidence in the light most favorable to Patterson, Columbia did not conduct a proper coverage investigation or file a declaratory judgment action, but still denied the settlement offer because of questions as to Patterson's coverage, the low value of the past medical expenses, and the settlement paid for Lawson. Given the known differences in Patterson's situation, such as his admitted liability and exposure to punitive damages, those actions could amount to a conscious indifference to consequences.

Therefore, "a jury could find that [Columbia], with full knowledge that the claim could result in an excess judgment, engaged in an unsuccessful gambit— sacrificing [Patterson's] interest in hopes" of getting a lower judgment at trial."

Noe v. Metro. Gen. Ins. Co., 1:11-CV-2026-SCJ, 2012 WL 12835879, at *7 (N.D. Ga. Aug. 15, 2012) (citing S. Gen. Ins. Co. v. Holt, 769, 409 S.E.2d 852, 861 (Ga. Ct. App. 1991) aff'd in part, rev'd in part on other grounds, 416 S.E.2d 274 (Ga. 1992) and vacated 421 S.E.2d 346 (Ga. 1992). The Court thus finds that Patterson has presented sufficient evidence to survive summary judgment on this issue and Columbia's Motion [85] is **DENIED**.

### iii. Attorney Fees

Columbia moves for summary judgment on Patterson's claim for attorney fees (Count V) under O.C.G.A. § 13-6-11.[3] Under O.C.G.A. § 13-6-11, reasonable attorney's fees are recoverable if a defendant "has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Columbia contends Patterson cannot recover under the statute because O.C.G.A. § 33-4-6 is the "exclusive vehicle through which the insured may make a claim for attorney fees against the insurer. Thompson v. Homesite Ins. Co. of GA, 812 S.E.2d 541, 546 (Ga. Ct. App. 2018), cert. denied (Nov. 5, 2018). Thompson, however, concerned an insurer's failure to pay claim. 812 S.E.2d at 546 ("[A]bsent a special relationship beyond that of insured and insurer, if such claims

---

[3] Count V is brought jointly by both Patterson and the Dunns, but Columbia only moves for summary judgment as to Patterson's claim.

are predicated on the insurer's failure to pay a claim, OCGA § 33–4–6 is the exclusive vehicle through which the insured may make a claim for attorney fees against the insurer."). Because Patterson does not assert a claim for bad faith refusal to pay, § 33–4–6 does not limit his ability to seek attorney fees in this action. XL Ins. Am., Inc. v. Sto Corp., 1:07-CV-0414-CC, 2008 WL 11407266, at *6 (N.D. Ga. Feb. 25, 2008).

Columbia next argues that even applying § 13-6-11, Patterson is not entitled to fees because he never communicated with Columbia before this litigation was filed without elaborating further on this conclusory argument. Patterson seeks recovery of litigation expenses under its negligent and bad faith failure to settle claim. "For purposes of O.C.G.A. § 13–6–11, 'bad faith' means bad faith in the underlying transaction, and a plaintiff will survive a defendant's motion for summary judgment on this issue by presenting any evidence which establishes a jury issue on bad faith; even slight evidence is sufficient to meet a plaintiff's burden." Dickerson v. Am. Nat. Prop. & Cas. Co., 3:07-CV-111(CDL), 2009 WL 1035131, at *10 (M.D. Ga. Apr. 16, 2009) (internal citations omitted). The Court finds that Patterson has met that burden and Columbia's Motion for Summary Judgment [85] is **DENIED**.

### a.  The Dunns' Recovery

With a judgment against Patterson that fixes his liability, and now establishing Patterson's right to recover under the contract, the Dunns are entitled to the proceeds of the policy.  See Smith v. Gov't Employees Ins. Co., 347 S.E.2d 245, 246 (Ga. Ct. App. 1986). Columbia concedes its responsiblility for the underlying judgment, at least up to the limits of its policies.  (See Def.'s Resp. to Dunn Pls.' MSJ, Dkt. [79] at 19.) Yet, it disputes the amount remaining under the policy and maintains it is not responsible for post-judgment interest.  The Dunns disagree.

It is undisputed that the total policy limits are $4 million.  Both parties also agree that Columbia only owes the Dunns what remains of the limit.  The Dunns point to Columbia's acknowledgment that it paid $125,000 to them to settle the claims against Lawson.  Thus, they conclude $3,875,000 of the policy remains. Columbia, however, argues there is no record evidence of the remaining limits.

Further, Columbia argues it is not liable for post-judgment interest per the policy language that states that Columbia will pay for the insured: "All interest on the full amount of any judgment that accrues after entry of the judgment in any 'suit' against the 'insured' we defend…" (Policies, Dkt. [24-4] at 48, 73.) Because it did not defend Patterson, Columbia argues it is not obligated to pay post-

judgment interest.  While this is true, Georgia law is clear that Columbia "must bear the consequences of its decision not to defend the suit and must pay. . . post-judgment interest as provided for in the policy."  <u>Occidental Fire & Cas. of N. Carolina v. Goodman</u>, 793 S.E.2d 606, 610 (Ga. Ct. App. 2016) (finding the trial court correctly awarded post-judgment interest to an insured who was unjustifiably denied a defense despite policy language that stated that "such interest is covered only with respect to any lawsuit against an insured which [the insurer] defends.")

Accordingly, the Dunns are entitled to recovery of the remaining policy limits and post-judgment interest.  Because this case is proceeding to trial, the Court will determine the details of the judgment post-trial.

## Conclusion

For the foregoing reasons, the Dunn Plaintiffs' Motion for Summary Judgment [70] is **GRANTED**; Columbia's Motion for Summary Judgment [85] is **DENIED**; and Patterson's Partial Motion for Summary Judgment [59] is granted in part and denied in part.  It is **GRANTED** as to Patterson's breach of contract claim (Count II) and Columbia's duty to cooperate affirmative defense and is **DENIED** as to Columbia's mitigation affirmative defense.

This case will proceed on Plaintiff's negligent or bad faith failure to settle claim (Count III) and damages. The parties shall submit a proposed consolidated

pretrial order within 30 days of the entry of this Order. Trial will then be scheduled by later order.

**SO ORDERED** this 30th day of September, 2019.

_____
**RICHARD W. STORY**
United States District Judge