IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| AMY DUNN, individually and as the natural parent of DANIELLE DEMONBREUN, JAMES DUNN and RONALD CURTIS PATTERSON, | ) ) ) ) ) | CIVIL ACTION FILE NO.: 2:17-CV-00246-RWS |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| COLUMBIA NATIONAL INSURANCE COMPANY, | ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF PATTERSON'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE CERTAIN OPINIONS OF EXPERT LOUIS G. FEY

### I.      Insurance-Industry Experts Are Helpful to the Jury.

#### A.      This Court Has Found Mr. Fey Qualified to Testify.

"Mr. Fey is qualified as an expert on insurance claim adjustments." *Noe v. Metropolitan General*, 2012 WL 7760143, *3 (N.D. Ga.). "Mr. Fey's testimony concerning insurance claim adjustments is outside the common knowledge of an average juror, [therefore], Fey's expert testimony would assist the jury in deciding factual issues." *Id.* This Court should follow *Noe* and deny Columbia National Insurance Company's Motion to Exclude Certain Opinions of Expert Louis G. Fey.

**B.    Insurance Experts Touch on Legal Issues, Because Adjusters Employ Legal Issues in their Work.**

This Court recognizes that the insurance industry operates in a legal environment, making "passing reference to a legal principle" appropriate for expert opinion.  *Camacho v. Nationwide*, 13 F. Supp. 3d 1343, 1366 (N.D. Ga. 2014). This Court explained why expert testimony in the insurance industry may touch on legal issues without overstepping the Court's role on deciding legal issues:

> Several courts have found that because the average juror is not likely to be familiar with the practices and procedures involved in insurance claims handling, expert testimony on these matters is admissible to assist the trier of fact. … When the substance of the expert's testimony concerns ordinary practices and customs which are helpful to the fact-finder's evaluation of the parties' conduct against the standards of ordinary practice in the insurance industry, his **passing reference to a legal principle** or assumption in an effort to place his opinions in some sort of context will not justify the outright exclusion of the expert's [testimony] in its entirety.  **An insurance expert may testify regarding what duties are owed by an insurance company during the claims handling process and whether the actions of the insurance company complied with those duties without offering improper legal conclusions.**

*Id*. at 1366 (emphasis added) (internal citations removed and punctuation altered).

Further, "opinions as to the customs and practices of the insurance industry concerning insurance coverage determinations do not constitute legal opinions or conclusions of law."   *Id*.  An expert's "testimony will not be excluded as an

impermissible legal conclusion merely because it overlaps with the language of a legal principle that may be explained by the Court."   *Id*. at 1367.

In this case, Columbia's claim professionals testified they employ legal principles in their day-to-day work adjusting claims.

> Q:   And is it your understanding that part of your job requirements are to understand how the law affects coverage in jurisdictions where you handled claims?
>
> A:   Yes.

(Exhibit A, Barczykowski Depo, 28:7 – 29:11)  Adjuster Burroughs agreed. (Exhibit B, 15:19 – 16:22 and 31:1-9).

This should come as no surprise, particularly when dealing with liability insurance, as claim professionals in the liability-insurance industry must apply contract provisions to a given fact situation to decide whether there is coverage; examine complaints filed against insureds to determine whether there is "potential" or "arguable" coverage, triggering the duty to defend, and analyze the legal damages to which an insured is exposed in determining whether to accept a demand within policy limits.  (Exhibit B, 30-33)

As shown below, Mr. Fey's opinions that touch on legal principles are keyed directly to the facts and circumstances of this case, helpful to the jury and admissible.

### C.   Insurance Experts May Explain Custom and Practice and Opine on Whether an Insurer Complied with Custom and Practice.

In the context of an insurance company's negligent failure to settle, an expert from the insurance industry may opine on "what ordinary and reasonable claims handling practices consist of and whether or not [an insurer] complied with those standards." *Id*. at 1366.  In *Camacho*, this Court ruled that the expert could not testify "as to the ultimate issue in this case – whether [the insurer's] conduct amounted to bad faith," but he could "testify whether the insurer acted fairly and honestly toward insured [and] with due regard for his interests," which was a factual conclusion.  *Id*. at 1367.

*Camacho* approved the following specific opinions, many of which are similar to Mr. Fey's opinions:

(a)   Carriers owe a duty to the insured to settle all reasonable settlement demands within the policy limits and must meet the reasonable conditions of the demand to fully protect the personal assets of the insured;

(b)   Nationwide was responsible for proper training of its claims adjuster and breached industry custom and practice requiring proper training and supervision;

(c)   Nationwide rejected the settlement demand by failing to meet the conditions of the offer without a reasonable basis during the time period the demand was open;

4

(d)     Nationwide was responsible for providing the proper training and supervision of the handling adjuster who failed to properly respond and accept the conditional demand for policy limits in this excess claim;

(e)     Nationwide failed to properly supervise this adjuster and failed to provide direction to allow the acceptance of the demand despite Nationwide knowledge of potential excess exposure (beyond the policy limits);

(f)     The handling adjuster provided no testimony regarding what direction she was given by her supervisor or past training or her authority level to negotiate liability claims of this magnitude.

*Id*. at 1369.  Following *Camacho*, this Court should deny Columbia's motion.

## II.  **Mr. Fey's Opinions Are Tightly Connected to Issues for the Jury.**

### A.  **Issues Remaining for the Jury.**

Columbia correctly notes two issues the jury will have to determine.  One, whether Columbia negligently or in bad faith failed to settle the Dunn Family's claims against Mr. Patterson within policy limits, a claim this Court has acknowledged sounds in tort.  (Doc 103, pp.9-14)  Two, because Columbia breached the duty to defend as a matter of law, the jury will determine the amount of damages to which Mr. Patterson is entitled, a claim that sounds in contract.

**Columbia neglects, however, to mention two other issues remaining for the jury:**  Columbia's liability to Mr. Patterson for his attorneys' fees and expenses of litigation and Columbia's liability for punitive damages.

The Court and parties have touched on the law governing the tort of failure to settle and the contract claim for breaching the duty to defend many times in this action.  The substantive law governing the second two issues – attorneys' fees and punitive damages – deserves additional attention to see why Mr. Fey's opinions logically advance material aspects of Mr. Patterson's case.

### B.    Columbia's Liability for Attorneys' Fees.

A jury must determine whether Columbia's actions entitle Mr. Patterson to attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11.[1]  (Doc 103, p.36)  Mr. Patterson must show the jury that Columbia "has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense."  *Id*.

The statute applies to Mr. Patterson's tort claim for Columbia's failure to settle.  *Dickerson v. Am. Nat. Prop. & Cas. Co.*, 2009 WL 1035131, at *10 (M.D. Ga.).  It is not necessary for the tort to be an intentional tort; negligence will do.  *Nash v. Reed*, 825 S.E.2d 853, note 2 (Ga. App. 2019).  The statute also applies to Mr. Patterson's breach of contract claim for Columbia's failure to defend him.

---

[1] Mr. Patterson is also entitled to fees under O.C.G.A. § 33-7-15(b)(1).  However, that is an issue for the Court, not the jury:  "In the event the insurer denies coverage and it is determined by declaratory judgment or other civil process that there is in fact coverage, the insurer shall be liable to the insured for legal cost and attorney's fees as may be awarded by the court."  *Id*.

*Henderson v. Sugarloaf*, 740 S.E.2d 273, 277 (Ga. App. 2013).

Bad faith under O.C.G.A. § 13-6-11 must have arisen out of how the defendant acted in dealing with the plaintiff." *Nash*, 825 S.E.2d at 856.  Thus, it focuses on the defendant's actions before the lawsuit in which fees are sought.  *Id*.

In determining "bad faith" for purposes of O.C.G.A. § 13-6-11, this Court may turn to Black's Law Dictionary.  *E.g.*, *Young v. A.L. Anthony Grading Co.*, 484 S.E.2d 318, 319 (1997).  Although "[a] complete catalogue of types of bad faith is impossible," bad faith includes "evasion of the spirit of the bargain," "lack of diligence" and "willful rendering of imperfect performance."  BAD FAITH, Black's Law Dictionary (11th ed. 2019) (citing Restatement (Second) of Contracts § 205 cmt. d (1979)).  Specific to insurance companies, bad faith includes an "unreasonable and unfounded (though not necessarily fraudulent) refusal to provide coverage in violation of the duties of good faith and fair dealing owed to an insured."  *Id*.

"[T]here may be bad faith in carrying out the provisions of the contract sufficient to support the award."  *Burlington Air Exp., Inc. v. Georgia-Pac. Corp.*, 457 S.E.2d 219 (1995).  In *Burlington*, the Court of Appeals ruled that insisting on a lesser payment while ignoring an exception in the contract at issue that would have allowed for a higher payment could constitute "bad faith" breach of contract.

*Id*. at 220.  In *Burlington*, the Court of Appeals also ruled that the defendant "caused [the plaintiff] unnecessary trouble and expense in litigation, warranting the recovery of attorney fees," by insisting on contractual limitations "in the face of clear legal authority in the Eleventh Circuit prohibiting such limitations."  *Id*. at 220.

"Attorney fees may be awarded under the statute where there is bad faith in defendant's carrying out the provisions of the contract."  *Henderson v. Sugarloaf*, 740 S.E.2d 273, 277 (Ga. App. 2013).  In *Henderson*, a homeowners association required homeowners to execute an affidavit before recognizing consolidation of two lots.  *Id*. at 276.  The Court of Appeals ruled that "[n]othing in the Declarations, however, permitted the Association to make consolidation of the lots conditional upon the [homeowners] execution of an affidavit.  *Id*. at 276.  The court further ruled that because "the Association improperly conditioned the combination of the [homeowners] lots on their execution of an unnecessary affidavit," the issue of attorneys' fees under the statute went to the jury.  *Id*. at 277.

The bad faith does not need to amount to a "sinister motive" or "ill will" to support an award of fees.  *Young v. A.L. Anthony Grading Co.*, 484 S.E.2d 318, 319 (1997) (citing Black's Law Dictionary).  Rather, a breach of contract "prompted by some *interested* motive is also sufficient" to constitute bad faith and

support an award of fees.  *Id*.

In a negligence action, expert testimony that a defendant failed to follow fair and reasonable business practices may constitute the bad faith to support an award of attorneys' fees and expenses of litigation.  *Wachovia Bank of Georgia, N.A. v. Reynolds*, 533 S.E.2d 743, 746 (Ga. App. 2000).

### C.     Columbia's Liability for Punitive Damages.

Mr. Patterson may be awarded punitive damages by showing evidence that Columbia's actions show "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A. § 51-12-5.1(a).  To recover unlimited punitive damages, he must show that Columbia "acted, or failed to act, with the specific intent to cause harm."  O.C.G.A. § 51-12-5.1(f).  "A party possesses specific intent to cause harm when that party desires to cause the consequences of its act **or believes that the consequences are substantially certain to result** from it."  *Ga. Pattern Jury Instructions*, Civ. 66.711 (emphasis added).

"[P]unitive damages [are] authorized in any action for negligence or intentional tort of bad faith."  *Thomas v. Atlanta Casualty*, 253 Ga. App. 199, 205 (2001).  In allowing punitive damages to go to the jury, *Thomas* reasoned that

when an insurer tortiously fails to settle, the "insurer violates its fiduciary duty to

its insured and puts its interests superior to its insured." *Id*.  "[T]he insurer owes

fiduciary duties of good faith when defending or settling a third-party claim on

behalf of the insured." *Prime Mgmt. v. Certain Underwriters*, 2007 WL 4592099,

\*5 (N.D. Ga.).  Inaccurate statements in a business transaction support the malice

necessary for punitive damages. *Second Cont'l, Inc. v. Atlanta E-Z Builders, Inc.*,

514 S.E.2d 846, 849 (Ga. App. 1999).

> A question of "intent" is a question regarding state of mind. As the
> former Fifth Circuit observed in an analogous context, [State of mind]
> on the part of the company can be proved only by showing the state of
> mind of its employees.

*Anderson v. Radisson Hotel Corp.*, 834 F. Supp. 1364, 1374 (S.D. Ga. 1993).

### III.   Specific Opinions and Conclusions at Issue.

####         1.      "Columbia breach[ed] insurance industry standards by unequivocally denying coverage without completing a prompt and thorough investigation."

This Court has already ruled that the quality and thoroughness (or lack

thereof) of Columbia's coverage investigation must be considered by the jury when

it determines whether Columbia failed to settle negligently or in bad faith.  (Doc

103, p.28)  Columbia's adjusters testified in their industry they are required to

conduct a "prompt and thorough" coverage investigation.  (Exhibit A, 27:16-20

and Exhibit B, 25:8-16)  This Court has ruled that experts like Mr. Fey may

explain industry standards and apply them to the facts of the given claim. *Camacho* and *Noe*.

As the Court is already aware, undisputed facts show that Columbia's coverage "investigation" was rushed and cursory.  Columbia relied on its coverage investigation in rejecting the time-limited demand.  (Doc 119-2, explaining that "Columbia National has denied coverage to Mr. Patterson").  Thus, whether Columbia's investigation was prompt and thorough is relevant to the reasonableness of Columbia's rejection of the opportunity to settle.[2]

The coverage investigation is also relevant to "bad faith" under O.C.G.A. § 13-6-11.  With respect to tort liability, Columbia's coverage investigation evidences a "lack of diligence."  BAD FAITH, Black's Law Dictionary (11th ed. 2019).  With respect to Mr. Patterson's breach of contract claim, the coverage investigation evidences "bad faith in carrying out the provisions of the contract." *Burlington*, 457 S.E.2d at 220.

Whether the investigation was prompt and thorough is relevant to punitive damages.  It shows "that entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A. § 51-12-5.1(a).

---

[2] "An insurance company's bad faith in refusing to settle depends on whether the insurance company acted reasonably *in responding to a settlement offer*." *First Acceptance v. Hughes*, 826 S.E.2d 71, 74 (Ga. 2019) (emphasis in original).

*Armstead v. Allstate Prop. & Cas. Ins. Co.*, 2016 WL 4123838 (N.D. Ga. July 1, 2016), does not apply.  In that case, the court excluded opinions interpreting the insurance contract, which are issues of law for the court.  *Id.* at *5.  Mr. Fey's opinion that the industry standard is to conduct a prompt and thorough investigation is factual and does not interpret the insurance contract.  *Armstead* did not allow the expert to testify to the ultimate issue, but it did allow him to opine on the insurer's claims handling.  *Id.* at *9.

### 2. "Columbia failed to make any effort to find coverage for Patterson or to give him the benefit of the doubt."

Mr. Fey's opinions that the custom and practice in the industry is to make efforts to find coverage and to resolve doubts of coverage in favor of the insured is not within the ken of the average juror.  When one compares how readily Mr. Patterson was able to marshal evidence of permissive use in this action (e.g., doc 88-1, doc 59-3, doc 59-8, doc 59-9), the level of effort Columbia made in relation to the industry standard is highly relevant.  As explained in response to Opinion 1, Columbia's coverage investigation is relevant to the failure to settle, attorneys' fees and punitive damages.

### 3. "There is ample evidence regarding Patterson's permissive use.  An unequivocal denial was improper."

Although the Court has found Mr. Patterson to be a permissive user, the

12

level of evidence that would have been available to a well-trained claims adjuster, had he conducted prompt and thorough investigations, is highly relevant to Columbia's failure to settle.  Although the jury need not decide whether Mr. Patterson had permission – he did – the jury must decide whether Columbia reasonably concluded he did not.  Mr. Fey will not testify as to whether there was ample evidence of permissive use to support the failure-to-settle claim, he will opine as to whether there was ample evidence available to reasonably deny coverage, especially as abruptly and unequivocally as Columbia did so.  (Doc 1-6) Columbia's argument that its "denial of coverage is not relevant since it was made years before the rejection of the settlement offer" is bizarre, as Columbia expressly relied on its earlier denial in rejecting the opportunity to settle.  (Doc 119-2)

> ### 4.     "Columbia misrepresented coverage by asserting that Patterson's truck was excluded because it was not a covered auto at the time of the accident."

Columbia unequivocally relied on the "covered auto" provision in its second denial.  (Doc 59-25, p.5)  Inaccurate statements support the malice necessary for punitive damages.  *Second Cont'l*, 514 S.E.2d at 849.  However, Mr. Patterson has moved *in limine* to exclude evidence of the reservation of rights letters and the second coverage denial as irrelevant.  To the extent the Court grants Mr. Patterson's motion, he withdraws this opinion.

     **5.**     **"Columbia failed to make any effort to timely locate Patterson or to otherwise properly investigate the claim."**

This opinion is highly relevant to Columbia's coverage investigation, and Mr. Patterson respectfully incorporates his argument regarding Opinion Nos. 1-3.

     **6.**     **"Columbia breached the insurance industry standards by not giving Patterson an opportunity to submit additional information for reconsideration, or by asking that it be allowed to reconsider its position once suit was filed."**

Mr. Patterson agrees that Mr. Fey should not opine that Columbia "breached" industry standards.  However, he may testify that the custom and practice is to provide insureds like Mr. Patterson an opportunity to submit additional information and point out that the denial letter does not do so.  (Doc 1-6)

The manner in which Columbia denied coverage and then later breached the duty to defend go to "bad faith in [Columbia's] carrying out the provisions of the contract." *Henderson*, 740 S.E.2d at 277.  Because Columbia saved money by not defending Mr. Patterson, the manner of the denial is relevant to whether Columbia's breach was "prompted by some *interested* motive" to support an award of fees.  *Young*, 484 S.E.2d at 319.  Because leaving open the option to reconsider a coverage denial goes to the future, the failure to leave the option open goes to intent, which is relevant to punitive damages.  *Anderson*, 834 F. Supp. at 1374.

7.    **"In the event of a decision to deny coverage, all basis [sic] for the denial must be clearly and distinctly stated in the denial letter."**

When this opinion was rendered, Columbia was relying on coverage defenses other than permissive use, *e.g.*, cooperation, an invented requirement that Mr. Patterson formally request a defense, etc.  Because this Court has ruled that none of Columbia's coverage defenses survive summary judgment, Mr. Patterson agrees that whether all bases for denial are in the denial letter is no longer at issue, and he withdraws that portion of the opinion, so long as the Order stands.

8.    **"any policy defense not identified in a denial letter may be deemed to have been waived."**

The relevancy of this opinion depends on the Court's ruling on motions *in limine* and Columbia's motion for reconsideration on mitigation.  If Columbia's coverage defenses other than permissive use are issues at trial, however, the custom and practice in the industry of treating unidentified reasons as waived will be relevant.  For example, if Columbia's "change-of-heart" defense under a reservation of rights comes into evidence, Mr. Patterson should be entitled to explain how Columbia was attempting to manipulate Mr. Patterson into agreeing to a reservation of rights to cure its previous waivers.

    **9.**    **"An insurer that does not make its policies and procedures clear to its employees and who does not teach industry standards to its adjusters is bound to have issues with its employees violating industry standards."**

This Court is aware insurance companies have claim manuals, which are policies and procedures put in place by management to guide claim adjusters. *E.g.*, *Rosen v. Provident*, 308 F.R.D. 670, note 5 (N.D. Ala. 2015) (granting motion to compel production of claim manuals).  In this case, there was no such discovery dispute, as Columbia represented that it has put in place no such guidelines. (Exhibit C, RFP Response Nos. 17-24)  Mr. Fey's opinion that claim manuals are a customary and effective way to ensure prompt and thorough coverage evaluations and prudent responses to time-limited demands is relevant to the facts of this case. Mr. Patterson is entitled to show the absence of written policies and procedures to explain Columbia's behavior.

    **10.**    **"Columbia's supervisor failed to instruct Barczykowski to thoroughly investigate the claim, to give him any guidance, and merely allowed him to issue the denial without qualification."**

Insurance experts may explain how insurers are "responsible for proper training of its claims adjuster and [that the insurer] breached industry custom and practice requiring proper training and supervision." *Camacho*, 13 F. Supp. 3d at 1369.  Columbia does not dispute the facts that are part of this opinion.  Mr. Fey

possesses these facts through his review of Columbia's claim file.  Depositions of

Columbia's adjuster confirmed the facts.  As explained above, the quality of

Columbia's coverage determination is relevant to failure to settle, attorneys' fees

and punitive damages.  It would be helpful for the jury for Mr. Fey to explain

Columbia's failure to supervise its adjuster pursuant to custom and practice.

> **11.    "While there was documentation in the claim file that
> Patterson had not received either denial letter as both
> were returned, there was no discussion by
> Barcykwoski's supervisor of that fact, nor any
> direction to make sure Patterson was contacted."**

Dealings between the "handling adjuster" and direction from a "supervisor"

is a proper topic of expert opinion.  *Camacho*, 13 F. Supp. 3d at 1369.  The

undisputed facts are that Columbia did not contact Mr. Patterson before denying

coverage and knew its letters to him were coming back undeliverable.  Mr. Fey is

entitled to form opinions as to how these undisputed facts impacted Columbia's

coverage decision and how supervision consistent with industry and custom could

have led to action more consistent with industry and custom.  Someone from the

insurance industry is uniquely qualified to help the jury "connect the dots"

regarding Barczykowski working alone and doing so little to deny coverage for

such a significant claim.

    12.   **"Columbia failed to attempt resolution once liability because reasonably clear, a very serious violation of insurance industry claim handling standards and prejudice on a very serious claim."**

This opinion is straightforward applications of industry standards to the undisputed facts of this case.  If the Court so orders, Mr. Fey can avoid the word "violation" as going to the ultimate issue.  However, he should be able to testify as to the standard in the industry and to his understanding of what Columbia did or did not do based on his review of the claim file.

    13.   **The Dunns were forced to institute suit to collect sums owed under the policy, another very serious violation of insurance industry claim handling standards and practice."**

Mr. Patterson has a strong interest in the judgment being satisfied.  Mr. Fey is allowed to explain the custom and practice in the industry of paying judgments.  Custom and practice seeks to avoid forcing injured claimants to institute suit, and Mr. Fey should be allowed to explain that.  To the extent the Court believes the word "violation" goes to the ultimate issue, Mr. Fey can avoid it.

Like Opinion No. 12, this opinion is a straightforward application of industry standards to undisputed facts.  Lay jurors may not be familiar with the legal process insureds, like Mr. Patterson, and third-party claimants, like the Dunn Family, must undergo to pursue amounts owed under the policy.  Mr. Fey's

testimony that the Dunn Family and Mr. Patterson were required to resort to legal proceedings to enforce their rights under the policy is relevant to both Mr. Patterson's and the Dunn Family's claims for attorneys' fees connected to Columbia's breach of contractual duties and breach of the duty to settle to Mr. Patterson.

> **14.   "Part of the problem may be that the Columbia adjusters have an incredibly heavy claim load, which Burroughs estimating his pending claim count at 240 files, twice the maximum recommended pending claim count."**

The workload an insurer imposes on its adjusters is part of "supervision," which is a proper subject of expert opinion.  *See*, *Camacho*, 13 F. Supp. 3d at 1369.  In this case, the parties conducted discovery on this topic, and Mr. Fey should be allowed to opine on the facts discovered.  A reasonable work load for an insurance adjuster is not within the ken of the average juror.  If Barczykowsi was over-worked, it would affect the quality of his coverage investigation, making it relevant to the failure to settle claim.  If Burroughs was overworked, it would explain why he failed to evaluate all legal liability to which Mr. Patterson was exposed when he rejected the opportunity to settle within limits,[3] making his workload relevant to the failure to settle claim.  There is sufficient evidence for an

---

[3] This Court noted that Columbia failed to evaluate all elements of damages in rejecting the opportunity to settle within policy limits.  (Doc 103, p.27)

reasonable juror to come to these conclusions, but expert testimony from the insurance industry would be helpful.

The way Columbia overloads its adjusters is also relevant to Mr. Patterson's claims for attorneys' fees.  By having too few adjusters, Columbia saves money on payroll.  A breach of contract "prompted by some *interested* motive" constitutes bad faith and supports an award of fees.  *Young*, 484 S.E.2d at 319.

A reasonable juror could infer that overworking adjusters who then make critical errors in coverage investigations and evaluations of opportunities to settle constitutes "that entire want of care which would raise the presumption of conscious indifference to consequences," entitling Mr. Patterson to punitive damages.  O.C.G.A. § 51-12-5.1(a).

Thus, Mr. Fey's opinions regarding adjuster workloads is outside of the ken of the average juror, helpful to the jury in this particular case, and admissible.

> **15.    "Columbia mispresented pertinent facts by omitting to tell the North Georgia Medical Center that while coverage had been denied to Patterson, it still had coverage for Lawson as the owner of the vehicle, misleading North Georgia Medical Center."**

Mr. Patterson withdraws this opinion.

16. **"While it was clear from the allegations that Columbia owed Patterson a defense, Columbia made no effort to contact or locate Patterson or to provide a defense once suit was filed."**

This opinion is relevant for the reasons regarding Opinion Nos. 1-3.

17. **"Debra Lawson admitted that while it would be against company internal rules for employees to use company trucks for personal reasons, she knew it happened from time to time, and that while Lawson reserved the right to revoke permission to use the trucks, it never did."**

Mr. Patterson agrees that this is a statement of what occurred and not an expert opinion. However, there is no reason Mr. Fey may not recount facts he learned from the claim file and apply them in this action.

18. **"While Columbia no longer had any involvement or interest in the underlying action between the Dunns and Patterson, it attempt[ed] to interfere in those proceedings, even going to the extreme of appointing counsel to appear on Patterson's behalf without Patterson's consent."**

If the Court grants Mr. Patterson's motion *in limine* excluding the reservation of rights letters, this opinion and the facts supporting it are not relevant to the trial. If this Court does not grant the motion, this opinion will be necessary to show how Columbia violated the spirit of the law in failing to file a declaratory judgment action when it was in doubt as to coverage. Instead, it attempted to appear in the underlying lawsuit to litigate the same coverage issues that would

have been the subject of a declaratory judgment action.  (Doc 59-19)  This is

evidence of bad faith and intent to injure, making it relevant to attorneys' fees and

punitive damages.[4]  Columbia unabashedly took this improper route to "save the

cost and trouble of a declaratory judgment action" (doc 59-19, p.1), making it

relevant to bad faith and punitive damages.

Columbia argues it did not "interfere," yet Columbia filed a motion to

"intervene."  (Doc 59-20)  The difference between the two terms is a matter of

opinion.  As an expert in the insurance industry, Mr. Fey may opine on whether an

insurer's attempt to "intervene" amounts to "interference."

### 19.   "Columbia placed its own self-interest ahead of Patterson's, a serious violation of insurance industry claim handling standards."

Insurance experts may opine on "what ordinary and reasonable claims

handling practices consist of and whether or not [an insurer] complied with those

standards." *Camacho*, 13 F. Supp. 3d at 1366.  Such an expert may also testify on

"whether the insurer acted fairly and honestly toward insured [and] with due regard

for his interests," as this is a factual conclusion.  *Id*. at 1367.  This opinion falls

comfortably within the opinions allowed in *Camacho*.

---

[4] It is a complicated legal and factual argument not within the ken of the average juror.  If the Court allows all of the evidence regarding the reservations of rights to come in, Mr. Fey's opinions on this topic will be more important than ever.

20. **"Columbia was given a reasonable opportunity to resolve the claim for well within its policy limit, but unreasonably rejected the demand, and in doing so failed to inform Patterson, allowing him an opportunity to respond."**

This opinion is precisely why experts from the insurance industry are helpful to jurors.  A juror will not know what sort of terms and conditions to look for to determine whether an offer is reasonable.  In this case, Mr. Fey will be helpful in explaining the terms of the demand and why it was reasonable.  (Doc 119-1)  He can also help the jury understand why Columbia's rejection was unreasonable.  (Doc 119-2)  Experts are allowed to explain that "[c]arriers owe a duty to the insured to settle all reasonable settlement demands within the policy limits and must meet the reasonable conditions of the demand to fully protect the personal assets of the insured."  *Camacho*, 13 F. Supp. 3d at 1369.

21. **"After failing in its attempt to force Patterson's cooperation, to influence the jury verdict form for its own benefit, and to intervene into a lawsuit in which it denied any involvement, Columbia appointed counsel to make an unauthorized appearance on Patterson's behalf, clearly inappropriate behavior."**

If the Court grants the motion *in limine* to exclude the reservation of rights, this opinion and the facts supporting it are irrelevant.  If this Court denies the motion, this opinion is necessary to show Columbia violated custom and practice in failing to file a declaratory judgment action when coverage was in doubt.

22. **"Columbia obviously knew that it had seriously mishandled the claim and that its denial was improper, or it would not have gone to such great lengths to try to get involved in the Dunn v. Patterson lawsuit having settled Lawson's claim."**

If the Court grants Mr. Patterson's motion *in limine* excluding the reservation of rights letters, this opinion and the facts supporting it are not relevant to the trial. If this Court does not grant the motion, this opinion will be necessary to show how Columbia violated custom and practice in failing to file a declaratory judgment action when it was in doubt as to coverage.

## IV.   Conclusion.

Mr. Patterson acknowledges Mr. Fey may not testify to the ultimate conclusion or instruct the jury on the law. To the extent the Court wishes Mr. Fey to refrain from terms like "breach" and "violation," Mr. Patterson instruct Mr. Fey of the Court's wishes and orders. Otherwise, his opinions are allowed to touch on legal principles, as legal principles take a central role in the liability insurance industry. He should further be able to explain custom and practice in the industry and identify conduct by Columbia inconsistent with that custom and practice.

Respectfully submitted December 10, 2019.

> */s/ Richard E. Dolder*
> James ("Jay") Sadd
> Georgia Bar No. 622010
> Richard E. Dolder, Jr.
> Georgia Bar No. 220237
> SLAPPEY & SADD
> 352 Sandy Springs Circle
> Atlanta, Georgia 30328
> (404) 255-6677 (telephone)
> jay@lawyersatlanta.com
> rich@lawyersatlanta.com
> Attorneys for Mr. Patterson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I electronically filed the forgoing **Plaintiff Ronald Curtis Patterson's Response to Defendant's Motion to Exclude Certain Opinions of Expert Louis G. Fey** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of records for all parties. I further certify that the foregoing was prepared in Times New Roman 14pt font and otherwise complies with Local Rule 5.1.

Submitted on December 10, 2019.

*/s/ Richard E. Dolder*
Richard E. Dolder
Georgia Bar No. 220237
SLAPPEY & SADD, LLC
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677 (telephone)
rich@lawyersatlanta.com
Attorney for Mr. Patterson